IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LAWRENCE RODRIGUEZ, et al.,**

        **Plaintiffs,**

vs.                                                      Cause No. 1:07-cv-00901 JB/ACT

**CITY OF ALBUQUERQUE,**

        **Defendant.**

### PLAINTIFFS' RESPONSE TO CITY'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS AND ISSUE PRECLUSION

Plaintiffs present the following response to the City's Motion for Summary Judgment on grounds of *res judicata* (claims preclusion) and collateral estoppel (issues preclusion), stating as grounds therefore that as to claims preclusion the necessary element of a prior final judgment is lacking and as to issues preclusion Plaintiffs have not had a full and fair opportunity to litigate the issues. Additionally, appeal of the first case, *Patrick Chavez, et al., vs. City of Albuquerque*, No. CIV-02-0592 JH/ACT, is not yet ripe (as there is no appealable final order). Nor is the general rule that a pending appeal does not stay the application of res judicata or collateral estoppel necessarily applicable to these cases, which are collective action Fair Labor Standards Act cases.

A.     **Case No. 1:**  *Chavez, et al. v. City*

In Plaintiffs first FLSA case, about 760 present and former City employees opted in to the case and after more than five years of litigation, in August, 2007, the Court issued a 47-page Memorandum Opinion and Order, apparently deciding conclusively two of the most important issues in the case and leaving several other issues for a trial. [Chavez Doc. 250]. On one of those two issues, the application of a "dual calculation" methodology for overtime pay and calculation of the "regular rate of pay," the Chavez Court ruled decisively in Plaintiffs' favor, finding the City's methodology incorrect. The City moved for reconsideration. (Chavez Doc. 252].

The Court held that:

The City's method of calculating FLSA overtime independent of the agree-upon wages in the CBAs violates the FLSA. . . . By wholly ignoring the CBAs, the City misunderstands the "very nature of the regular rate calculation under the FLSA." *Walling*, 325 U.S. at 424. To comply with the FLSA, the City must look to the governing CBA to determine the payments to which it agreed, and from the CBA, mathematically calculate the regular rate of pay.

(Id., at p. 12). Since the City could not dispute that it failed to apply the "regular rate" enhancement provisions of the FLSA "to determine the *payments to which it agreed*" under its employee contracts, thereby failing "(t)o comply with the FLSA," Plaintiffs reasonably believed that by the time of the trial much of the overtime pay issue in this case had already been decided against the City.

Then, after a trial on limited but previously undecided issues that lasted only a half-day in September, 2007, the Court issued its Findings of Fact, making 115 "Find-

ings" over 30 pages and presenting "Legal Analysis and Conclusions of Law" in the other 26 pages of the 56-page ruling.  There, however, the Court held that the City must only "look to the governing CBA" to determine the *rate of pay*, not the "*payments to which it agreed.*" For City employees working overtime, this was a drastic change in the Court's ruling, one which came as a surprise to the Plaintiffs and one which approved what the Court had seemingly disapproved, "as a matter of law:" that "the City's method of calculating FLSA overtime independent of the agree-upon wages in the CBAs violates the FLSA."  In August, 2007, the Court said the City's method of calculation *violates the FLSA*, [Chavez Doc. 250, at p. 12].  Then, in January 17, 2008, the Court concluded that the City's method of calculation *does not violate the FLSA*, [Chavez Doc. 278, at p. 38, fn 4].

On the other issues, the *Chavez* Court held that with the exception of sick leave and vacation time buy backs, which were supposed to have been but were not included in the regular rate of pay, the City had included all other add on remuneration.  The City also prevailed on the issue of application of credits and offsets.  On what was perhaps the most significant monetary issue, the use of the proper divisor (hours worked including overtime pay versus the normal 40-hour work week) and the correct multiplier (one half time versus time and a half), the City prevailed in the initial summary judgment motion and that issue was not addressed at the trial.

Based on their belief that they had not been given an ample opportunity to present their position at the trial, Plaintiffs requested reconsideration [Chavez Doc. 284], but on

September 19, 2008, the Court denied that motion. [Chavez Doc. 294]. The City, which had sought and secured an extension of deadlines because the *Chavez* case had not been resolved [Doc. 28], notified this Court of the result in the *Chavez* case and subsequently filed this motion for summary judgment on res judicata and collateral estoppel. [Docs. 36 and 37].

      B.      **Case No. 2:** *Rodriguez, et al., vs. City*

The present case was filed after the *Chavez* summary judgment ruling but long before the *Chavez* trial Court's findings and conclusions. [Doc. 1]. As the City correctly points out, the claims in this case are almost identical to the claims in the first case. This is not because Plaintiffs wanted "another bite at the apple," but because the City employees who opted into this case were time-barred from opting in to the first case. When this case was filed, Plaintiffs' counsel believed Plaintiffs had prevailed on one of the most important issue in the first case, and numerous City employees requested an opportunity to be represented on the overtime pay issues.

As stated in Plaintiffs' Motion for a New Trial in the *Chavez* case, Plaintiffs in that case did not have a full and fair opportunity to litigate their important issues, as those had either been summarily decided or were reversed after a proceeding that did not address them. There are now approximately 230 employees and former-employees who have opted-in and asked to be represented in this case. On most of the necessary elements of *res judicata*, *except the existence of a final judgment on the merits and the issue of privity,* the City is correct. The issues in both cases are virtually identical, as is the cause of

action under the FLSA [Doc. 37, at pp. 8-11]. The Plaintiffs in this case are represented by the same counsel that represented the Plaintiffs in the other case, but the people who opted in to this case are not the same people who were parties in the prior case. (Id., at pp. 11-12). The existence of "privity" is questionable, but what is surely missing, is a *final judgment* concluding the case.

### C. Absence of a Final Judgment

The docket of the *Chavez* litigation shows that there is no final judgment in the record of the case. First, the Court decided some of the issues summarily on August 10, 2007. [Chavez Doc. 250]. Then, following the trial, the Court issued a lengthy opinion that included findings of fact and conclusions of law. [Doc. 278]. The next two Court orders were filed the same day, January 17, 2008. The first of these denied the City's Motion for Judgment on Partial Findings. [Doc. 279]. The second denied the City's Rule 59 Motion for Clarification or for Reconsideration of the Court's Memorandum Opinion and Order [Doc. 250] filed on August 24, 2007 [Doc. 252]. [Doc. 280]. Finally, the Court on the same date, January 17, 2008, issued its Partial Judgment finding 1) in favor of Plaintiffs and against the City on claims that the City fails to include vacation and sick leave buy back in the calculation of the statutory 'regular rate' of pay in violation of the FLSA's overtime pay requirements"[1] and 2) in favor of the City on other add-on bonus issues and proper crediting of payments against FLSA overtime liabilities. [Doc. 281].

---

[1] The damages issues, which were specifically excluded from summary judgment and trial proceedings in the *Chavez* case, have not yet been heard or resolved.

The City acknowledges that its motion for claims preclusion is premised on the existence of a "final judgment on the merits." (City's Memorandum, Doc. 37, at p. 4, citing *Montana v. U.S.*, 440 U.S. 147, 153 (1979). What follows that assertion is a lengthy discussion claiming that the Court's orders in the *Chavez* case constitute "final" orders or judgments on each of the issues. (Id., Doc. 37, at pp. 4-8). The City even attaches an order granting summary judgment on a portion of another case in which one of Plaintiffs' counsel represented the employees, *United Transportation Union, Local 1745 v. City of Albuquerque*, No. 96-716 LH/DJS (D. N.M.), in which the Court created "a more practical approach to finality." That case was settled, but if it had not been settled an appeal (after a real "final judgment") would surely have challenged the Court's "practical approach to finality."

The Court's "Partial Judgment" in the *Chavez* case cannot reasonably be considered a final or an appealable judgment. That awaits determination of damages issues and the issuance of a real final judgment by the Court. Nor could this Court simply deny the many litigants in this case, those who have opted in up to now and whose pay buy-backs should have been included (but weren't) in their regular rate of overtime pay, the damages they are entitled to. The City, on the other hand, suggests that the Court simply ignore the entitlement of those who opted in to this case to damages awarded by the Court in the *Chavez* case.

**D.     Who Would be Affected and Is There Privity?**

Another issue that has not been resolved is the question of who would be affected by the issuance of the summary judgment on either claims or issue preclusion grounds it it were done prior to clarification of who the parties are in this case.  The City's pending Motion to Strike Consents [Doc. 24] contends that because discovery and other deadlines have passed without a motion to certify the collective action, the only Plaintiffs actually in the case (and the only ones who then, presumably, would be affected by the granting of this summary judgment motion) are the named Plaintiffs.

In *Tice v. American Airlines, Inc.*, 162 F.3d 966 (7th Cir. 1998), the Court addressed the notion of "virtual representation" in the collective action context, and denied Defendant's preclusion motion.  The Court found that there was no identity of parties, in part because although the parties in both cases were challenging American Airlines' application of a Federal Aviation Administration rule preventing pilots over the age of 60, Plaintiffs in the second lawsuit contended they "were represented neither formally not 'virtually' in the earlier case, and it would thus violate due process to preclude them from bringing their own suit." *Tice*, 162 F.3d at 968.  The Court agreed, pointing out that under the federal statute:

> no employee shall be a party plaintiff to any ... action [under it] unless he gives his consent in writing..." American does not claim that the Tice plaintiffs ever gave their consent in writing to any of the earlier cases upon which it relies...  ADEA group actions are "opt-in" rather than "opt-out," as a result of the "consent in writing" requirement, and thus differ importantly from the class actions available under Rule 23.  The additional protections

> of this system compared to Rule 23 "opt-out" class actions would be
> eviscerated were the Tice plaintiffs to be viewed as having been in privity
> with the earlier plaintiffs.

*Tice*, 162 F. 3d at 973.

In *Tice*, the Court cited *Richards v. Jefferson County*, 517 U.S. 793 (1996) for the proposition that despite two cases directed at the same issue, the outcome of the second case was not dependent on the first.

> In Anglo-American jurisprudence ... one is not bound by a judgment in
> personam in a litigation in which he is not designated as a party ... This rule
> is part of our deep-rooted historic tradition that everyone should have his
> own day in court ... The parties in the earlier case did not provide the later
> plaintiffs with any notice that a suit was pending that would conclusively
> resolve their legal rights.  The earlier suit was not on behalf of a class that
> included the later plaintiffs, and the fact that the city participated in the
> earlier case did not expand its preclusive scope either.

*Tice*, at 972, citing *Richards*, at 798, 801-02.  Here, the parties are neither the same nor should they necessarily be considered "in privity."  Since this case involves the opt-in rights of City employees to overtime pay in calculated in accordance with the FLSA and since most of the Plaintiffs in this case neither knew of the first case nor were aware that their statutory rights to overtime pay were being litigated, "privity" is at most questionable and at least non-existent.

    **E.**    **Propriety of Preclusion Pending Appeal**

A final issue suggesting the inappropriateness of application of preclusion doctrines in this case at this time is the near certainty of an appeal.  This Court, in *Casias vs. Southwest Medical Associates*, No. CIV-04-0142 JB/ACT (D. N.M.), addressed

whether "a judgment is final even if it is currently being appealed." Casias at p. 11, citing *Brunacini v. Kavanagh*, 117 N.M.at 128-29; 869 P.2d at 827-28. The Court also found it decisive in *Casias* that:

> Both the Restatement and the federal courts adhere to the rule that a final judgment has preclusive effect even though an appeal of the judgment is pending. See Restatement (Second of Judgments Sec. 13, cmt. F. A majority of the states also have adopted the same rule as the New Mexico Court of Appeals did in *Brunacini*.

*Casias*, at p. 13.

Of course, in *Casias*, the parties were the same (Casias and Southwest Medical Associates) in both cases and the issues were the same. Casias did not involve collective actions, statutory rights, or an opt-in collective action. Although Plaintiffs cannot entirely disagree with the majority federal and state opinions cited by this Court and holding that the pendency of an appeal does not affect the application of *res judicata* or collateral estoppel, the cases relied on and the principles involved are of an entirely different character, both qualitatively and quantitatively.

And even though, as the Court observes in *Casias,* Rule 60(b)(5), Fed. R. Civ. P. motions specifically and expressly allow for reconsideration of a dismissal or other order when a "judgment based on a prior judgment (is) reversed or otherwise vacated," there is a much better and less controversial way to achieve the same result of finality and efficiency without dismissing this case at this time.

F.   A "Practical Approach" to Preclusion

Plaintiffs in this case are in almost complete agreement with the City Defendants on most of the principles they discuss in this Motion for Summary Judgment Based on Res Judicata or Collateral Estoppel. Plaintiffs cannot dispute the importance of "finality, judicial economy, preventing repetitive litigation and ... the interest in bringing litigation to an end." (City's Memo, Doc. 37, at p. 4). Plaintiffs have no intention or desire to waste their own resources, the City's resources, or to squander the Court's time and effort.

That being true, consideration should be given to whether the City's proposed resolution, dismissal (though presented as summary judgment) on grounds of *res judicata* and collateral estoppel, would be more efficient or beneficial than simply staying the case until the appellate court decides all the issues brought to it on appeal. Staying the litigation entirely would protect the interests of Plaintiffs and Defendant, eliminating any further expense of litigation, and allowing the two cases to proceed to a just and fair resolution decided by the appellate court.

Accordingly, Plaintiffs oppose application of the preclusion doctrines, primarily on the grounds that there is no final judgment in the case, but would not oppose a stay of all proceedings pending the appellate outcome. That, in Plaintiffs' view, would be a "practical" means of achieving the finality and the fairness to which all parties are entitled.

Respectfully submitted,

*s/ Paul Livingston*

_____
Paul Livingston
Attorney for Plaintiffs
P.O. Box 250
Placitas, NM 87043
(505) 771-4000

and

THE BREGMAN LAW FIRM, P.C.

*s/ Paul Livingston*

_____
for/ Sam Bregman and
Eric Loman
Attorneys for Plaintiffs
111 Lomas Blvd. NW, Suite 230
Albuquerque, NM 87102
(505) 761-5700

I hereby certify that I filed the foregoing electronically and that pursuant to the Court's rules an electronic copy was e-mailed to opposing counsel.

*s/ Paul Livingston*

_____
Paul Livingston