IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LAWRENCE RODRIGUEZ, STEVEN J. DURAN,
GREG MIERA, and ROSE MARIE NEAL,
on behalf of themselves and other present
and former City employees,

                            Plaintiffs,

vs.                                             Cause No. 1:07-cv-00901 JB/ACT

CITY OF ALBUQUERQUE,

                            Defendant.

## MOTION AND MEMORANDUM IN SUPPORT OF
## COLLECTIVE ACTION CERTIFICATION

      Plaintiffs, by and through their attorneys, Bregman and Loman, P.C. (by Sam Bregman and Eric Loman) and Paul Livingston, present the following Motion for Collective Action Certification and Memorandum in Support, stating as grounds therefore:

      1.     The named Plaintiffs and those who filed opt-in notices and consents to representation in this case are all present or former City employees who allege they have been denied the correct amount of overtime wages to which they are entitled under the provisions of the Fair Labor Standards Act (FLSA).

      2.     This collective action complaint was filed on behalf of Plaintiffs pursuant to the FLSA, 29 U.S.C. Sec. 216(b).  Specifically, Plaintiffs brought this action on behalf of

all employees and former employees of the City of Albuquerque who have worked overtime but who have not been paid the full amount of overtime wages they are entitled to under the provisions of the FLSA.

3. As recently as December 21, 2008, Plaintiffs filed their First Amended Complaint "on behalf of themselves and other present and former City employees." (Doc. 42).

4. Rule 302.2 of the City's Personnel Rules and Regulations provides that:

> (W)hen overtime is required for non-exempt employees, compensation must be in accordance with the Fair Labor Standards Act (FLSA) and any applicable collective bargaining agreement.

5. The normal work week of most City employees is set out in Collective Bargaining Agreements ("CBAs"). The normal work week is generally 40 hours per week, consisting of five eight-hour days or four ten-hour days.

6. Under the provisions of the FLSA, Plaintiffs are owed overtime wages amounting to "not less than one and one-half times the regular rate" at which they are employed, 29 U.S.C. Sec. 207(a)(1), for hours worked in excess of their normal work weeks.

7. Plaintiffs allege that the City of Albuquerque has failed to include all the properly applicable "other compensation" in calculating the "regular rate" of many of its employees, with the result that these employees receive less overtime pay than required by the FLSA.

8. In calculating its employees' "regular rate of pay" the City of Albuquerque divides the base rate of pay plus add-on remuneration by the number of hours worked by the employees, including overtime hours, rather than by the number of hours (40) in the employees' normal work week, thus yielding a lower regular rate of pay. The City then multiplies the regular rate by one-half the overtime hours rather than by one-and-a-half times the overtime hours ("time and a half") as required by the FLSA.

9. The City calculates FLSA payments separately under the terms of the Collective Bargaining Agreements, without including any additional or add on remuneration in the "regular rate," or under the provisions of the FLSA, without including the benefits and provisions contained in the Collective Bargaining Agreements and/or the City's rules and ordinances. In particular, under the CBA calculation the City includes days of paid leave as hours worked, but fails to include add-on remuneration in the regular rate of pay; under the FLSA calculation the City includes add-on remuneration in the regular rate of pay, but fails to consider hours of paid leave as hours worked towards the threshold 40 hours that triggers overtime pay.

10. After performing its dual calculations, the City pays its employees the higher of the two amounts, rather than paying overtime under the provisions of both the FLSA and the Collective Bargaining Agreements and the City's rules and ordinances. The FLSA requires calculation of overtime pay that combines contract wages, benefits,

and provisions with the provisions of the FLSA that require "other compensation" to be added to the regular rate of pay.

11. An opt-in collective action under 29 U.S.C. Section 216(b) is appropriate in this case as all City employees who receive overtime pay are similarly situated, are subjected to the same policies and practices, and have suffered the same or similar damages.

12. In addition to the named Plaintiffs, more than 220 similarly situated employees have consented to representation and have opted in to join the named Plaintiffs in this lawsuit.

13. The allegations of the named Plaintiffs and the relief requested by those Plaintiffs and the allegations and relief sought by the opt-in employees and former-employees are identical in that both make the same allegations and seek the same relief.

14. Counsel for the City Defendants were contacted concerning this Motion and stated their opposition to the granting of the Motion.

**WHEREFORE**, Plaintiffs pray for the Court's acknowledgment of the appropriateness and propriety of collective action certification and an Order certifying the case as a collective action, allowing the named Plaintiffs to represent and act on behalf of the opt-in parties.

**MEMORANDUM IN SUPPORT**

The FLSA, 29 U.S.C.A. Sec. 216(b) provides that an employee may bring an action on behalf of a class of "similarly situated" employees, subject to the provision that "no employee shall be a party to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  FLSA cases are frequently presented as collective or representative actions in which the employees must "opt in" to participate in the lawsuit.  A collective action affords the parties "the advantage of lower individual costs to vindicate rights by the pooling of resources."  *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  Also, "the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact."  Id.

Plaintiffs generally bear the burden of showing they are similarly situated to the remainder of the proposed class.  *Bayles v. American Medical Response of Colorado, Inc.*, 950 F. Supp. 1053, 1062-63 (D. Colo. 1996).  While the FLSA does not state what it means to be "similarly situated," the Third Circuit Court of Appeals found that to be similarly situated plaintiffs must `1) be or have been employed by the same corporate department, division, or location, 2) have advanced similar claims, and 3) sought substantially the same form of relief.  *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 51 (3rd Cir. 1989).

Thus, although the FLSA does not define "similarly situated," the City Defendants have acknowledged in a very similar and previously-filed case, *Patrick Chavez, et al., v.*

5

*City of Albuquerque*, No. CIV 02-0562 JC/ACT (D. N.M.) that the City employees and former-employees in that case, which grew to include more than 750 primarily opt-in Plaintiffs, were similarly situated to each other. In that case the City consented to the granting of collective action certification, apparently viewing that as the most efficient way to litigate the claims of the very similarly situated City employees and former employees.

Most recently, of course, the City of Albuquerque argued that the Plaintiffs in this case are similarly, and even identically, situated with the Plaintiffs in the *Patrick Chavez, et al.*, case. The City even raised the specter of numerous similar actions being filed if its motion for summary judgment was denied. This would also be the likely result of denial of collective action certification. Nor can it be reasonably disputed that those who opted in to this case have a strong interest in the certification and resolution of the litigation in this case.

In *Thiessen v. General Electric Capital Corporation*, 267 F.3d 1095 (10th Cir. 2001) the appellate court addressed whether plaintiffs were "similarly situated" for purposes of inclusion in the class under Section 216(b). The appellate court discussed "at least three approaches to determining whether plaintiffs are "similarly situated." Under the first approach, the "court determines, on an *ad hoc* case-by-case basis, whether plaintiffs are 'similarly situated.'" *Thiessen*, at 1102, 1103.

> In utilizing this approach, a court typically makes an initial "notice stage" determination of whether plaintiffs are "similarly situated." In doing so, a court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or

6

> plan." At the conclusion of discovery (often prompted by a motion to decertify), the court then makes a second determination, utilizing a stricter standard of "similarly situated" During this "second stage" analysis, a court reviews several factors, including "1) disparate factual and employment settings of the individual plaintiffs; 2) the various defenses available to defendant which appear to be individual to each plaintiff; 3) fairness and procedural considerations . . . .

(Id., citations omitted).

Under the second approach, the district courts incorporate into Section 216(b) the requirements of Rule 23. See, for example, *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990). The third approach "incorporates into Sec. 216(b) the requirements of the pre-1966 version of Rule 23, which allowed for 'spurious' class actions." In *Thiessen*, at 1105, the Court held that "all approaches allow for consideration of the same or similar factors," and found "no error on the part of the district court in adopting the *ad hoc* approach."

Under that generally accepted two step approach the court first makes a determination at the "notice stage," the point at which the court first determines whether notice of the action should be given to potential class members.

> Because at this point the court usually has only minimal evidence before it – the pleadings and any affidavits submitted by the parties – "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." At this stage, some courts have required "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination.

*Morisky v. Public Service Electric and Gas Company*, 111 F. Supp. 2d 493 (D. N.J., 2000), quoting *Sperling v. Hoffman La Roche, Inc.*, 118 F.R.D. 392, 407 (D. N.J. 1988).

7

Although there is commonly a second step, in which the court "makes a second determination after discovery is largely complete and the case is ready for trial." *Thiessen,* 996 F. Supp. at 1080, that is not needed or appropriate in the case now before the Court. At the second stage, "the court has much more information on which to base its decision and, as a result, now employs a stricter standard." *Morisky*, at 497. If the court finds the plaintiffs are similarly situated, the case is allowed to proceed to trial as a collective action. *Morisky*, id. That "second step" is neither necessary nor appropriate in this case, where there is no contention by the City that the parties are not similarly situated and where the City has previously consented to certification of an identical collective action class.

Here there have been a substantial number of opt in employees, and discovery deadlines have long passed, yet the City has neither conducted discovery nor requested scrutiny of whether the plaintiffs are similarly situated. To the contrary, the City has very recently argued to the Court that the parties in this case are exactly situated as the parties in the case filed almost seven years ago, *Patrick Chavez, et al., v. City of Albuquerque*. Accordingly, there is no need for further scrutiny of the proposed class or the propriety of the proposed collective action, as these have already been determined in the *Chavez* case and according to the City's own contentions there are no significant differences in this case and certainly no differences that would present a different collective certification result.

The propriety of collective action certification was established in the *Patrick Chavez* case and confirmed by the fact that the City has both implicitly and expressly acknowledged and accepted this case as a collective action. For example, in the City's "Statement of Material Facts as to which no genuine issue exists" included in the City's Memorandum of Law in Support of (its) Motion for Summary Judgment Based on Res Judicata or Collateral Estoppel" the City states that Plaintiffs "on behalf of themselves and other present and former City employees, filed a Complaint for collective action under 29 U.S.C. Sec. 216(b) of the FLSA." (Doc. 37, at p. 1, underlining added). The City Defendants go on to state that:

> Here, the same Plaintiffs' counsel have brought a second purported collective action with the exact same proposed class definition, against the exact same Defendant. The complaint here is nearly identical to the Chavez complaint.

(Doc. 37 at p. 4). Nor do the City Defendants claim that the nature of the certified collective action in the *Chavez* case is any different from the claims and causes of action in this case:

> Here, as explained above, the issues in Chavez and this case are identical. Further, the proposed class definition here is identical to that in Chavez. In Chavez, the class was defined as: "all present or former City employees who have been denied overtime wages to which they are entitled under the provisions of the FLSA." Chavez docket 178 (Exhibit 5). Although no class has been certified, the plaintiffs here fit within that same definition. Docket 1 at para. 1.

(Doc. 37, at p. 11, underlining added). Since, as the City readily agrees, the class definition here is identical to that in Chavez, and the City consented to the class certifica-

9

tion in *Chavez*, there is no valid reason or justification for denying the same certification in this "identical" case.

In its Reply Brief on its unsuccessful Motion for Summary Judgment (Doc. 40, at p. 4) the City states its "position" that "it is now too late to seek certification." The City can only cite, "generally," its own Memorandum of Law in Support of Motion to Strike Certain Consents (Doc. 25) for its "position." The cases cited by the City address only the effect of *decertification* of a collective action class, claiming that "It matters not that the class was *never* certified as opposed to *de*certified. The end result is the same, and only the Named Plaintiffs' individual claims may remain in the case." (Id., at p. 4; emphasis in original).

Significantly, the City finds no authority whatsoever to support either its "position" that "it is now too late to seek certification" or that there is no difference between a decertified action and a collective action class that was never formally certified. Nor can Plaintiffs find any authority that supports the City's "position." The City's contention is that "only the Named Plaintiffs' individual claims may remain in the case" and it suggests that the opt-in parties' claims should be "dismissed without prejudice." (Id., citing *Chabrier v. Wilmington finance, Inc.*, No. 06-4176, 2008 WL 938872 (E.D. Pa., April 4, 2008).

This makes little sense for two reasons. First, if the claims of those who opted in are identical to the claims of those named Plaintiffs who would remain in the case and

before the Court for adjudication, it would make no sense to adjudicate the former and dismiss the later.  Second, dismissal *without prejudice* of the opt-in parties' claims would leave hundreds of people with valid claims that had not been adjudicated and that could and probably would be filed anew.  This would be the same result that the City vigorously argued against in support of its *res judicata* motion.  In addition, dismissal of the opt-in parties without prejudice would leave an open question about the running of the statute of limitations under the FLSA.  The opt-in and consent to representation notices would stand as the statutory date for calculation of claims under the provisions of the FLSA, providing a two or three year statute running backwards from the date of filing of the notices, rather than the date of filing the new case(s).

When the City was contacted about this Motion, its counsel denied concurrence.  However, that same counsel, recently arguing in favor of the application of the doctrine of *res judicata*, raised the fear of multiple duplicative concurrent and consecutive lawsuits.  Yet multiple additional lawsuits are exactly what could happen if the collective action certification sought here is denied.

As stated by the City in its previous submission to this Court:

The Plaintiffs here, City employees, <u>fell within the class definition in the *Chavez* case</u> and class counsel in *Chavez* also represents the Plaintiffs here.

(Doc. 37, at p. 13, underlining added).  That being true, there is no good reason to deny in this case the same collective action certification that was granted in the *Chavez* case.

In *Hoffman-La Roche*, 493 U.S. at 169, the United States Supreme Court held that the district court may facilitate notice to potential plaintiffs in a section 216(b) FLSA action, so the potential plaintiffs are informed and may choose to 'opt in' to the action. Certainly, a necessary pre-requisite to the issuance of such notice is that the court find that the action may proceed as a representational action.  The only two requirements for such a finding, as discussed above, are that the class members be similarly situated and that Plaintiffs sign consents to be represented.

Plaintiffs in this case are not seeking further notice to potential class members. They do, however, contend that it is in the interest of justice and the efficient adjudication of the claims of all those who opted in to this case – stating that "I hereby give notice and consent to opt-in . . . . as a member of the class" because "I believe my overtime pay has not been properly calculated" –  to allow those claims to go to trial together, rather than delaying adjudication of those claims by requiring other and separate lawsuits to adjudicate the same claims that could far more easily and efficiently be included now in the adjudication of the claims of the named-Plaintiffs.

The City does not contend that there is any difference between the positions or conditions of employment, its methodology for calculating overtime pay, or the claims of the Plaintiffs in this case and the Plaintiffs in the *Chavez* case.  Accordingly, the same class certification that applied in the *Chavez* case is just as appropriate in this case, and no further delay, discovery, inquiry, or determination by this Court is necessary to determine

that the collective action certification sought by Plaintiffs constitutes the efficient use of judicial resources, allows for the possibility of judicial relief for all without prejudice to any party and should be granted.

        Respectfully submitted,

        *s/ Paul Livingston*

        _____
        Paul Livingston
        Attorney for Plaintiffs
        P.O. Box 250
        Placitas, NM 87043
        (505) 771-4000

        and

        BREGMAN AND LOMAN, P.C.

        *s/ Paul Livingston*

        _____
        for/ Sam Bregman and Eric Loman
        Attorneys for Plaintiffs
        111 Lomas Blvd. NW, Suite 230
        Albuquerque, NM 87102
        (505) 761-5700

Pursuant to the Court's electronic CM/ECF filing plan, copies of the foregoing were sent electronically by the court to all counsel on the date and at the time of filing.

*s/ Paul Livingston*
_____
Paul Livingston