1           IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF NEW MEXICO

3   LAWRENCE RODRIGUEZ, ROSE MARIE
    NEAL, JASON BROWN, and GREG MIERA,
4   on behalf of themselves and
    other present and former City employees,

5

            Plaintiffs,

6

7   vs.                              No. CIV 07-0901 JB/ACT

8   CITY OF ALBUQUERQUE,

            Defendant.

9

10       Transcript of Motion Hearing before The Honorable

11  James O. Browning, United States District Judge, held in

12  Albuquerque, Bernalillo County, New Mexico, commencing on

13  Tuesday, June 9, 2009, at 10:02 a.m. and concluding at

14  11:08 a.m.  Proceedings recorded by mechanical stenography;

15  transcript produced by computer-aided-transcription.

16

17

18

19

20

21

22

            Danna Schutte Everett, CRR, RPR, RMR, CCR 139
23               United States Court Reporter
             333 Lomas Boulevard, Northwest
24           Albuquerque, New Mexico  87102
              Phone:  (505) 348-2283
25               Fax:  (505) 348-2285

```
1    For the Plaintiffs:

2         THE BREGMAN LAW FIRM, P.C.
          111 Lomas, Northwest, Suite 230
3         Albuquerque, New Mexico  87102
          BY:  MR. SAM BREGMAN
4              MR. PAUL LIVINGSTON

5    For the Defendant:

6         SEYFARTH SHAW, LLP
          131 S. Dearborn Street
7         Chicago, Illinois  60603
          BY:  MR. EDWARD BERGMANN
8                  and
          City Attorney's Office
9         One Civic Plaza, Northwest, Fourth Floor
          Albuquerque, New Mexico  87102
10        BY:  MR. MICHAEL I. GARCIA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE COURT:  Good morning, everyone.  I appreciate
 2    everyone making themselves available to me this morning.
 3              All right.  The Court will call Lawrence Rodriguez,
 4    et al., versus City of Albuquerque, Case Number 1:07CV0901
 5    JB/ACT.
 6              Counsel will enter their appearances.
 7              MR. BREGMAN:  Sam Bregman and Paul Livingston on
 8    behalf of plaintiffs.  Good morning, Your Honor.
 9              THE COURT:  Mr. Bregman, Mr. Livingston, good morning
10    to you.
11              MR. BERGMANN:  Ed Bergmann and Mike Garcia on behalf
12    of the City, Your Honor.
13              THE COURT:  Mr. Bergmann and Mr. Garcia, good morning
14    to you.
15              All right.  We're here on the two motions, one filed
16    by each side.  Why don't we take up the motion for
17    collective-action certification first.
18              Mr. Bregman, if you wish to speak in support of that
19    motion.
20              MR. BREGMAN:  Your Honor, I think this is fairly
21    straightforward.  I don't have a lot to add other than what was
22    filed with the Court as far as written briefs are concerned.
23              THE COURT:  I guess the thing that, as I worked on
24    this yesterday -- it was kind of the first opportunity I had to
25    spend some time with it -- was particularly the jurisdictional
```

1    issue.  That always concerns a federal Court.  Your response is

2    primarily that the offer here is not -- doesn't match the

3    theory that you have in this case?

4            MR. BREGMAN:  That's correct, Judge.  It doesn't --

5    It doesn't compensate our clients for the alleged --

6            THE COURT:  Is the offer that's being made consistent

7    with the judgment in the Chavez case?  Is that basically what

8    the City did here?

9            MR. BREGMAN:  I think that's -- to some extent,

10   that's probably correct, Your Honor, in that they just simply

11   wanted to compensate for what the judge did find as far as the

12   City was liable for, and they completely ignored our other

13   argument, as far as what the specific -- the multiplier effect

14   and what the actual money would be owed.

15           Now, Your Honor, what I would suggest to you, Your

16   Honor, is that four -- only having four named plaintiffs

17   instead of the collective action, if you find otherwise, Your

18   Honor, that we have met our burden as far as proving that they

19   don't calculate the rate.  Where does that put us?  We have

20   people that have opted in and they get to go all the way back

21   to the opt-in date.

22           THE COURT:  That's not an issue that I need to deal

23   with today, right?

24           MR. BREGMAN:  No.

25           I mean, that's just -- At the end of the case, I

```
 1   mean, plaintiffs may win, they may loose, and everybody -- if

 2   we do it as four individuals or if we do it as 200, that's an

 3   issue that I don't reach at this point.  Is that fair to say?

 4   I don't make any -- I don't make any judgment on the merits at

 5   this point?

 6        MR. BREGMAN:  Not on the merits, no, Your Honor.  I

 7   would agree with that.  Yes.

 8        THE COURT:  So what you're saying is that to find

 9   that I don't have jurisdiction at this point would be -- with

10   the offer that's being made, I'd be getting into the merits as

11   to whether it's correct or not?

12        MR. BREGMAN:  You would, Judge.

13        THE COURT:  All right.

14        MR. BREGMAN:  I really don't have a whole lot more.

15        THE COURT:  Well, let's hear what Mr. Bergmann says,

16   and then I may have some more questions of you, Mr. Bregman.

17        MR. BREGMAN:  Certainly.

18        THE COURT:  Thank you, Mr. Bregman.

19        Mr. Bergmann.

20        MR. BERGMANN:  Thank you, Your Honor.

21        In terms of the jurisdiction, what the City did here

22   in the offer of judgment, which was to --

23        THE COURT:  Why don't you -- Why don't you -- So I

24   know if I have the facts firmly in front of me, tell me what

25   you did, so I know what you did.
```

1          MR. BERGMANN:  Okay.  What we did, Your Honor, was

2    the Court in Chavez found that the only issue relative to the

3    City's compliance with the Fair Labor Standards Act related to

4    the inclusion of proceeds of sale-backs, Your Honor.

5          And a sale-back is a situation where an employee is

6    allowed to, in effect, sell back to the employer -- in this

7    case the City -- a certain amount of the vacation benefit or

8    sick leave that the individual employee has on the books.  And

9    so under the various union contracts employees are given an

10   opportunity at one time in the year, Your Honor, to sell back

11   excess vacation and/or sick leave.  And there are certain

12   restrictions on it, in terms of how much they get for the

13   sale-back, but it's a sale-back, Your Honor.  And I don't think

14   the Court need to concern itself with whether it's one per one,

15   one-half per one.  I don't think that's the issue.

16         The issue is whether or not that's included.  And the

17   Court found that the City should have included that in the

18   calculation of overtime for those employees who actually did

19   sell back benefit time for cash.  Some sold back sick pay for

20   additional vacation time, there was no money, so it's only

21   those who sold it back for cash.

22         As Your Honor might know, there's two appellate

23   courts who have looked at that issue.  They're both two-to-one

24   decisions and they're opposed.  It indicates how clear the

25   Court -- how money or whatever.

1          But, in any event, because of that the City made an

2     offer of judgment based upon inclusion of the sale-back

3     proceeds in the regular rate calculation.  And how the City did

4     that, Your Honor, was as follows:  Once a year an employee is

5     allowed to sell back the benefit time.  So the City took as the

6     appropriate period a one-year period, because the regulations

7     say that when you have a delayed bonus payment, which the Court

8     called this a bonus, you essentially look at it in relationship

9     to the period of time it covered, which is what the City did.

10          So the City looked at the hours that had been paid in

11     that year, divided it into the bonus amount times .5, times the

12     number of overtime hours worked, which is the precise formula,

13     Your Honor, set out in the regulations for a backward-looking

14     bonus, which is what we have here, because it's benefit time,

15     Your Honor, that's already been accrued or earned in the past

16     and it's being sold now.  So it's a backward-looking bonus.

17          We felt the one-year period was appropriate because

18     it's done once a year, and we divided it out pursuant to the

19     regulations.  Half-time formula -- which, of course, I know

20     plaintiffs argue.  The only problem with their position is

21     there's not a single court, federal court in the United States

22     that supports their position, not a single one, Your Honor,

23     including the case in Chavez.

24          So we followed that, we made the offer --

25          THE COURT:  Here's my question, though.

1           MR. BERGMANN:  Sure.  Sure.

2           THE COURT:  That's what concerns me, is, can I really

3     reach the issue of -- I mean, it may be that their position's a

4     loser, but can I -- can I decide that it's been mooted out if

5     their claim is broader than what your offer is?

6           MR. BERGMANN:  Their claim is essentially without

7     legal merit.  I guess what the City did is it made an offer

8     consistent with applicable law.  Now, does the Court need to

9     look at that?

10          THE COURT:  You would agree with me, though, that

11    their claims are broader than what Judge Herrera decided in

12    Chavez was the appropriate relief?

13          MR. BERGMANN:  Exactly.  They are.  They are -- They

14    are, Your Honor, simply because, in our view, that's what the

15    law provides for, and the offer of judgment is based upon the

16    applicable case law as we see it, not only Judge Herrera's

17    decision, but all the other cases that have looked at the

18    issue.

19          THE COURT:  So, therefore, your offer of judgment is

20    more narrow than their claims?

21          MR. BERGMANN:  The offer of judgment is, Your Honor,

22    more narrow than the claims.

23          THE COURT:  Do you have any case law on this

24    situation, where the offer of judgment may be consistent with

25    some other rulings but these plaintiffs are bringing broader

1   claims and whether that moots out the case and the Court then

2   loses jurisdiction?

3           MR. BERGMANN:  I think any offer of judgment -- I

4   don't -- I think the cases that talk about mootness when you're

5   dealing with an offer of judgment, it's always based on certain

6   assumptions.  No matter what you do, it's got to be based on

7   certain assumptions, and I -- Is there a case that specifically

8   is like this case?  This case has a lot of unique aspects, and

9   I would tell you, Your Honor, no, there's not a case that has

10  the precise same unique aspects this one does, Your Honor.

11          THE COURT:  Are we -- On this mootness issue, this

12  jurisdictional issue, are we just down to the Seventh Circuit

13  case and then maybe one other district court that have had that

14  situation, or is this something that in this FLSA area is very

15  common?  Or is it just those two cases?

16          MR. BERGMANN:  I think we're down to those cases.  I

17  would say that this case, again, is not very common, Your

18  Honor.  In some 40 years, I've never had a similar situation to

19  this one.  So it's unusual.

20          THE COURT:  And what is it about this one that's

21  unique?

22          MR. BERGMANN:  The unique aspect is that we've had

23  another case on precisely the same issues filed within about

24  six months, Your Honor, of a notice going out in the first

25  case, and I've never seen that happen before.

 1          THE COURT:  Is that because what normally happens in

 2   these cases is everybody deals with the first case, everybody

 3   either opts in or decides not to participate in the case at

 4   all?  And what's unusual about this situation is you had a case

 5   in Santa Fe, some opted in, and then another case came along

 6   and people opted into it?  Is that what's unusual?

 7          MR. BERGMANN:  Well, what's unusual is that the

 8   precise issue was litigated and there was a preliminary ruling

 9   and I think the plaintiffs mistakenly thought that the decision

10   went further than it did, and so they sought to bring more

11   people into the case to collect, so to speak, and because of

12   that the -- we had additional people join in because they

13   thought there was money to be collected.

14          And the issue is one sole issue:  Does the City of

15   Albuquerque correctly pay overtime compensation, correctly

16   calculate it?  That's the issue.  It's an overriding issue, and

17   it's very unusual, in my experience, and I've never seen it

18   before, where you had two cases brought on absolutely the same

19   issue by the same attorneys after a trial and a ruling by the

20   Court on the -- you know, on the issue what was continued.

21          Usually, you litigate the issue to the end and then

22   either the -- one side or the other side wins on the issue.

23   You don't get multiple cases brought on an issue that is this

24   singular in nature.  In other words, does the City of

25   Albuquerque correctly calculate overtime compensation under the

```
 1   Fair Labor Standards Act?

 2            And that's an overriding issue, Your Honor.  It

 3   covers everything as we see it.  We had a trial on it, there

 4   was an initial ruling, there then was a trial, the Court issued

 5   a ruling following the trial on the -- on those issues, and --

 6   You know, it's -- certainly the plaintiffs can bring the case

 7   to the Tenth Circuit, but it's just very unusual in this

 8   context.

 9            THE COURT:  What is the -- What is the posture of the

10   case up in Santa Fe?

11            MR. BERGMANN:  Well, it's pending, actually, down

12   here before Judge Herrera, and we were going to have a hearing.

13   The judge had scheduled a hearing on damages to discuss that

14   issue with counsel, and, unfortunately, a key representative to

15   the City -- obviously, this is a payroll issue, Your Honor, and

16   the payroll person most familiar with it had a medical

17   situation with her brother that made it impossible for her to

18   attend, and we indicated that, and counsel understood it, they

19   agreed -- I think we conduct ourselves as officers of the court

20   in those matters -- and so that hearing has been put over into

21   September in front of Judge Herrera.  That's only as to the

22   damages issue, not at to the merits of the legal issue of

23   liability, does the City do it correctly or not.  Judge Herrera

24   has completed her rulings on that issue.

25            THE COURT:  All right.  Let's assume that I look at
```

```
 1   the issue and I determine that I don't think that the claims

 2   here are mooted.  I mean, just putting aside the Chavez case.

 3              MR. BERGMANN:  Sure.

 4              THE COURT:  And you're welcome not to do that, but

 5   I'm trying to figure out what I do with this case.  Assume that

 6   I decide that the offers here are more narrow than the claims

 7   so that I can't say that it's moot, that there is something

 8   that's here.  It may be it may not have a basis in law or fact,

 9   but I need to decide that on the merits, rather than saying

10   it's just moot.

11              What would be the problem or what do you perceive the

12   problem of doing that on a class basis rather than just with

13   the four people that are here?

14              MR. BERGMANN:  Well, the problem, Your Honor, is

15   discovery is closed and the individuals -- we're going from

16   four individuals to some 220, and there may be some other

17   issues that relate to the other 220, such as their claims in

18   this.  And, you know, we went through a trial.  And I think

19   that if you're going to add -- change the complexity of a case

20   from four, that's one thing to review the payroll histories of

21   four individuals.  We did do that, we prepared for it.

22              When we get into the payroll histories of 220, if

23   necessary, it's a totally different issue, and particularly

24   with no discovery.  I think courts --

25              THE COURT:  Let me ask you this on that, because I
```

1    think that's a legitimate concern as to where we find ourselves

2    in this case.  And I'm not sure why we find ourselves at this

3    point without discovery in the case, so you can address that if

4    you'd like.

5           But let's just assume that we are at that point and

6    with a trial in August.  Don't you have all the cards on your

7    side because you have all the records of their payroll history?

8    I mean, I could understand that if it were the plaintiffs

9    saying, "We haven't had any discovery in this case," but it

10   would seem to me that you're the one that's in control of all

11   of that.

12          MR. BERGMANN:  Well, we are in control.

13          THE COURT:  What discovery, really, would you need

14   from the other side?

15          MR. BERGMANN:  Well, I think the situation is, we're

16   in control of it, Your Honor, but you're looking at 220 people

17   going back a certain number of years, payroll looking at the

18   records to try to decide, Are we going to have sample

19   plaintiffs or not?  Are we going to leave it with the four

20   plaintiffs; they'll be the only ones to testify?  That's fine.

21   But if we have to go through the payroll records of all of

22   those individuals to review them in this, that is going to be a

23   fairly extensive undertaking just for the City to be prepared

24   from its own standpoint.

25          You have to know what case you're trying.  And if

1    you're -- We have legal theories, and that's part of the

2    problem here, is we keep trying the legal theory over and over

3    again as to hundreds of people, going through their records,

4    making sure that, again, there's no issue there so we don't

5    have something pop up at the last second and they say, "Well,

6    look at this.  What does this mean?"

7            THE COURT:  Well, educate me a little bit.  Is the

8    issue that is going to have to be decided in this trial -- And

9    it sounds like damages may be a separate issue, given the way

10   that Judge Herrera did her case, but is the big issue at the

11   beginning this legal issue about what is owed?

12           MR. BERGMANN:  Yeah, we're going through the same

13   exercise we went through with Judge Herrera, that's right.

14           THE COURT:  Tell me a little bit about that case.

15   Was that one in which it was important to know what the

16   individuals in that trial did or didn't do, or was it strictly

17   looking at the contract and looking at -- looking at the

18   regulations and that sort of thing?  Was it more of that

19   nature?

20           MR. BERGMANN:  No, it wasn't.  In fact, Your Honor,

21   Judge Herrera painstakingly went through individual payroll

22   records to satisfy herself that, in fact, the City was in

23   compliance.  So she actually went through the records of the

24   individuals who testified before her.

25           THE COURT:  And how many people testified?

```
 1              MR. BERGMANN:  I'm going to say there was about five

 2    or six.

 3              MR. BREGMAN:  Five.

 4              MR. BERGMANN:  Five.  Five.  I'm corrected by

 5    counsel.  Five individuals.  She went through their records, I

 6    think with a fine-tooth comb, Your Honor, in analyzing it to be

 7    sure.  And it appears that by the Amended Complaint plaintiffs

 8    are talking about this Court doing the same thing, going

 9    through the exact same exercise, as far as we can tell, which

10    is --

11              THE COURT:  With just different plaintiffs?

12              MR. BERGMANN:  Pardon me?

13              THE COURT:  With just different plaintiffs?

14              MR. BERGMANN:  Yeah, with just different plaintiffs.

15    I mean, the same payroll records.  I mean, they're the same

16    calculation system, absolutely the same, no difference there,

17    just different names.  And I think that the dimension of that

18    between four and 224-plus or so is quite big.  And that,

19    obviously, is a concern to the City.

20              THE COURT:  Now, Judge Herrera's case had 750?

21              MR. BERGMANN:  I think it had somewhere in the

22    neighborhood of 700-plus individuals.

23              But what you do in these cases is you usually, during

24    the course of discovery, work out sample individuals, because

25    the Court is going to say, We're not going to go through
```

1    payroll records of 200, let alone 700 individuals going back

2    several years, pay period by pay period, looking at it,

3    figuring it out, understanding, because one of the things that

4    happens is, in order to understand the calculation, you look at

5    several different screens to see the steps that the system

6    takes to reach a final result here.  And that, you know,

7    process certainly has been, you know, went through in the

8    discovery and the depositions of the individuals from payroll

9    who explained the process in this.

10          So it is -- It's in some respects straight forward

11   and in other respects it's somewhat complicated.

12          THE COURT:  If we were to put aside Judge Herrera's

13   case and this was the first case that was filed, this is the

14   first time that this issue was before a Court, what would be

15   occurring at this hearing today?  What would be happening?

16          MR. BERGMANN:  Okay.  We would be -- What would be

17   occurring is, this would be a hearing in which some preliminary

18   discovery would have occurred relative to the similarly

19   situated nature, relative to the issues, the process that the

20   City goes through in paying overtime, understanding the

21   calculation system that the City has and how common -- its

22   commonality to everyone.  We would have taken initial

23   discovery, just as we did in Judge Herrera's case.

24          THE COURT:  And the reason that that's being skipped

25   over at this point is because the plaintiffs have taken the

1  position that, Judge, you don't need to do that because the

2  City agreed that there was commonality issues in Chavez, so

3  there's no need to do that here?  Is that basically --

4          MR. BERGMANN:  You know, I'm actually not sure what

5  the plaintiffs' position is in this case other than they want

6  to try to get another judge to look at the issue.  They don't

7  like what Judge Herrera did and are hoping another judge will

8  see it differently.  I mean, I don't know that there's anything

9  other than that, because the issue is -- and everybody agrees,

10 the issue's the same.

11         So I think what they want to do is sort of skip all

12 the preliminaries and get -- and get an opportunity to sort of

13 say Judge Herrera was wrong and let's come up with a different

14 result.  At least from our standpoint.  And, obviously, I'm not

15 authorized to speak for them, and I don't.

16         THE COURT:  Well, let me make it more comfortable for

17 you to speak for the City.  If I were sort of the Judge Herrera

18 and the first judge on this, what would the City be doing with

19 this case?

20         MR. BERGMANN:  Well, what the City would do is what

21 they did in Judge Herrera's.  They would present the

22 calculation system that they used, make sure that the Court

23 fully understood that calculation system, and present that --

24 present examples to the Court of the calculations, how they

25 actually work in practice, because our position is that people

1    always are paid consistent with the act, no matter what, and

2    so --

3              THE COURT:  So would you be -- Would you be opposing,

4    though -- Would you be opposing collective-action

5    certification?

6              MR. BERGMANN:  Not in the first instance, no.  And we

7    didn't.  And the reason for that was, it is a common issue.  We

8    did not disagree with that.  We did not oppose a collective

9    action, because the City, obviously, wants to make sure it pays

10   employees fairly, Your Honor.  We wanted to make sure that the

11   system that we had was fair and that it was compliant, so we

12   had no objection in the first case to having it proceed as a

13   collective action on behalf of all of the City employees,

14   because they were all -- all the nonexempt employees were paid

15   under the precise same system.  There were no differences.

16             There were different overtime standards between

17   public safety and nonpublic safety, but the system of comparing

18   what they were paid under City policy or union contract with

19   what the Fair Labor Standards Act required was done

20   consistently in those areas where there was a question.

21             THE COURT:  Well, if we're stuck with this second

22   case and I don't believe that it's moot, what would -- what,

23   then, is served by not making this is a collective action?

24             MR. BERGMANN:  I think the only thing would be that

25   we would have to look at what that would mean for a trial and

1  really sort of analyze it, Your Honor, fairly so we don't

2  confront the Court with a situation which is unmanageable.

3  That's really our fear, because it's a technical issue.

4       THE COURT:  So if I decide that it's not moot and

5  that we do have this case and it's not going to go away, you

6  don't oppose collective action, but you're concerned about the

7  mechanics and how that's going to take place?  Is that fair?

8       MR. BERGMANN:  I think that's fair to say, yes.

9  Because I think the mechanics are, you know, important to it,

10  and if it could be streamlined in this and there can be, you

11  know, some work in streamlining it, given that we've already

12  been through this once, then I think the City would -- you

13  know, it would certainly be willing to work toward that.  But I

14  think the problem is having something that's unmanageable at

15  this late date.

16       I mean, certainly plaintiffs could have moved for

17  class certification, as they usually do, very quickly.  In

18  fact, in one of the Moodis cases the Fifth Circuit pointed out

19  that one of the things the Court's going to look at is how

20  diligent were the plaintiffs at moving for collective action,

21  so that we don't get into these issues, we're not on the eve of

22  trial saying, is this a case of four people or is this a case

23  of potentially 224?

24       THE COURT:  What are you -- What are you -- From a

25  mechanical standpoint -- I don't know if this is the motion or

1   the point to discuss it, but from a mechanical standpoint, what

2   are you most concerned about?  What is it that you're wanting

3   to avoid or what can we do to address your mechanical concerns?

4           MR. BERGMANN:  I think what the City's concerned

5   about is just surprise, knowing, you know, what's really going

6   to go on in a case that's suddenly grown dramatically and being

7   able to respond to things that are brought up, not in

8   discovery, but just at trial, and being able to fairly respond

9   to it in a manner that allows an orderly trial.

10          THE COURT:  And how would I as a judge help you

11  address those concerns?

12          MR. BERGMANN:  I think the Court could help in the

13  sense that getting the parties to agree on maybe some

14  simplifications, maybe some stipulations, because the -- at

15  least the City's testimony --

16          THE COURT:  Some evidence and things?

17          MR. BERGMANN:  Exactly.

18          The City's evidence is going to be precisely the

19  same; we've already testified it's going to be precisely the

20  same.  Maybe some stipulations, some ways to streamline it that

21  may assist the Court.  And this -- Because I don't think

22  there's any dispute about the fact issues.  I mean, the City

23  has a way of doing it, and there's --

24          So I think if there was some stipulations relative to

25  the City's testimony and some agreement relative -- If we're

```
 1   going to have some sample people, then, fine, then we'd know at

 2   least what we're in for, Your Honor, and be able to plan for

 3   that and anticipate it.  I think that's crucial.

 4        THE COURT:  All right.  Mr. Bergmann, anything else

 5   you want to say on this motion for collective-action

 6   certification?

 7        MR. BERGMANN:  Well, I think one last point, Your

 8   Honor, is, is that another concern the City has in general,

 9   with as many employees as it has, is that there are certain

10   standards for collective actions under Hoffman-La Roche and the

11   Court has applied them, and those standards require that

12   plaintiffs' counsel bring motions for collective action

13   promptly so that the City knows what it has, what it's -- what

14   kind of a case it's going to be defending.

15        THE COURT:  Give me the background on this.  I know

16   that we've been through it before and I've been -- you know,

17   issued some rulings in this case, but give me a little bit of

18   the history as to how this has progressed and, I mean, kind of

19   tell me where you would have expected this motion.

20        MR. BERGMANN:  I think normally you would expect a

21   motion for certification of a collective action is generally

22   made within 60 to 90 days of commencement of the lawsuit.

23   There is -- Often there's some initial discovery that's taken

24   in the case, and then the motion is filed, and we know that the

25   case -- how the case is going to proceed.
```

1    THE COURT:  I don't disagree that normally you see

2  these earlier, but is there -- is there anything in the statute

3  that sets the deadlines for filing these motions or that

4  requires them?

5    MR. BERGMANN:  You know, there really isn't, other

6  than a desire, I think -- No, there's nothing in the statute

7  itself that says when you should do it.  I think it's more a

8  case-management standpoint.  And that's why we filed a motion

9  to strike the consents, because you know, at some point we've

10  got to figure out who's in and who's out.  And the Court at

11  that time indicated that it didn't strike the consents, but it

12  certainly said the case was limited to four people, so we went

13  on that assumption and continued to operate.  And you plan for

14  any case.  Any litigation, both sides plan for it.

15    THE COURT:  All right.

16    MR. BERGMANN:  And I guess lastly we probably would

17  think that if the Court is going to allow the collective

18  action, that an August trial setting is probably just too soon,

19  given where we are now.

20    THE COURT:  All right.  Thank you, Mr. Bergmann.

21    MR. BERGMANN:  Thank you, Your Honor.

22    THE COURT:  Mr. Bregman.

23    MR. BREGMAN:  Just one point, Judge.

24    The notice of opt-ins for a majority of these opt-ins

25  was filed on October 15, 2007.

```
1            THE COURT:  Why didn't you move earlier for this
2    collective-action certification, at least -- at least early
3    enough so that there was still time to do discovery?
4            MR. BREGMAN:  Judge, I want make it clear about how
5    this case came about, because there was some discussion about
6    that.  Judge Herrera did issue an opinion based on summary
7    judgment motions which to this day I believe indicates that it
8    looked like we had established that they were paying wrong,
9    more than just the limited damages trial that's coming forward.
10           THE COURT:  Give me the date or the approximate date
11   that she issued that.
12           MR. BREGMAN:  I don't have that specifically.
13           THE COURT:  Is it fair to say that she issued an
14   opinion on the summary judgment, that you thought you were the
15   big winner, and then when you went to trial you ended you being
16   the little winner?  Is that kind of what happened?
17           MR. BREGMAN:  That is what happened, Judge.  And so
18   what happened was, there was a tremendous amount of inflow of
19   people that were calling our office saying, "I'm not in that
20   first one," when they read about it in the newspaper, "We want
21   to be in that other one," so we wanted to preserve their
22   rights --
23           THE COURT:  And the opt-out period had already passed
24   for that case?
25           MR. BREGMAN:  Exactly.  And the problem is that you
```

```
 1   get -- your time frame starts when you opt in on how far back

 2   you can go.  It goes back three years from the date of the

 3   opt-in.

 4           So, Judge, then we -- Quite frankly, I focused on the

 5   Chavez case, because that was coming up for trial.

 6           Then the last hearing you had, which we discussed

 7   about some of the res judicata and collateral estoppel issues,

 8   the issue was brought up and discussed -- and that's when --

 9   after it was discussed a little bit, just touched on it in your

10   hearing -- we decided that we needed to file it, and not too

11   long after we filed this motion, Judge.  I think that's the

12   time frame the way it's set up.

13           As far as the length, I don't really have an answer

14   for you.  It just -- We didn't -- We didn't do it earlier.

15   I'll just say that.

16           As far as discovery, Judge, I just want to make the

17   record clear.  As he just said, there's no facts in dispute for

18   the most part.  Okay?  I don't know that there are any facts in

19   dispute.  And so, Judge, discovery I've conducted in the other

20   case, depositions, the basic written discovery.  We've also --

21   We've got all that, and we also have trial testimony now from

22   the other one.  And, Judge, I'm someone that likes to do

23   discovery, but I don't like to waste time doing discovery and

24   have the same thing said over again, and so, Judge,

25   discovery -- Mr. Livingston and I made a calculated decision
```

1    that we didn't believe that discovery was really necessary for

2    anything new since, as defense counsel says, the facts are

3    really not in dispute in this.

4         I think we know how they calculate overtime, they

5    know how they calculate overtime, and we disagree on whether or

6    not the law allows for it the way they do it.

7         So that's where we are, Your Honor.  I think I wanted

8    to make one last point.

9         I think you're right to focus in on whether or not

10   their offer of judgment in the jurisdictional issue really does

11   satisfy.  And the case that they referred to in -- I believe

12   it's Sandoz versus Cingular, Fifth Circuit, a 2008 case.

13   There, the specific language is that fully satisfy individual

14   claims.  Their offer, as I think that counsel just stated, does

15   not fully satisfy our claims despite what they put in their own

16   document that it fully satisfies claims.  It does not.

17        And I think that's why at the end of the day I think

18   that there's no harm in going forward with collective action in

19   this.  And if they want to enter into some type of

20   stipulations, Judge, and stuff like that, we'll do everything

21   we can to streamline the trial.  I have no objection to that

22   whatsoever.

23        THE COURT:  If there's really no issues in dispute

24   and I decide that the case is not moot and that I've got to

25   deal with this case, what do you envision -- what do you

1   envision the trial looking like?  I mean, we're going to come

2   to a motion here in a moment, and putting aside a second that

3   it's styled as a motion for stare decisis, but is this the kind

4   of thing that can be resolved just on a motion for summary

5   judgment?  I mean, is everybody -- is there an issue here that

6   everybody -- I know the City doesn't want it redecided, but

7   I've got to do something with this case.  Is there just a -- Is

8   there just a legal issue or a contract interpretation or a

9   regulation interpretation that needs to be made in this case?

10          MR. BREGMAN:  Judge, could I have 30 seconds just to

11   consult with Mr. Livingston so I can give you an answer on

12   that?

13          THE COURT:  Sure.

14          MR. BREGMAN:  Judge, first of all, what -- coming in

15   here I had envisioned that we would do something similar to

16   what Judge Herrera did and first take up the issue of

17   liability, and then if there's liability, then we can talk

18   about the intricacies of doing a damages-issue case.  However,

19   your question to me was a summary judgment question.

20          Judge, in light of the posture of this case, if this

21   Court were to allow us to use the prior testimony at the other

22   trial -- because I think they have a City employee who

23   testifies -- and we have some plaintiffs who described how they

24   were paid on their paychecks -- if that testimony could come in

25   together with some affidavits for the summary judgment issue, I

1   would not have a problem with doing a motion for summary

2   judgment and seeing if you believe you can decide the liability

3   based on that.

4          We did exhibits in that trial, obviously, the union

5   contracts, things of that sort, we did payroll sheets.  I would

6   have no complaint, if defense counsel would agree to it, to do

7   a motion for summary judgment on this -- this perhaps is a

8   better use of the Court's time -- because there are facts that

9   came out in the other trial that we can just use for the

10  summary judgment.  So I would have no objection to doing it

11  that way together with some affidavits, because that may be the

12  best judicial economy, if you will, for handling this case.

13         THE COURT:  Well, let me ask -- Let me ask this.

14  Mr. Bergmann suggested stipulations of fact.  I mean, I think

15  what I hear Mr. Bergmann being most concerned about is he

16  doesn't want to be surprised, he wants to -- he doesn't want to

17  show up for a trial or a summary proceeding or something and

18  something that he didn't anticipate, either a representative

19  witness or a representative plaintiff or something show up.

20         Are you committed to trying to address that concern

21  with Mr. Bergmann to try to set down and eliminate as much as

22  reasonably possible that sort of fear that he has?

23         MR. BREGMAN:  I am, Your Honor.  And perhaps if the

24  Court would want us to, I would be willing to agree that in the

25  next 45 days or so, that we can see if we can't get together

1    and stipulate exactly to what the facts are based on prior

2    testimony and based on everything else and then perhaps provide

3    it to you in written briefs, and then you can set it for a

4    motion hearing, if you'd like.  That seems to me that that

5    would be fine.

6           I've worked well with Mr. Bergmann and Mr. Garcia,

7    and I have no problem doing that whatsoever.  And I would be

8    happy to, if you give us some kind of deadline to do it under,

9    that we sit down and we stipulate to everything that we can,

10   and then we can determine -- and then if you want, we can do a

11   summary judgment motion based on the agreed stipulation.

12   Because there is a court record already of what they're

13   claiming and what we're claiming.  There's depositions and

14   there's other -- So I -- If -- I mean, he mentioned it.  There

15   is no disputing the facts.  It's applying it.

16           THE COURT:  All right.  Anything further,

17   Mr. Bregman?

18           MR. BREGMAN:  No, Judge.  Thank you for your time.

19           THE COURT:  Thank you.

20           Mr. Bergmann, let me ask you, after listening to that

21   exchange, any thoughts here as to -- does any of that address

22   the City's concerns?

23           MR. BERGMANN:  I think a lot of it does, Your Honor.

24   Certainly, the idea would not be to try the exact same issue

25   again.  I don't think that serves anyone's purpose.  To the

1   extent that we can stipulate based upon a trial record before

2   Judge Herrera, I think that would be very helpful.  We're

3   certainly willing to look at that.

4          Mr. Bregman mentioned some affidavits.  We'd

5   certainly want to know what they were going to be and that to

6   make sure that nothing else came up.

7          But, yes, it sounds like a workable plan to sit down

8   and go over the transcript from the trial before Judge Herrera

9   and the testimony that was given there by the people who did

10  testify there.  I think that would be helpful.  Because it's

11  going to be -- I think it's going to be pretty much of the

12  same, anyway, and it seems to me it would be much more

13  efficient, since we have a trial record, to use that.

14         THE COURT:  All right.

15         MR. BERGMANN:  I would suggest 60, rather than 45

16  days, just being realistic, Your Honor, in terms of the work

17  ahead of us in this, but that's something that we certainly

18  would be willing to work with Mr. Bregman.  I mean, obviously,

19  you know, we've worked together, and I think we've conducted

20  ourselves professionally throughout that time.

21         THE COURT:  All right.  Thank you, Mr. Bergmann.

22         Anything further, Mr. Bregman?

23         MR. BREGMAN:  Nothing.

24         THE COURT:  Well, I want to look at this a little bit

25  more, but I'm inclined to think that I do have jurisdiction,

1    that the offer here doesn't moot out the claim here because the

2    claim is broader.   And for me to decide that the -- that it

3    mooted out would be for me to prejudge the merits of the

4    plaintiffs' claim and say, No, it's limited to what the other

5    courts have done, or Judge Herrera's done in Chavez, and I

6    don't think I'm at liberty to do that, so I think I would be

7    making a merits decision before I determine whether I had

8    jurisdiction, and I think I have to do it the other way, and I

9    think that unless the plaintiffs' claims are fully satisfied,

10   which I don't think the City is prepared to do here because

11   they disagree with the plaintiffs' claims, then I think I have

12   jurisdiction, and so the claims are not mooted.

13           I've thought about the unusual posture here, but

14   given that I think that everyone agrees that these thousand or

15   so workers in these two cases are common, there doesn't seem to

16   be any reason to proliferate any further the litigation by

17   dealing with only these four, and so I'm inclined to certify

18   the case as a collective action.

19           So I guess I'm going to look at it a little more and

20   satisfy myself that there's no procedural impediment, but I'm

21   inclined to think that that's the best way to proceed, and then

22   take other issues seriatim and deal with those to litigate the

23   case as efficiently as possible.

24           So while I'll take this under advisement I'm inclined

25   to grant this motion.

1           Now, on the motion for the Court to file dispositive

2   motion on the basis of stare decisis, here are my thoughts.

3   I'll hear anything you want to hear on this motion.  I guess I

4   don't know enough about the case to make a determination as to

5   whether I will follow Judge Herrera, I simply don't know enough

6   about the merits, so I -- so I guess I'm not inclined to just

7   say, Well, that's Judge Herrera, I'm going to follow whatever

8   she did.  If it were an appellate court that I -- had binding

9   control over me, then I would be bound by their decision if

10  everybody agreed that the facts here were identical, but I'm

11  not sure that stare decisis necessarily requires me to follow

12  Judge Herrera, and I think it's unfair to at least the

13  plaintiffs in this case for me to make that determination

14  without a full hearing and briefing.

15          So if that's the nature of the motion, "Judge, just

16  follow what Judge Herrera did," then I'd be inclined to deny

17  it, because I think it is getting very close to the privity

18  issues that we dealt in the prior opinions on res judicata and

19  collateral estoppel.

20          On the other hand, if what the City is asking me to

21  do is say, "Judge, we want you to get into the merits here and

22  look and see, and we think you will agree that Judge Herrera

23  did the same thing, and we'd like to file a motion to that

24  effect," I'd be inclined to grant that sort of motion, because

25  that seems to me to -- if we can resolve this in a summary

1    fashion without a trial, then I'd be inclined to grant that.

2            Now, we have talked a little bit, as we've developed

3    this morning, about coming up with some procedure where y'all

4    might do something.  I'm sort of hearing two different things

5    as a possibility.  One is that -- The first one is that I grant

6    you leave to file a motion, you would file a motion for summary

7    judgment, you'd get with Mr. Bregman and Mr. Livingston and

8    y'all would agree on what the record is and everybody agree

9    they just want this resolved on a summary judgment and here are

10   the facts.

11           On the other hand, if there are factual issues in

12   dispute and everybody knows there's factual issues in dispute

13   and it's going to require a trial, then maybe what the best

14   thing to do is just agree on the record, send it to me, and I

15   set up a hearing and then I hear the legal arguments at the

16   time.

17           I'm not adverse to giving the City leave to file a

18   motion, but I've kind of got to tell you up front that if it's

19   just going to be on -- if it's just on the doctrine of stare

20   decisis I won't preclude you from filing a motion, but I'm not

21   inclined to grant it.  So I don't know if that's much guidance

22   for you.

23           But, Mr. Bergmann, it's your motion.  If you wish to

24   speak in support of it.

25           MR. BERGMANN:  Sure.  Your Honor, and I understand

1    Your Honor's position, and certainly the City is not about

2    jousting at windmills.  I think what seems to make sense is

3    that the concept of the City is really the latter thing the

4    Court said, is to have the Court really fully understand what

5    the City has done, the case that was before Judge Herrera, and

6    then make a decision on it.  So it seems to me that the concept

7    of stare decisis would probably fold into a motion for summary

8    judgment if the parties could stipulate to everything.  It's

9    really what we're saying.  And I think, based upon what's been

10   said here, that that probably suggests a way that the Court's

11   concerns, the City's concerns and plaintiffs' concerns can all

12   be addressed in an efficient manner.

13        So I think our view would be, is that we would sort

14   of try to combine our concepts of stare decisis with concepts

15   of summary judgment based upon the full record that we've

16   stipulated to for the Court to review.  And I think that's the

17   fairest way to deal with it, and it that seems to be the way

18   the Court -- that seems to fit with what the Court thinks would

19   be appropriate from the Court's standpoint.

20        THE COURT:  Yes.  The one thing I would caution y'all

21   a little bit on -- I don't want to get myself into this

22   situation.  Sometimes parties come to me -- and this puts the

23   Court in a little bit of an awkward position -- there are

24   genuine issues of material fact, and everybody knows that, but

25   they do cross-motions for summary judgment, hoping that I will

```
1   just decide the legal issue, and that puts me in a difficult

2   position, because everybody knows the record contains genuine

3   issues of material fact that really preclude summary judgment.

4   Everybody still wants summary judgment, and then when the party

5   that doesn't get the summary judgment they wanted, they go up

6   on appeal and I've got all you these factual issues.

7         I guess if -- And y'all know this case much better

8   than I, and I don't even pretend to know the answer to this,

9   but if you were in front of Judge Herrera for the very first

10  time and everybody knew that there were genuine issues of

11  material fact and you were going to have to have a trial, it

12  seems to me we shouldn't go through the summary judgment stage,

13  we should probably go through maybe just an agreement on what

14  the record is, give it to me, y'all supplement it if you want

15  to supplement it with a short trial or a short hearing or

16  something like that, and then we have arguments on what the

17  real legal issues are.

18        Have you got any thoughts on that?

19        MR. BERGMANN:   Yeah.  I think maybe, Your Honor, as

20  you were saying it, I thought that it's probably appropriate

21  for counsel, who know the case best, to during this period that

22  I mentioned, 60 days, counsel said 45, of going over and

23  exploring it to see whether during that period, at the end of

24  it we really feel like there are no disputed issues of fact or

25  whether we think that at that point, having gone through it and
```

1  having sat down and had discussions, counsel with counsel,

2  about it we feel that maybe a short trial would be necessary.

3          But it seems to me that approach is so much more

4  efficient to really examine it and, you know, keep in mind the

5  Court's concern that we're not masking issues.  I don't think

6  we are.  I don't think in this case we are really masking

7  issues, but it's an issue --

8          THE COURT:  On the summary judgment motion that she

9  did earlier, what was that?  Did everybody agree there was some

10 legal issue that just needed to be decided before trial?

11         MR. BERGMANN:  Well, there were a number of different

12 issues, Your Honor, a number of different legal issues.  She

13 resolved some, she resolved others but left others open.

14 And --

15         THE COURT:  So she tried the ones that there were

16 factual issues?

17         MR. BERGMANN:  Exactly.  What she did is she wanted,

18 essentially, a better understanding of the City's system, and

19 she just felt like, I think from her standpoint, that the Court

20 didn't have a full understanding of all the issues, and that's

21 why she set down the remaining issues for a bench trial before

22 the Court, and that took care of it.

23         Some of the issues she resolved herself and took care

24 of some of the issues.  There was an issue of a bonus -- the

25 mayor's bonus, for example.  She decided that on summary

1   judgment.  That was over.  No disputed issue on that.  But some

2   of the other issues I think had more complexity and I think the

3   Court just want more input.

4           THE COURT:  Well, here's kind of what I'm thinking

5   about, is denying the motion for just a motion on stare

6   decisis, granting the motion for summary judgment if the

7   parties can agree on a stipulated statement of facts and they

8   agree on that and y'all decide y'all just want to proceed with

9   motions for summary judgment, but not allow a motion for

10  summary judgment if there's really genuine issues of material

11  fact, and then, instead, we use the trial procedure --

12          MR. BERGMANN:  Sure.

13          THE COURT:  -- where y'all give me the record, and

14  then we do it that way.

15          MR. BERGMANN:  I think the last thing either side

16  would want is to, you know, just have this thing go on and on.

17  I think that we should be able to decide among ourselves

18  whether we can stipulate to a record, stipulate to everything

19  for Your Honor; and if we can't, well, then -- then we have to

20  deal with those consequences.

21          THE COURT:  Does that resolution seem appropriate on

22  your motion here?

23          MR. BERGMANN:  I think it is, Your Honor.  I think

24  we're satisfied.  I think this was very helpful to sort of, you

25  know, really discuss these issues, because they are

```
1    complicated.

2              THE COURT:  All right.  Thank you, Mr. Bergmann.

3              MR. BERGMANN:  Thank you, Your Honor.

4              THE COURT:  Mr. Bregman, what do you think about that

5    resolution of this motion?

6              MR. BREGMAN:  I think that's fine, Judge.  You

7    actually -- I don't want to ever say the Court misspoke, but I

8    think you said you'd grant the motion for summary judgment.

9    You weren't actually granting a motion for summary judgment,

10   you were granting a motion to file a motion for summary

11   judgment, and I just want to be clear.

12             THE COURT:  What did I say?

13             MR. BREGMAN:  You said you were granting the motion

14   for summary judgment.

15             THE COURT:  Yes, I'm granting a motion to file the

16   summary judgment.

17             MR. BREGMAN:  Okay.  The other thing, Judge, that I

18   just want to make sure we're clear on, because it makes it

19   tremendously more specific and easier for everybody to work

20   through, we're talking about -- just about the liability

21   issues, as to whether or not it's for a summary judgment motion

22   for this first expedited trial, if you will, or a trial on the

23   specific agreed upon facts.  We're not talking about damages

24   for each single plaintiff right now.

25             THE COURT:  Is that what you're thinking,
```

1   Mr. Bergmann?

2           MR. BERGMANN:  I'm thinking that they would be

3   liability issues.  And I understand the Court to be saying that

4   on granting the motion for leave to file a motion for summary

5   judgment it would be in connection with this process that

6   Mr. Bregman initially described.

7           THE COURT:  So y'all seem to be in agreement on that

8   and I won't interfere with that.

9           MR. BREGMAN:  I think we are, Your Honor.  And I just

10  want to say that I know that you're basically saying that they

11  can file a motion for summary judgment, but, obviously, part of

12  our motion and response is a motion for summary judgment going

13  back the other way, in essence.  I just want to make sure that

14  that's clear.

15          MR. BERGMANN:  Well, we clearly understood that both

16  sides would be filing those motions.

17          MR. BREGMAN:  Okay.

18          THE COURT:  Let's do this.  Let me see if I can

19  articulate this and y'all are in agreement with this.

20          I'll deny the motion just to file a motion -- and

21  this may not have been what the City intended to do -- but just

22  file a motion saying there's stare decisis, follow what Judge

23  Herrera did, so I won't be granting that motion.  Certainly,

24  the City in its motion for summary judgment can argue that I

25  should follow Judge Herrera's opinion, and I certainly will

 1    look at it very, very, very carefully.

 2            I will grant the City's -- and I guess what I hear

 3    Mr. Bregman saying is also the plaintiffs' request to file a

 4    motion for summary judgment to the extent y'all agree on a

 5    statement of facts on genuine issues of material fact that are

 6    not disputed.  If you can't agree on that, then I think what

 7    we -- what I'll do is I'll deny a motion for summary judgment

 8    and we will proceed with a trial.

 9            And if y'all can agree on the summary proceedings for

10    the trial, such as what the evidence is and those sorts of

11    things, great, I'm all for that.  And if you need to supplement

12    that in some way and you can agree on those procedures, that's

13    fine.  And if you can't agree on the procedures, then I suggest

14    we regroup, because I don't want to get -- I do want -- I am

15    concerned about prejudice to the City.  I don't want them to be

16    surprised.

17            If y'all all agree on the evidence and, "Here it is.

18    Just, Judge, go read it," that eliminates, I think, the

19    surprise issues.  On the other hand, if we're going to have,

20    "Here's the record, read this, but we want to present some

21    additional evidence," then if you can satisfy Mr. Bergmann's

22    concern about surprise, then I will just -- we'll just go ahead

23    with the trial.  If you can't, call Ms. Wild back and I will

24    get on the phone with you or we'll reconvene and see what the

25    specific mechanical issues are.

1          How does that sound?

2          MR. BREGMAN:  That sounds absolutely fine with the

3    plaintiffs, Your Honor.  I just ask that you tell us what you

4    think would be appropriate time frames.  That's all I'm looking

5    for.  Sixty days?  I don't object to sixty days.

6          THE COURT:  Well, that's fine.

7          MR. BREGMAN:  Sixty days to file the summary judgment

8    motions?

9          MR. BERGMANN:  I would say 60 says days to be sure we

10   can agree, because I think what would be appropriate is, if we

11   can agree on stipulated facts, I think we should report back to

12   the Court and let the Court know, in fact, we are able to

13   stipulate on facts, and then I think we can do a briefing

14   schedule at that point.

15         THE COURT:  Let me -- Before I get into timetables on

16   this, does this ruling on your motion -- does this seem

17   appropriate?

18         MR. BERGMANN:  Yes, Your Honor, it does.

19         THE COURT:  All right.  Now, here's what I would

20   suggest we do.  And this may not be what y'all are thinking of,

21   and if y'all don't like this then, fine.  But what if we set up

22   a shorter time period just to see if y'all can agree on the

23   statement of genuine issues of material fact?  This would be an

24   attempt to see if y'all can agree on that so that y'all -- If

25   y'all can agree on the statement of genuine issues of material

1    fact -- if you can agree on those, then basically what you're

2    telling each other, y'all both think this can be resolved with

3    a motion for summary judgment and you don't have to have a

4    trial and so we can -- we then can set up a schedule.

5           But if y'all are not going to be able to agree in a

6    fairly short order on a statement of genuine issues of material

7    fact that you would both put into your motion, your

8    cross-motion, then what we're really looking at is y'all really

9    spending your time agreeing on what the record's going to be

10   for my trial.

11          So I was going to suggest something like 10, 15, 30

12   days, something like that, for y'all to see if you can agree on

13   a statement of genuine issues of material fact.  If that breaks

14   down, there's not going to be any motions for summary judgment,

15   then you take the other 30 days to put together the record for

16   me in this case.  Then if you can agree on the record, fine; if

17   you can't agree, you call Ms. Wild, and we'll talk to you about

18   what the problems are or what the additional -- What I'm

19   anticipating is that y'all may agree on a record but there may

20   be some supplementation that you want to do and that you can't

21   agree maybe on that.

22          MR. BREGMAN:  I have no problem with that; the 30

23   days is fine.

24          THE COURT:  Do you want to do 30 and then 30?

25          MR. BERGMANN:  Right.

```
1            THE COURT:  Because at the end of 30 days you've got
2    your genuine issues of -- your statement of genuine issues of
3    material fact.  What I would then suggest, if y'all would agree
4    on that, file your motion within 15 days.
5            MR. BREGMAN:  Okay.
6            THE COURT:  It's going to be cross motions, right?
7            MR. BREGMAN:  Yes.
8            THE COURT:  So y'all can just file them
9    simultaneously 15 days after you agree on that.
10           What do you think about that, Mr. Bergmann?
11           MR. BERGMANN:  I'm just wondering how that affects
12   the trial setting.
13           THE COURT:  Well, give me the trial date again.
14           MR. BERGMANN:  August 10th.  I just think it's -- I
15   think it's pretty tight, Your Honor, realistically.  I would
16   hate to come up at the last minute and say --
17           THE COURT:  Well, what if we did this?  If y'all
18   agree in 30 days on the statement of genuine issues of material
19   fact -- if y'all agree on that, y'all are basically telling
20   each other and the Court, "We don't need a trial, we're going
21   to resolve this with summary judgment because we agree on all
22   the facts, you just rule."  So you just call the Court and say,
23   "We've reached an agreement, we're filing motions for summary
24   judgment, they're going to come in approximately late July,"
25   and so we'll just vacate the trial.
```

```
 1            If y'all can't agree, then we're going to trial and
 2   y'all have basically 30 -- you really have about 45 days to get
 3   ready for the trial.  I don't need -- I won't -- I won't be
 4   holding y'all up on the ruling for summary judgment.
 5            Does that make sense?
 6            MR. BREGMAN:  Yes, sir.
 7            MR. BERGMANN:  All right.
 8            THE COURT:  Well, this seems very easy.  Is there
 9   anything else we need to discuss while we're together?
10   Anything else I can do for you today?
11            Let me see.  We've got the pretrial conference set
12   for July 17th, 2009.
13            MR. BERGMANN:  Yeah, I think that might be an issue,
14   Your Honor.
15            THE COURT:  All right.  Let's figure out -- Today's
16   June 9th.  There's 30 days in June.  So we're going to be
17   looking at by June 9th -- July 9th you're going to know whether
18   we're going to trial or summary judgment.  Would that not be
19   about a good day for us to get together and see if y'all
20   have -- see if y'all know what you're doing as far as the
21   record's concerned?
22            MR. BREGMAN:  I think we ought to keep it.
23            THE COURT:  Why don't we do this?  Why don't we keep
24   it?
25            MR. BERGMANN:  Okay.
```

1    THE COURT:  If y'all agree you don't need it, y'all

2    can call Ms. Wild and we'll vacate it.  But that will give you

3    a full almost ten days after y'all know.  Y'all probably are

4    going to know quicker than that whether you're -- whether this

5    summary judgment procedure's going to work.  So if y'all -- If

6    y'all start figuring out that that's not going to work and

7    you're going to have to go to a trial, y'all may start shifting

8    pretty quickly over to try and put the record together and

9    then -- so that date may be about right.  If it doesn't work

10   for you, call Ms. Wild and we'll vacate it and set it at a

11   different time.  If it does work for you --

12        And, Mr. Bergmann, I don't know if I've said this

13   earlier, you certainly don't -- I don't want to make you come

14   out here for short hearings and things, so don't hesitate to do

15   these by phone if you want to do that.

16        MR. BERGMANN:  I try to do it, Your Honor, but I had

17   a sense that today was not going --

18        THE COURT:  Well, I understand.

19        MR. BERGMANN:  -- to be a short hearing.  But I do

20   appreciate the Court's courtesy in that respect.

21        THE COURT:  Yes.  Don't hesitate to do that.

22        Ms. Wild's reminding me that one other reason we may

23   want to keep that date is, I don't have a lot of other

24   available dates.  I've got some trials, firm settings sort of

25   backed up and I do have the Tenth Circuit Judicial Conference

```
 1    that I'm going to try to attend in there, too, so I'm going to
 2    be out a little bit in one of those weeks.  So the nice thing
 3    about having that date is, I'm committed to be being here and
 4    for you, so we might hang on to it for that reason.
 5             All right.  Anything else we need to discuss?
 6    Anything else I can do for you today?
 7             Mr. Bregman?
 8             MR. BREGMAN:  No.  Thank you, Judge.
 9             THE COURT:  Mr. Bergmann?
10             MR. BERGMANN:  Thank you.  We appreciate your
11    attention to this matter.
12             THE COURT:  All right.  Appreciate your assistance on
13    this matter.
14             Call Ms. Wild if there's anything we can do and just
15    get on the phone and try to work through some of these issues.
16    Let me know.
17             I'll try to get you opinions and orders out on these
18    issues.  I did take that first one under advisement.  I'm
19    pretty confident I know what I'm doing on that, but I do want
20    to look at a few matters.  But be a little patient with me.
21    I've got just some enormous commercial cases lined up this
22    summer, some class actions and things, so I'm working through a
23    number of them and they're taking -- they're taking some
24    stretches of time, so I'll try to get them there, but be
25    patient with me.  All right.
```

1          MR. BERGMANN:  This area of law requires patience,

2    Your Honor.

3          THE COURT:  Yes.  They're not FLSA cases, but they're

4    two enormous securities cases.  One of them was this

5    Westland -- you probably don't know a lot about the area, but

6    this Westland case, and then I've got the Thornburg cases, so

7    I've got a pretty full platter here this summer.

8          All right.  Y'all have a good day.

9        (Court stood in recess at 11:08 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C-E-R-T-I-F-I-C-A-T E

 2   UNITED STATES OF AMERICA

 3   DISTRICT OF NEW MEXICO

 4

 5        I, Danna Schutte Everett, RPR, CCR, CRR, Official

 6   Court Reporter for the State of New Mexico, do hereby

 7   certify that the forgoing pages constitute a true

 8   transcript of proceedings had before the said Court held

 9   in the City of Albuquerque, New Mexico, in the matter

10   therein stated.

11        In testimony whereof, I have hereunto set my hand on

12   this 22nd day of July, 2009.

13

14        _____
                   DANNA SCHUTTE EVERETT
15                 Registered Professional Reporter
                   Registered Merit Reporter
16                 Certified Realtime Reporter
                   NM Certified Court Reporter #139
17                 333 Lomas Boulevard, Northwest
                   Albuquerque, New Mexico  87102
18                 Phone:  (505) 348-2283
                   Fax:  (505) 348-2285
19

20

21

22

23

24   June 9, 2009, Rodriguez vs. City of Albuquerque

25
```