IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LAWRENCE RODRIGUEZ, STEVEN J.
DURAN, GREG MIERA, and ROSE MARIE
NEAL, On behalf of themselves and other
present and former City employees,

        Plaintiffs,

v.                                No. CIV 07-00901 JB/ACT

CITY OF ALBUQUERQUE,

        Defendant.

## STIPULATED FACTS

The parties stipulate to the following materials facts to be taken into evidence without further proof:

**I.**    **Parties.**

    1.    Plaintiffs in this case allege they are present and former City employees entitled to have their overtime wages calculated in accordance with the provisions of the Fair Labor Standards Act (FLSA) and the applicable collective bargaining agreements.

    2.    Over 200 individual Plaintiffs, including four named Plaintiffs, have opted in and have been certified as members of this collective action.

    3.    Defendant the City of Albuquerque ("City") is a municipality and public employer.

**II.     Procedural Background**

    **A.     This Litigation**

4. On September 12, 2007 Plaintiffs Lawrence Rodriguez, Steven J. Duran, Rosemary Neal[1], Jason Brown, and Greg Miera, on behalf of themselves and other present and former City employees, filed a Complaint for collective action under 29 U.S.C. § 216(b) ("Section 216(b)") of the FLSA.

5. They allege that the City has not paid certain employees the overtime wages to which they are entitled under the FLSA.

6. Specifically, Plaintiffs allege that they have a right of recovery under the FLSA, 29 U.S.C. § 207(a)(1), for unpaid overtime wages owed to them for hours worked in excess of their normal 40-hour or other regular work week or period.

7. They allege that the City has failed to include all the properly applicable "other compensation" in calculating the "regular rate of pay" of some of its employees, with the result that these employees receive less overtime pay than required by the FLSA.

8. The City calculates the "regular rate of pay" based on the number of hours worked by employees, including overtime hours, rather than by the number of hours in the employees' normal work week; Plaintiffs disagree with this calculation.

9. The City uses a one-half multiplier in calculating the additional over-time pay due; Plaintiffs believe a one-and-one-half multiplier should be used.

10. In addition, they allege that in many cases, the City is incorrectly taking "credits" or "offsets" against overtime pay for holiday, sick time, or other pay which is provided in a

---

[1] In the First Amended Complaint, "Rosemary Neal" was changed to reflect Plaintiff's proper name, "Rose Marie Neal."

union agreement or which is otherwise properly not creditable or chargeable against overtime pay under the provisions of the FLSA.

11. The City has denied any violation of the FLSA.

12. Discovery closed on October 27, 2008. However, neither party has taken any discovery in this case.

13. On November 6, 2008, the City moved for summary judgment on the basis of res judicata or collateral estoppel arguing that the issues in this litigation had already been decided in another case before this court, *Chavez et al v. City of Albuquerque*, No. CIV 02-256 JCH/ACT (D. N.M.) ("*Chavez*"). The Court denied the City's Motion on December 22, 2008.

14. On April 8, 2009, Plaintiffs moved for collective action certification. On July 15, 2009, the Court granted Plaintiffs' motion, allowing the case to proceed as a collective action.

15. On July 17, 2009, the Court vacated the bench trial scheduled from August 10-12, 2009. It ordered that the Parties submit a statement of stipulated facts and it set a briefing and hearing schedule for motions for summary judgment.

### III. City's Rules and Ordinances.

16. The City's Merit System Ordinance, § 3-1-11, provides that "Overtime may be paid by the city for work performed outside of established work hours in accordance with the Fair Labor Standards Act."

17. The City's Personnel Rule 302.2 provides that "when overtime is required for non-exempt employees, compensation must be in accordance with the Fair Labor Standards Act (FLSA) and any applicable collective bargaining agreement."

## IV.  Collective Bargaining Agreement Provisions.

18. Almost all classified City employees are represented by labor unions and covered by collective bargaining agreements ("CBAs") negotiated between the unions and the City.[2] These CBAs establish various terms and conditions of employment. Some of the terms and conditions of employment in the CBAs exceed the overtime requirements of the FLSA.

19. For example, the following overtime payments are provided under the CBAs, but are not required under the FLSA:

    (a)    Overtime pay for work beyond the regular schedule.

    (b)    Overtime pay for working on a holiday.

    (c)    Overtime pay for off-shift court appearances for police officers.

    (d)    Overtime pay caused by counting hours of paid, unworked leave such as sick leave or vacation leave time as hours worked. The CBAs provide compensation for such leave time such as holidays, vacation time and sick leave time. If employees perform work on holidays, they receive premium compensation under their respective union contracts.

---

[2] Relevant portions of the most recent CBAs between the City and the various unions that represent City employees are attached hereto. Historic CBAs have contained sections identical in form, if not in substance, to the provisions of the most recent CBAs cited and discussed herein. Portions of the following CBAs are attached as Exhibits hereto: Agreement between the City of Albuquerque and Albuquerque Police Officer's Association, Effective July 1, 2008 through June 30, 2011 (Exhibit 1); Agreement Between the City of Albuquerque and Local 624 AFSCME, July 1, 2008 to June 30, 2010 (Exhibit 2); Agreement Between the City of Albuquerque and the Albuquerque Area Fire Fighters Union, IAFF Local 244 City Chapter, Effective: July 1, 2006 thru June 30, 2008 (Exhibit 3); Agreement Between the City of Albuquerque and Local 3022 AFSCME, Council 18, AFL-CIO, September 24, 2008 (Exhibit 4); Agreement Between the City of Albuquerque and the Albuquerque Officers' Association, Local 1888, September 24, 2008 (Exhibit 5); Agreement Between the City of Albuquerque and Albuquerque Clerical and Technical Employees, AFSCME, Local 2962, AFL-CIO, CLC, October 9, 2008 (Exhibit 6); Agreement Between the City of Albuquerque and the New Mexico Transportation Union, Effective: July 1, 2006 through June 30, 2008 (Exhibit 7); Agreement between the City of Albuquerque and AFSCME Local 624 Transit Union, Effective November 9, 2008 through June 30, 2011 (Exhibit 8).

CH1 11772630.4

20.     The normal work week of most City employees is set out in their CBAs. The normal work week for all employees except firefighters is 40 hours per week, consisting of five eight-hour days or four ten-hour days.

### B.     Albuquerque Police Officers' Association Contract

21.     The contract between the Albuquerque Police Officers' Association ("APOA") and the City  (attached as Exhibit 1) provides, under a caption titled, "General Workday Provisions," that the "normal workday shall be eight (8) or ten (10) hours."  Under a caption titled, "General Work Week Provisions," it provides that the "normal workweek will be forty (40) hours comprised of either five (5) eight-hour or four (4) ten-hour days." Under a caption titled "Overtime," the contract also provides that "[e]mployees shall be entitled to overtime compensation at the rate of time-and-one-half their regular straight-time rate when they perform work in excess of forty (40) hours in any one workweek" and that "for the purpose of computing overtime, paid leave shall be considered time worked, as per Section 2.5 (FLSA)."

22.     The contract between the APOA and the City further states, under a separate caption titled, "Fair Labor Standards Act":

> Under the Fair Labor Standards Act (FLSA), paid leave is not considered time worked for the purpose of computing overtime and the *regular rate* for the purpose of computing overtime includes all remunerations.
>
> The parties thereto agree that for the purpose of computing overtime, paid leave will be considered time worked and the regular rate includes the hourly rate with no other remunerations included.  Under 7K of the FLSA, the parties agree that for the purpose of computing overtime, the pay schedule will be a 7 consecutive-day, 40-hour workweek.
>
> Applications of the FLSA as it pertains to the exempt status of positions will not change from current practice.

Exhibit 1 (emphasis in original).

5

23. The contract between the APOA and the City provides for the sale back to the City of excess vacation and sick leave at the end of the year. Specifically, the contract provides that "[a]ll excess vacation accruals will be paid to the employee as monetary compensation at the end of the calendar year on an hour for hour basis." The contracts further provide that "[a]ny sick leave accrued over the maximum [of 2000 hours] will automatically be converted to hazardous duty leave at the rate of two days of sick leave for one day of hazardous duty leave." *See* Exhibit 1.

### C. AFSCME Local 624 Contract

24. The contract between the City and AFSCME, Local 624 (attached as Exhibit 2), covering all permanent non-probationary B-series employees whose job code begins with a 1, 2, or 3, performing work classified in the 1, 2, or 3 job codes (i.e., certain blue collar employees), provides that "[a]n employee's workweek shall consist of forty (40) hours per week, eight (8) hours per day, five (5) consecutive days per week or ten (10) hours per day, four (4) days per week." The contract states that "[e]mployees shall be paid at the rate of time and one-half (1-1/2) for all hours worked in excess of 40 hours per week.... For the purpose of computing overtime, paid leave will be considered time worked." This provision falls under a caption titled "Overtime,". The contract provides that "[e]mployees who have accumulated over one year vacation may convert 50% of the accumulation over one year to a cash payment once per year." Sick leave may also periodically be converted to a cash payment. *See* Exhibit 2.

### D. Albuquerque Area Fire Fighters Union Contract

25. The contract between the Albuquerque Area Fire Fighters Union and the City (attached as Exhibit 3), covering all sworn, permanent, non-probationary safety sensitive fire fighters through the rank of commander, provides that work schedules for the Fire Department will consist of (a) a "56-hour work week cycle consisting of two consecutive 24-hour shifts and

CH1 11772630.4

four days off," (b) a "42-hour work week cycle of two 10-hour shifts, two 14-hour shifts and four days off," or (c) a "40-hour work week cycle [consisting of] 4 10-hour shifts." The contract provides, that "[o]vertime worked shall be paid at time and one-half the regular rate of pay. All hours worked in excess of the employee's regular assigned shift will be compensated at the overtime rate of time and one half the regular rate of pay." In addition, "[t]ime spent in leave with pay status shall be considered time worked for purposes of computing overtime." *See* Exhibit 3.

      26.      The contract between the City and the Albuquerque Area Fire Fighters Union provides that if a fire fighter has accumulated sufficient vacation or sick leave (at the end of the year for sick leave and once per calendar year for vacation leave), that employee can sell his or her leave back to the City. Specifically, the CBA provides that Fire Department employees "who have accumulated over two years vacations [sic] may convert up to six (6) days over the two-year accumulation to cash payment once per calendar year." With respect to sick leave, the CBA provides that employees on a 56-hour workweek may sell back their leave as follows: "[f]or sick leave hours accumulated over 700 hours the employee may convert any or all such hours on the basis of 3 hours of sick leave for one hour's pay.... For hours accumulated over 1008 hours on the basis of 2 hours of sick leave for one hour's pay.... For hours accumulated over 1400 hours on the basis of 3 hours of sick leave for 2 hour's pay." The contract further provides that employees on a 40-hour workweek may sell back their leave as follows: "[f]or sick leave hours accumulated over 500 hours the employee may convert any or all such hours on the basis of 3 hours of sick leave for one hour's pay.... For hours accumulated over 720 hours on the basis of 2 hours of sick leave for one hour's pay.... For hours accumulated over 1000 hours on the basis of 3 hours of sick leave for 2 hour's pay." The contract provides that employees on a

42-hour workweek may convert their leave as follows: "For sick leave hours accumulated over 525 hours the employee may convert any or all such hours on the basis of 3 hours of sick leave for one hour's pay.... For hours accumulated over 756 hours on the basis of 2 hours of sick leave for one hour's pay.... For hours accumulated over 1050 hours on the basis of 3 hours of sick leave for 2 hour's pay." *See* Exhibit 3.

### E.     AFSCME Local 3022 Contract

27.     The contract between the City and AFSCME, Local 3022 (attached as Exhibit 4), covering all MT, MJ, and ML employees and eligible part-time M-series employees (i.e., certain white collar employees), provides that, "FLSA non-exempt employee[s] shall have a workweek of forty (40) hours per week, eight (8) hours or ten (10) hours per day."

28.     The contract between the City and AFSCME, Local 3022, provides, under a caption titled "Overtime," that "when overtime is required for non-exempt employees, compensation must be in accordance with the Fair Labor Standards Act (FLSA) and this Agreement. Paid time will be considered hours worked for purposes of calculating overtime." *See* Exhibit 4.

29.     The contract between the City and AFSCME, Local 3022 also provides that employees may sell back their sick leave. Specifically, employees who have "reached the specified accumulation levels" may convert sick leave to cash "in November of each year." *See* Exhibit 4.

### F.     AFSCME Local 1888 Contract

30.     The contract between the City and AFSCME, Local 1888 (attached as Exhibit 5), covering all non-probationary Department of Municipal Development Security Officers, Animal Services Officers, APD Transport Officers, and Transit Security Officers, provide*s*, that "an Employee's normal work week shall be forty (40) hours per week, eight (8) hours per day, five

8

(5) consecutive days, of eight (8) consecutive hours per week, except for employees presently working ten (10) hours per day, four (4) consecutive days of ten (10) consecutive hours per week."

31.     The contract between the City and AFSCME, Local 1888, provides, under a caption titled "Overtime," that "[f]or the purpose of computing overtime, paid leave will be considered time worked."  The contract provides that "leave with pay is available for the following reasons: vacation, sickness, injury, emergencies, City business, jury duty, voting, annual military services and education and leave with pay taken in conjunction with the F.M.L.A. policy."  With respect to holidays, the Local 1888 contract states that:

> [e]mployees shall receive holiday pay at straight time at their hourly rate of pay for eight (8) hours, for all holidays not worked. In the event that an Employee is required to work on a holiday and does not exercise an option to take a floating holiday, the employee shall be paid holiday pay at the rate mentioned above plus time and one half for all hours worked.

*See* Exhibit 5.

32.     Under the contract between the City and AFSCME, Local 1888, unused sick leave may be sold back to the City.  *See* Exhibit 5.

### G.     AFSCME Local 2962 Contract

33.     The contract between the City and AFSCME, Local 2962 (attached as Exhibit 6), covering non-probationary C-Series employees (i.e., clerical and technical employees), states, under a caption titled "Overtime," that "[e]mployees shall be paid at the rate of time and one-half (1-1/2) for all hours worked in excess of forty (40) hours per week" and that "[f]or the purpose of computing overtime, paid leave will be considered time worked."  The contract also states that "[e]mployees required to work on holidays will be paid regular holiday pay plus time and one-half (1-1/2) for the hours actually worked."

9

34. Under the contract with Local 2962, employees "who have reached the specified accumulation levels" may convert sick leave to "cash payment." *See* Exhibit 6.

  H.  **New Mexico Transportation Union Contract**

35. The contract between the City and the New Mexico Transportation Union (attached as Exhibit 7), covering full-time permanent non-probationary employees holding the job position of Motor Coach Operators (MCO) and Sun Van Chauffeur (SVC), states under a caption titled "Overtime," that driver-employees "will be paid at the rate of time and one-half their regular hourly rate of pay for all hours worked in excess of 40 hours per week." Although the contracts do not contain a general provision indicating that for purposes of computing overtime, paid leave will be considered time worked, the City's practice for many years has been to include hours of paid leave as time worked.

  I.  **AFSCME Local 624 Transit Union Contract**

36. The contract between the City and AFSCME Local 624 Transit Union (attached as Exhibit 8), covering full-time permanent, non-probationary Motor Coach Operators (MCOs) and Sun Van Chauffeurs (SVCs) employed by the Albuquerque Transit Department, states under a caption titled "Overtime," that "MCO Operators, Extra Board Operators and SVCs will be paid at the rate of time and one-half their regular hourly rate of pay for all hours worked in excess of 40 hours per week."

37. The contract provides that if "the unscheduled extra board protector is called in to work and no work is available when he/she reports to work, the employee will be guaranteed at least two (2) hours work." *See* Exhibit 8.

38. It also provides that "[t]ime during which an employee is off work as a result of uncertified personal sick leave shall not be included in the calculation for overtime eligibility." *See* Exhibit 8.

10

39. The contract provides that an employee "who has accumulated over two (2) years vacation may covert fifty percent (50%) of the accumulation over two (2) years to a cash payment once a year." *See* Exhibit 8.

40. The City pays "time and one-half" for all hours worked on the day the City observes certain holidays. *See* Exhibit 8.

41. The contract provides, under a caption titled "Call Back" that "All operators who have completed their assignments and are called back to work or are asked to work additional hours with a break of thirty (30) minutes, will be paid for a minimum of two (2) hours at straight time rate, or at one and one-half their normal hourly rate for actual time worked, whichever is greater." *See* Exhibit 8.

V. **Contractual Remunerations.**

42. In addition to regular and overtime pay, the CBAs require the City to pay certain employees additional types of pay, such as longevity, superlongevity, hazard, shift differential, assignment, fire certification, skill/assignment differential, bilingual, education, and firearms qualification (hereinafter referred to as "add-ons"), on a bi-weekly basis.

43. The CBAs do not require the City to include these add-ons in its calculation of the contractual overtime rate. In contrast, the FLSA requires inclusion of certain regularly-paid add-ons and non-discretionary bonuses in the calculation of the statutory overtime rate.

44. Longevity pay is an extra amount of pay that the City regularly pays employees each pay period after a certain number of years of service as an incentive to encourage employees to continue their employment with the City. Longevity pay must be included in calculating the "regular rate" of pay under the FLSA.

45. The City regularly pays superlongevity pay each pay period to certain employees as another incentive to encourage continued employment. Superlongevity pay must be included in calculating the "regular rate" of pay under the FLSA.

46. The City regularly pays hazard pay to certain employees each pay period for performing hazardous duties. Officers assigned to hazardous classifications, such as pilots, bomb squad, aerial observer, and SWAT team, among others, also receive this type of hazard pay. Hazard pay must be included in calculating the "regular rate" of pay under the FLSA.

47. The City regularly pays shift differential pay each pay period to employees working shifts other than the day shift. Employees working swing shift, for example, regularly receive, while working that shift, a certain additional amount of pay, while employees working graveyard shift receive an even greater amount of shift differential pay while working that shift. Shift differential pay must be included in calculating the "regular rate" of pay under the FLSA.

48. The City regularly pays assignment differential pay (abbreviated on employee pay stubs as "assign pay") every pay period to Fire Department employees who are certified paramedics through the rank of Captain. Likewise, the City pays employees of the Albuquerque Police Department "Special Skills Pay," for officers who have specialties such as polygraph examiners, field training officers, or area sergeant coordinators in certain areas.

49. The City regularly pays assignment pay (abbreviated on employee pay stubs as "assignmt pay") each pay period to employees assigned to non-field positions with work weeks less than 56 hours. Assignment pay must be included in calculating the "regular rate" of pay under the FLSA.

50. The City regularly awards "fire certificate" pay each pay period to fire fighter employees who are wild land certified at the arduous level. Fire certification pay must be included in calculating the "regular rate" of pay under the FLSA.

51. The City regularly pays "skill pay" to employees who have special training, certification, or experience.

52. Under the terms of certain collective bargaining agreements, employees of the Albuquerque Police and Fire Departments are able to sell their sick leave and vacation pay back to the City. The City of Albuquerque does not include this buy back in the calculation of the employees' overtime. When the City buys back excess leave, it simply gives its employees separate checks and does not include the buy back pay in their regular pay check. The payment therefore is not added to the pay stubs and is not included in calculating the "regular rate" under the FLSA. The City does not include this type of pay in its calculation of the "regular rate" under the FLSA.

## VI. The City's Payroll System

53. The City of Albuquerque pays its employees through its Empath System. The pay stubs the City gives to employees with their pay represent summary totals of their payment amount for a biweekly period. The pay stubs do not include back-up calculations.

## VII. Dual Calculation of Wages.

54. To determine the amount of wages owed to each employee during a given pay period, the City utilizes a dual method of pay calculation whereby it compares the employee's wage entitlements under the applicable CBA to the employee's wage entitlements under the FLSA. The City pays pursuant to whichever calculation yields the greater amount for the employee.

55. The City, through its Empath system, completes a dual calculation for each non-exempt employee for each pay period, with the exception of police officers employed by the Albuquerque Police Department.

56. Police officers are compensated solely pursuant to the terms of the applicable CBA. In other words, no FLSA calculation is made for police officers and no comparison between contractual and statutory compensation is made.

57. The CBAs are more generous than the FLSA in certain respects. The CBAs provide for the payment of certain overtime premiums that are not required by the FLSA. For example, certain CBAs require the payment of daily overtime and the payment of overtime on holidays. The CBAs also establish a 40-hour overtime threshold and require the City to count hours paid but not worked towards the 40-hour threshold. In contrast, the FLSA does not require employers to pay daily and holiday overtime, does allow employers to pay certain employees (police officers) overtime after 43 hours instead of 40, and does not contain an explicit provision requiring employers to count hours paid as hours worked.

58. The FLSA is more generous than the CBAs in certain respects. The FLSA requires payment for overtime hours based on the employees' regular rate of pay. The Contracts, in contrast, do not require payment based on the regular rate of pay and thus do not include pay enhancements in the calculation of the overtime wage.

59. Contractual overtime is calculated at one and one-half times the employee's base hourly rate. The employee's base rate excludes add-ons (e.g., longevity pay, superlongevity pay, hazardous duty pay, etc.). In contrast, the FLSA requires the inclusion of certain regularly paid add-ons and nondiscretionary bonuses.

60. Once the City calculates the employee's contractual overtime premium, the City determines whether the employee actually has worked the requisite hours during the workweek in question to be entitled to overtime pay under the FLSA. The City does not include hours paid but not actually worked in determining whether the employee's hours exceed the statutory threshold. If an employee's actual hours of work exceed 40 or if a fire protection and law enforcement employee's ratio of the number of hours worked to the number of days in the work period exceeds the applicable standard under Section 207(k) of the FLSA, the City calculates the employee's statutory overtime pay entitlement.

61. If the City determines that an employee is entitled to overtime pay under the FLSA, and further determines that the FLSA pay exceeds the contractual pay, the City pays the employee an FLSA adjustment representing the difference between the contractual pay and the FLSA pay. That adjustment is noted on the employee's pay stub as "FLSA OT Adj." If the pay stub does not contain this one-line FLSA overtime adjustment, then the Empath system has determined that contractual pay exceeded statutory pay for that particular employee and the employee was therefore paid contractual pay. FLSA compensation is compared to contractual compensation and the employee is paid the greater amount of the two.

62. The City can obtain from its Empath system sufficient payroll information to recalculate an employee's FLSA pay. The Empath system can recall a certain amount of historical data showing the day-by-day times that each employee worked.

63. The City's FLSA calculation provides payment under the FLSA whenever that amount exceeds payment under the CBA.

64. The City calculates contractual overtime under the terms of the CBA based upon the base rate and provides payment under the CBA whenever that amount exceeds pay under the FLSA.

## VIII. Albuquerque Police Department Employees.

65. Under the FLSA (Section 7(k)) the City is not required to pay its police officers statutory overtime until after 43 hours.

66. In contrast, the contract between the City and the APOA calls for police officers to get overtime after 40 hours. The contract provides that "Employees shall be entitled to overtime compensation… when they perform work in excess of forty (40) hours in any one workweek." Merit Ordinance and Personnel Rules and Regulations, which are both part of the officers' contract with the City, also call for police officer overtime after 40 hours. Accordingly, the City pays police officers contractual overtime after 40 hours.

67. The City does not perform a dual calculation for police officers. Because the City pays police officers overtime after 40 hours pursuant to their CBA, contractual overtime exceeds what the FLSA requires.

68. The Empath system does not include add-on pay such as longevity, hazard, or superlongevity pay, when it calculates police officers' overtime rate. Since police officers are paid more than the FLSA wage, the Empath system need not include add-ons or other bonuses or conduct a comparison of statutory and contract wages.

69. The City periodically and informally monitors police officer contractual pay to make sure that it actually exceeds FLSA requirements.

CH1 11772630.4

Respectfully Submitted

| | |
|---|---|
| **LAWRENCE RODRIGUEZ, STEVEN J. DURAN, GREG MIERA, and ROSE MARIE NEAL**<br>Plaintiffs | **CITY OF ALBUQUERQUE**<br>Robert M. White<br>City Attorney |
| /s/ Paul Livingston<br>Paul Livingston<br>Attorney for Plaintiffs<br>P.O. Box 250<br>Placitas, NM 87043 | /s/ Edward W. Bergmann<br>Michael I. Garcia<br>City of Albuquerque Legal Department<br>P.O. Box 2248<br>One Civil Plaza<br>Albuquerque, New Mexico 87102 |
| Sam Bregman and Eric Loman<br>Bregman and Loman, P.C.<br>Attorneys for Plaintiffs<br>111 Lomas Blvd. N.W., Suite 230<br>Albuquerque, NM 87102 | Edward W. Bergmann<br>Seyfarth Shaw LLP<br>131 S. Dearborn Street<br>Chicago, Illinois 60603<br>312-460-5000 |

I HEREBY CERTIFY that on the 28th day of July, 2009, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means:

Paul Livingston
Attorney for Plaintiffs
P.O. Box 250
Placitas, NM 87043

Sam Bregman and Eric Loman
Bregman and Loman, P.C.
Attorneys for Plaintiffs
111 Lomas Blvd. N.W., Suite 230
Albuquerque, NM 87102

/s/ Edward W. Bergmann

CH1 11772630.4