# EXHIBIT A

Westlaw.

1997 WL 998016 (DOL WAGE-HOUR)                                                                 Page 1

1997 WL 998016 (DOL WAGE-HOUR)

Wage and Hour Division
United States Department of Labor

Opinion LetterFair Labor Standards Act (FLSA)

June 11, 1997

***

This is in further response to your inquiry and our meeting on May 12 concerning the application of the over-time compensation provisions of the Fair Labor Standards Act (FLSA) to correctional officers employed by *** County. You are primarily concerned about the calculation of overtime pay under the FLSA.

The rules for computing an employee's "regular rate" for the purposes of the overtime pay requirements of the FLSA are set forth in 29 CFR Part 778. These rules are applicable whether overtime compensation is paid pursuant to § 7(a), or whether the § 7(k) partial overtime exemption is claimed for fire protection or law enforcement personnel (including security personnel in correctional institutions). However, wherever the word "workweek" is used in Part 778, the words "work period" should be substituted if § 7(k) is claimed. 29 CFR § 553.233.

As indicated in 29 CFR § 778.109, the "regular rate" is a rate per hour although employers are not required to compensate employees on an hourly rate basis. Where employees are compensated on other than an hourly rate basis, the regular rate must be derived from such basis by dividing total remuneration for employment (except statutory exclusions) in any workweek (work period) by the total hours worked in the workweek (work period).

The regular rate of pay cannot be left to a declaration by the parties; it must be drawn from what happens under the employment contract. Once the parties have decided on the amount of wages and the mode of pay, the "regular rate" becomes a matter of mathematical computation which is unaffected by any contrary designation of regular rate in the wage contracts. See 29 CFR § 778.108. In light of these basic FLSA principles, we will address your questions. In certain cases, we have edited your questions to reflect our understanding of the issue.

Q.1. When the County advertises a job vacancy and the applicable salary, should the advertisement indicate a minimum or maximum number of hours that the salary is intended to compensate? Should the "regular rate" of pay be advertised?

A.1. No. There is no requirement in the FLSA that the employer advertise the FLSA regular rate upon which statutory overtime compensation will be computed, or indicate the minimum or maximum number of hours that the salary is intended to compensate.

Q.2. The *** County Correction Officers Salary Schedule (July 1, 1996) contains pay rates stated in terms of weekly (37 1/2 hour), biweekly, and annual amounts for four levels of correction officers; such rates reflect paid meal and lineup time at "time and one-half" as well as provide "rotating shift" rates. Additionally, the schedule provides pay "steps" but does not include longevity pay, shift differential, holiday pay, and uniform allowance. Would an officer, who is entitled to the latter payments under the collective bargaining

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

agreement and who works FLSA overtime, be properly paid for FLSA overtime if his or her overtime premium pay is computed based entirely on the schedule rates?

A.2. No. It does not appear that the "schedule" provides for the inclusion of night differential payments that must be included in the regular rate (see 29 CFR §778.207). It is unclear whether the "steps" in the schedule reflect longevity pay, which is includable in the regular rate. However, neither uniform allowance nor holiday pay are includable in the FLSA regular rate (see 29 CFR §§778.217 - .218).

Q.3. Does the method used by the County in calculating the negotiated pay increase under the bargaining agreement meet FLSA requirements?

A.3. The FLSA does not require pay increases. The issue of how a negotiated increase is to be applied under the contract is an issue for the parties to resolve.

Q.4. Would the compensation provided in section 6.7 of our bargaining agreement affect the FLSA regular rate of pay for the classifications specified (correction officer IV, deputy warden, warden, chief of staff)?

A.4. It appears that the classifications may be supervisors or have management duties. Assuming that employees in such classifications meet the duties, responsibilities, and salary tests contained in 29 CFR Part 541, they would be exempt from the overtime requirements of the FLSA. Thus, the additional "stipends" would have no effect. Such payments would, however, affect the FLSA regular rate for any such employee who does not meet the tests for exemption in Part 541.

Q.5. Are the compensatory time off ("comp time") provisions in the bargaining agreement in compliance with the provisions of the FLSA?

A.5. It is not clear on what basis comp time is accrued under the contract. The FLSA requires one and one-half hours of comp time for each FLSA overtime hour worked. Law enforcement employees may accrue up to 480 hours of FLSA comp time, which may be carried indefinitely until either used by the employee or cashed out. FLSA comp time may be cashed out at any time, or at termination of employment. However, the 10-day per year accrual "cap" (assuming this means 80 hours) would be permissible. As to comp time for "managerial" employees see A.4.

Q.6. Should the cleaning and clothing allowance specified in our contact be included in calculating the FLSA regular rate?

A.6. No. See A.2.

Q.7. Does the pay we receive for not working on a designated holiday have to be included in the regular rate? What about the premium pay that would be paid for working on a holiday?

A.7. Pay for not working on a designated holiday is excludable from the regular rate. See A.2. Premium pay (not less than time and one-half) paid for working on a holiday may be treated as an overtime premium pursuant to section 7(e)(6) of the FLSA and is creditable towards any FLSA overtime compensation due. See 29 CFR §§ 778.200 - .203.

Q.8. Should the "investigator stipend" specified in our contract be included in the regular rate? The stipend represents additional biweekly salary payments.

A.8. Yes.

Q.9. Is there a statute of limitations applicable to claims under the FLSA?

A.9. Yes. A 2-year statute of limitations applies to the recovery of back pay, except in the case of willful violation, in which case a 3-year statute of limitations applies.

In summary, the FLSA regular rate of pay is computed as stated below:

Base weekly pay + rotating shift pay + longevity pay + night shift pay + investigatory pay ÷ FLSA hours

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

worked = FLSA regular rate.

All payments must be reduced to their workweek (work period) equivalent if paid on an other than a workweek (work period) basis. For example, the workweek equivalent for investigator I pay is $31.50 ($63.00 x 26 ÷ 52 = $31.50). If a 14 day-work period is applicable pursuant to FLSA § 7(k), no equivalent computation is necessary.

We trust that the above is responsive to your inquiry.

Sincerely,
Daniel F. Sweeney
Office of Enforcement Policy Fair Labor Standards Team

Enclosures

1997 WL 998016 (DOL WAGE-HOUR)
END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT B

Page 1

Not Reported in F.Supp.2d, 2000 WL 1474414 (D.N.D.), 141 Lab.Cas. P 34,095, 7 Wage & Hour Cas.2d (BNA) 150
(Cite as: 2000 WL 1474414 (D.N.D.))

H

United States District Court, D. North Dakota, Southeastern Division.
Sister Juliana WISNEWSKI, on behalf of herself and others similarly situated, Plaintiffs,
v.
CHAMPION HEALTHCARE CORPORATION, a Delaware corporation, d/b/a "DHHS" and "Dakota Heartland Health System"; Champion Healthcare Corporation of North Dakota, Inc., a North Dakota corporation, individually and as a partner in Dakota/Champion Partnership, a North Dakota general partnership; Dakota Medical Foundation, a North Dakota non-profit corporation, individually and as a partner in Dakota/Champion Partnership, a North Dakota general partnership; and Dakota/Champion Partnership, a North Dakota general partnership, Defendants.
No. Civ. A3-96-72.

Jan. 11, 2000.

*MEMORANDUM AND ORDER*

WEBB, Chief J.

I. INTRODUCTION

*1 This case has a long and somewhat tortured history that is well known to all of the parties. By way of introduction, a thumbnail sketch of the highlights of its history is as follows. In June of 1996 four individuals, Juliana Wisnewski, Jan Sliper, Shelly Reimer and Richard Duysen brought a host of state and federal labor related claims against a local hospital that was owned and operated by the defendants at various points under a variety of arrangements.[FN1]

FN1. In 1992, Champion Healthcare of North Dakota, Inc. (CHC-ND), a wholly owned subsidiary of Champion Healthcare Corporation, purchased Heartland Medical Center, located in Fargo, North Dakota. In November 1994, CHC-ND and Dakota Hospital (a separate hospital owned by defendant Dakota Medical Foundation) formed Dakota/Champion Partnership. In December 1994, Dakota Hospital and Heartland Medical Center joined operations and became known as Dakota Heartland Health Systems (DHHS). Champion Healthcare Corporation (the parent of CHC-ND) operated DHHS. In 1996, Paracelsus Corporation acquired Champion Healthcare Corporation. CHC-ND then changed its name to Paracelsus Healthcare Corporation of North Dakota, Inc. (Paracelsus-ND). In 1998, Paracelsus-ND purchased the Dakota Medical Foundation's other half interest (i.e., the Dakota Hospital interest) in the hospital.

The court conditionally certified the plaintiffs as a Fair Labor Standards Act (FLSA) class on March 24, 1997. The notice process then began. On May 12, 1998, the stay on discovery was partially lifted and limited discovery began. Again, on January 15, 1999, the court allowed additional limited discovery. The class received final certification on November 10, 1999. Also on that day, the court made its final decision declining to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(1) over the plaintiffs' state law claims. From that point on, the case consisted only of two federal FLSA claims: (1) an on-call claim for minimum wage; and (2) an overtime claim.

The case has now reached its climax. Before the court are cross motions for summary judgment. Plaintiffs bring the following three motions for partial summary judgment:

(1) liability for the failure to include on-call pay in the computation of overtime, (doc. # 312);

(2) liability for federal minimum wage for on-call time,

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2000 WL 1474414 (D.N.D.), 141 Lab.Cas. P 34,095, 7 Wage & Hour Cas.2d (BNA) 150

**(Cite as: 2000 WL 1474414 (D.N.D.))**

(doc. # 317);

(3) liability for utilizing an incorrect overtime computation, (doc. # 320).

Defendant Champion Healthcare Corporation (Champion) moves for summary judgment on the on-call minimum wage claim and the erroneous overtime computation claim, (doc. # 326(2)). Defendant Champion objects to granting summary judgment on behalf of the plaintiffs; likewise, the plaintiffs object to granting summary judgment on behalf of Defendant Champion.

Oral argument was heard on this matter on December 3, 1999. The court has given lengthy consideration to the memoranda submitted and arguments presented by the parties. Based upon the memoranda and arguments along with a review of the entire file, the court is ready to rule.

II. DISCUSSION

A. Factual Background

The plaintiff class consists of current and former employees, mostly nurses, of a local hospital, Dakota Heartland

Health Systems (DHHS).[FN2] DHHS, like other hospitals, has call time. Nurses, including plaintiffs, are scheduled and frequently even volunteer for call time. Call time is of two types, either off-premises on-call or on-premises on-call,[FN3] hereinafter simply referred to as "on-call." While on-call, plaintiffs were paid less than the federal minimum wage.[FN4] The plaintiffs claim that all time spent on-call should have been compensated at the applicable federal minimum wage pursuant to 29 U.S.C. § 206(a).

FN2. The court uses the term DHHS in a general sense, and only where necessary distinguishes the defendants.

FN3. The parties have recognized that plaintiffs' claim only encompasses off-premises on-call since persons providing on-premises on-call have been compensated by at least the federal minimum wage.

FN4. This amount has increased over time and differs between various departments, some paying more or less. It is sufficient to recognize, however, that the rate for on-call time performed by the plaintiffs has always been less than the federal minimum wage.

When the plaintiffs were on-call, they were not required to stay at the hospital nor were they required to sit at home by the phone. They were required, however, to be reachable whether by beeper, cellular phone, or leaving a number where they could be contacted. DHHS did not restrict the activities that the plaintiffs could engage in while on-call except in one respect. Persons on-call were prohibited from consuming alcohol or taking mind altering drugs/medications. A general response time of twenty minutes to a call-in was expected by DHHS.

**\*2** Upon being called in, the call pay ceased and the person began earning his/her hourly rate or overtime if warranted. Typically, persons were not called in more than one time per call shift. In fact, of the 136 plaintiffs with on-call claims, 36 were called to work more than one time on a call shift from January 1, 1995 to April 1998. Of those 36 plaintiffs, 21 were called in more than once on one occasion, and 4 were called in more than once on two occasions.

Plaintiffs' second claim is that DHHS failed to utilize the proper formula for computing overtime wages and that DHHS failed to include all of the plaintiffs' remuneration when calculating overtime in violation of 29 U.S.C. § 207(a).

Non-exempt employees of DHHS are of two types, either forty hour a week employees or eight and eighty (8/80) employees. Forty hour a week employees are ones who receive overtime for all hours over forty

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3
Not Reported in F.Supp.2d, 2000 WL 1474414 (D.N.D.), 141 Lab.Cas. P 34,095, 7 Wage & Hour Cas.2d (BNA) 150
(Cite as: 2000 WL 1474414 (D.N.D.))

worked in one week. Eight and eighty employees are ones who receive overtime for working more than eight hours a day, eighty hours in two weeks.[FN5]

> FN5. The typical forty hour a week employee is generally referred to herein as the principle for overtime compensation remains the same.

DHHS has paid its employees shift differentials or incentives for working certain shifts within the hospital. For example, employees working night shifts have been paid $1.00 per hour in addition to their normal hourly rate. Weekend shifts and holiday shifts have received similar treatment. Certain employees have also been eligible for incentive pay. As an example, persons qualified for a professional/technical incentive pay have been paid an additional $5 .00 per hour above their normal hourly rate. Those qualified for clerical/service incentive pay, professional/technical lead pay, and service/clerical lead pay have been paid similarly. Additionally, as previously mentioned, on-call employees received an hourly rate.

From December 21, 1994 to September 12, 1997, DHHS' calculation of the "regular rate" for overtime did not include incentive pay, premium pay, on-call pay, or transcription pay. All parties recognize that the failure to include these payments was in violation of the FLSA requirements. DHHS corrected its computer system to include these payments in calculating overtime compensation and subsequently paid all present and former employees who had been underpaid during that time. In 1998, DHHS converted to a different time keeping system. Again errors were noted, in that transport pay and transcription pay were erroneously not included in the overtime compensation calculation. Employees had been underpaid. This problem was corrected in April of 1999 and DHHS is currently in the process of repaying the underpayments. DHHS is presently including all of the remuneration as required by the FLSA in its calculation of the regular rate for overtime purposes.[FN6]

> FN6. The court notes that the issue of whether DHHS properly includes all of the required re-

muneration into the regular rate is moot, since DHHS currently includes the required remuneration and is compensating all affected employees. Plaintiffs agree. Therefore, the issue becomes whether plaintiffs are a prevailing party regarding this claim. This issue is further addressed infra at section E.

The three issues before the court are squarely framed. Additional facts are brought out, as needed, in the individual analyses.

### B. Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is "material" if it might affect the outcome of a case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Churchill Bus. Credit, Inc. v. Pacific Mut. Door Co.*, 49 F.3d 1334, 1336 (8th Cir.1995).

**\*3** The "basic inquiry" for purposes of summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376 (8th Cir.1996) (citing *Anderson*, 477 U.S. at 251-52). In making this inquiry, however, this court will not "weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Id.* (citing *Anderson*, 477 U.S. at 249). Rather, this court's function is to determine only whether a dispute is genuine, and "[i]f reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *Id.* at 1377 (citing *Anderson*, 477 U.S. at 250). This determination is made by reading the record in the light most favorable to the nonmoving party and drawing all "justifiable inferences" in the nonmovant's favor. *Id.* (citing *Anderson*, 477 U.S. at 255); *Churchill*,

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in F.Supp.2d, 2000 WL 1474414 (D.N.D.), 141 Lab.Cas. P 34,095, 7 Wage & Hour Cas.2d (BNA) 150
(Cite as: 2000 WL 1474414 (D.N.D.))

49 F.3d at 1336 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).

The moving party has the initial burden of demonstrating to the court that there is no genuine issue of fact. *Webb v. Lawrence County,* 144 F.3d 1131, 1134 (8th Cir.1998)(citing *Celotex Corp.,* 477 U.S. at 323). Once the moving party has met this burden, however, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings; rather, the non-movant must set forth specific facts showing that there is a general issue for trial. *Id.* (citing Fed.R.Civ.P. 56(e)).

C. On-Call Claim

Plaintiffs claim that they are entitled to the federal minimum wage for all of the off-premises on-call shifts that they "worked." Champion counters that the plaintiffs were not "working" while on-call therefore they are not entitled to minimum wages for the on-call shifts. Champion is correct.

The Fair Labor Standards Act of 1938 (FLSA) establishes minimum standards to protect covered employees. 29 U.S.C. § 201 et.seq. One of these protections guarantees a minimum hourly wage. *Id.* § 206(a). However, the FLSA does not clearly provide when the covered employee is "working" and entitled to the minimum wage. *Henson v. Pulaski County Sheriff Dep't,* 6 F.3d 531, 533 (8 th Cir.1993). Thus, the definition of "work" has been fleshed out by the courts and the Department of Labor, the agency charged with implementing the FLSA.

In the years following the enactment of the FLSA, the Supreme Court has addressed the definition of work. In *Tennessee Coal, Iron & Railroad v. Muscoda Local No. 123,* work was defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." 321 U.S. 590, 598 (1944). Two companion cases decided that same year add that work is time that is spent "predominantly for the benefit of the employer." *See Armour & Co. v. Wantock,* 323 U.S. 126, 133 (1944); *Skidmore v. Swift & Co.,* 323 U.S. 134, 136-37 (1944). *See also Henson,* 6 F.3d at 534 (adopting the predominantly-for-the-benefit-of-the-employer standard). Significantly for the plaintiffs, time spent waiting for an event to occur can constitute work if the employee is hired for that function. *See Armour,* 323 U.S. at 133-34; *Skidmore,* 323 U.S. at 136-37.

*4 In determining whether waiting time, i.e., on-call time, is work under the FLSA, a factfinder must examine agreements between the parties, the nature of the work and its relation to waiting time, and all of the circumstances, *Skidmore,* 323 U.S. at 136-37, and determine the extent to which restrictions imposed by an employer prevent the employee from using the time for personal pursuits. *Cross v. Arkansas Forestry Comm'n,* 938 F.2d 912, 916 (8 th Cir.1991).

This court has previously considered whether plaintiffs were "engaged to wait" by DHHS. *See* Memorandum and Order of March 24, 1997, Part IV. At that time, the court was of the view that plaintiffs had not described restrictions sufficient to characterize their on-call time as predominantly for the benefit of the employer. *See id.* at 8. The court did not grant summary judgment, however, since one important factor had not yet been established, that being the frequency in which the employees were actually being called in. *See id.* (citing *Henson,* 6 F.3d at 537, noting the frequency of emergency calls and percentage of breaks interrupted).

The undisputed facts now establish that of the 136 plaintiffs with call claims, only 36 were called to work more than one time on a shift from January 1, 1995 to April 1998. Of those 36 plaintiffs, 21 were called in more than once on one occasion, and 4 were called in more than once on two occasions. This means that roughly 26% of the plaintiffs have had to come back to work more than one time on one occasion over a span of forty months. Viewing this evidence in the light most favorable to the plaintiffs, the court cannot say that the plaintiffs' on-call time was spent predominantly for the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in F.Supp.2d, 2000 WL 1474414 (D.N.D.), 141 Lab.Cas. P 34,095, 7 Wage & Hour Cas.2d (BNA) 150
**(Cite as: 2000 WL 1474414 (D.N.D.))**

benefit for DHHS.[FN7]

FN7. As additional support for its rationale the court points to 29 C.F.R. § 785.17 which provides that an employee who is not required to remain on the employer's premises, as is the undisputed case here, but is merely required to leave word at his home or with the employer where he may be reached, as is also the case here, is *not working while on-call*. While statements of general policy or interpretation are not binding on this court, they do "carry persuasiveness." *See Hultgren v. County of Lancaster,* 913 F .2d 498, 504 (8th Cir.1990).

Plaintiffs themselves have apparently conceded as much. In Plaintiffs' Brief in Opposition to Motion to Dismiss for Spoliation of Evidence dated November 4, 1999, (doc. # 342), plaintiffs state:

Plaintiffs have made it long known, however, that as to on-call time, they do not intend to introduce evidence of restrictions as to their activities ... Because an actual contract existed by which the Champion defendants agreed to pay plaintiffs for waiting on-call, there is no need to introduce evidence as to restrictions as to plaintiffs' activities.

Indeed, plaintiffs have presented no new evidence or rationale on the restrictions of their time in conjunction with these summary judgment motions, but have relied solely on a "contract" theory to establish their claim to minimum wage for the time spent on-call.

Turning to the contract claim, plaintiffs advance the theory that they had a contract of employment with DHHS, the terms of which were unilaterally dictated to plaintiffs through the hospital's human resource policy manual. The plaintiffs argue that the contract term provided that on-call time would be compensated at a rate below the minimum wage in violation of longstanding precedent that FLSA rights cannot be bargained away or waived. *See Rudolph v. Metropolitan Airports Comm'n,* 103 F.3d 677, 680 (8th Cir.1996). Champion

counters that no employment contracts exist between DHHS and the plaintiffs, and even assuming arguendo that a contract did exist, plaintiffs are still not entitled to minimum wage.

*5 The court does not decide the interesting question of whether employment contracts exist between DHHS and plaintiffs because the answer would not change the result. This court has once before rejected the notion that since the plaintiffs were compensated at all for on-call time they were necessarily "engaged to wait" making the time fully compensable as hours worked. *See* Memorandum and Order of March 24, 1997, Part IV (noting that the argument was not supported by case law). Nothing that the court has recently seen or heard changes that opinion.

Even if the court assumes, which it does not, that employment contracts existed, the on-call time must still be performed predominately for the benefit of the employer to be considered work. *See Henson,* 6 F.3d at 535. As discussed above, the plaintiffs have not demonstrated any significant restrictions on their time that justify characterizing the on-call time as hours worked. In this regard the court notes the following undisputed facts:

(1) employees are not required to remain on the employer's premises while on-call;

(2) no excessive geographic limitations are placed on the employees;

(3) the response time to the hospital is twenty minutes;

(4) employees may trade call;

(5) employees use pagers, cell phones or leave numbers where they can be reached;

(6) the employees' only main restriction is that they cannot use alcohol or take mind altering drugs;

(7) the employees are not frequently called in more than once per on-call shift;

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Not Reported in F.Supp.2d, 2000 WL 1474414 (D.N.D.), 141 Lab.Cas. P 34,095, 7 Wage & Hour Cas.2d (BNA) 150
(Cite as: 2000 WL 1474414 (D.N.D.))

(8) employees are not required to perform any affirmative acts while on call;

(9) the longest period of call time is a weekend;

(10) plaintiffs are able to engage in personal pursuits.[FN8]

> FN8. This decision is in accord with the majority of courts which have concluded that off-premises on-call time is not hours worked. *See, e.g., Gilligan v. City of Emporia, Kansas,* 986 F.2d 410 (10th Cir.1993) (water and sewer employees not entitled to compensation when required to carry pagers and respond to pages within thirty minutes when they were free to do whatever they wanted while on-call); *Martin v. Ohio Turnpike Comm.,* 968 F.2d 606 (6th Cir.1992) (highway maintenance workers not entitled to compensation when pagers available, employees free to use time as their own and they were not required to respond within a certain time); *Bright v. Houston Northwest Medical Center,* 934 F.2d 67 (5th Cir.1991) (hospital biotech who carried pager not entitled to compensation when required to respond within twenty minutes after page and was free to shop, go out to dinner, or engage in other personal activities while on-call); *Halferty v. Pulse Drug Co.,* 864 F.2d 1185 (5th Cir.1989) (ambulance service telephone dispatcher who was required to stay at home but who was free to visit friends, entertain, watch TV, sleep and do laundry not entitled to compensation); *Kelly v. Hines-Rinaldi Funeral Home,* 847 F.2d 147 (4th Cir.1988) (funeral home employee required to stay on premises was not entitled to compensation for on-call time when free to sleep or use time as his own).

In light of the foregoing, regarding the plaintiffs' claim to entitlement of minimum wage for time spent on-call, summary judgment is appropriately granted in favor of Champion and denied as to the plaintiffs.

**D. Overtime Calculation Claim**

The overtime calculation issue requires the court to determine whether Champion has complied with the FLSA's directive regarding overtime. Subject to some exceptions, not relevant here, the FLSA provides that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified *at a rate not less than one and one-half times the regular rate* at which he is employed." 29 U.S.C. § 207(a)(1)(emphasis added). The "regular rate" is defined as "all remuneration for employment."[FN9] *Id.* § 207(e).

> FN9. There are exclusions to what is included in the "regular rate." These include payments such as: sums paid as gifts, rewards, or discretionary payments, among others. *See* 29 U.S.C. § 207(e)(1)-(7). The exclusions are not applicable here.

There are two steps in computing the overtime obligation: first, the regular rate must be determined; and second, the regular rate must be used to calculate overtime. *See id.* § 207(a)(1). Both plaintiffs and Champion essentially agree up to this point. The dispute arises over how the regular rate is used in computing overtime.[FN10]

> FN10. The court is not yet addressing the issue of what "ingredients" go into the mix of "regular rate." Instead, this section examines the mathematical formula utilized in calculating overtime compensation.

The issue of correctly calculating overtime compensation is a question of law for the court to decide. *See Reich v. Stewart,* 121 F.3d 400, 404 (8th Cir.1997) (citing *Spinden v.. GS Roofing Products Co.,* 94 F.3d 421 (8th Cir.1996)). The crux of the dispute between the parties is plaintiffs' claim that 29 C.F.R. § 778, 110 is a clearly erroneous explanation of the law regarding the overtime compensation calculation. Champion

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1474414 (D.N.D.), 141 Lab.Cas. P 34,095, 7 Wage & Hour Cas.2d (BNA) 150
**(Cite as: 2000 WL 1474414 (D.N.D.))**

maintains that the C.F.R. example is correct.

**\*6** The Department of Labor has adopted both regulations and interpretative bulletins to guide compliance with the FLSA. Part 778 of Title 29 of the Code of Federal Regulations constitutes an interpretative bulletin and not a regulation. *See Monahan v. County of Chesterfield, Virginia,* 95 F.3d 1263, 1272-73 & n.10 (4 [th] Cir.1996) (citing *Sherwood v. Washington Post,* 871 F.Supp. 1471, 1480-81 (D.D.C.1994) (noting that many courts erroneously use these terms [regulations and interpretations] interchangeably most likely because both are collectively contained in the Code of Federal Regulations)). *See also Brooks v. Village of Ridgefield Park,* 185 F.3d 130, 135 (3 [rd] Cir.1999) (noting that 29 C.F.R. § 778. 106 is an interpretative bulletin although mistakenly characterized as a regulation by the district court); *Mayhew v. Wells,* 125 F.3d 216, 218 (4 [th] Cir.1997) (noting that part 778 of Title 29 of the Code of Federal Regulations constitutes an official interpretation). Nevertheless, interpretative bulletins constitute a "body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944).

Section 778. 110 provides "[i]f the employee is employed solely on the basis of a single hourly rate, the hourly rate is his 'regular rate.' " 29 C.F.R. § 778. 110(a). If, however, as the case is here, an employee earns an hourly rate plus some type of bonus pay, e.g.,

shift differential, incentive pay, on-call pay, that bonus pay must be factored into the regular rate for overtime purposes. *See id. See also* 29 U.S.C. § 207(e). The interpretative bulletin provides an example of an employee whose hourly rate is $6.00 an hour who works 6 hours of overtime:

If the employee receives, in addition to his earnings at the hourly rate, a production bonus of $9.20, the regular hourly rate of pay is $6.20 an hour (46 hours at $6 yields $276; the addition of the $9.20 bonus makes a total of $285.20; this total divided by 46 hours yields a rate of $6.20). The employee is then entitled to be paid a total wage of $303.80 for 46 hours (46 hours at $6.20 plus 6 hours at $3.10, or 40 hours at $6.20 plus 6 hours at $9.30).

29 C.F.R. § 778. 110(b).

The following illustration demonstrates the mathematical process:

Hourly rate: $6.00

Total hours worked: 46 (40 regular hours / 6 OT hours)

Production Bonus: $9.20

| | | | |
|---|---|---|---|
| (1) 46 x $6.00 | = | $276.00 | |
| | | + 9.20 | production bonus |
| | | $285.20 | |
| (2) $285.20 / 46 | = | $6.20 | "regular rate" |

(3) then, either of two methods can be used to achieve the same result within a mathematical certainty:

| | | |
|---|---|---|
| (a) 40 x $6.20 | = $248.00 | (regular rate for non-OT hours) |
| 6 x $9.30 | = $ 55.80 | (1 1/2 "regular rate" for OT) |
| Added | = $303.80 | (total pay) |

**\*7** OR

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 8

Not Reported in F.Supp.2d, 2000 WL 1474414 (D.N.D.), 141 Lab.Cas. P 34,095, 7 Wage & Hour Cas.2d (BNA) 150
(Cite as: 2000 WL 1474414 (D.N.D.))

| | | | |
|---|---|---|---|
| (b) 46 x $6.20 | = $285.20 | (regular rate for all hours) |
| 6 x $3.10 | = $ 18.60 | (1 1/2 "regular rate" for OT) |
| Added | = $303.80 | (total pay) |

Plaintiffs argue that this method will always "short" the employee and argue that the following formula should be used:

| | | | |
|---|---|---|---|
| 40 x $6.00 | = | $240.00 (non-OT hours x hourly rate) |
| 6 x $6.20 | = | 37.20 (OT hours x regular rate) |
| 6 x $3.10 | = | 18.60 (OT hours x 1/2 regular rate) |
| | | $295.80 |
| | | + 9.20 (production bonus) |
| | | $305.00 |

OR

| | | | |
|---|---|---|---|
| 40 x $6.00 | = | $240.00 (non-OT hours x hourly rate) |
| 6 x $9.30 | = | 55.80 (OT hours x 1/2 regular rate) |
| | | $295.80 |
| | | + 9.20 (production bonus) |
| | | $305.00 |

Thus, plaintiffs claim, the employee is always shorted $1.20 under the C.F.R. method. Upon initial review, the plaintiffs' calculations appear correct. A closer review, however, reveals the fallacy. Plaintiffs use the production bonus once to determine the regular rate and then add the full weight of the production bonus back into the calculation at the end. This is incorrect as it results in over-counting the production bonus.[FN11]

FN11. The court notes that if plaintiffs wish to add the full value of the production bonus back into the overtime formula, the calculation must be made as follows:

| | | | |
|---|---|---|---|
| 46 hours x $6.00 | = | $276.00 (total hours x straight rate) |
| Production bonus | = | + 9.20 |
| Regular pay | = | $285.20 |
| 6 OT hours x $3.10 | = | + 18.60 (OT hours x 1/2 regular rate) |
| Total pay | = | $303.80 |

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 9

Not Reported in F.Supp.2d, 2000 WL 1474414 (D.N.D.), 141 Lab.Cas. P 34,095, 7 Wage & Hour Cas.2d (BNA) 150
(Cite as: 2000 WL 1474414 (D.N.D.))

Indeed, this type of calculation has been specifically rejected by other courts. *See American Federation of Government Employees, Local 3721, v. District of Columbia,* 732 F.Supp. 1, 4 (D.D.C.1989) (finding this method plain error as "it inexplicably abandons the previously calculated regular rate in favor of addends which go into the weighted average used to determine the regular rate"). Like the court in *American Federation,* this court holds that the example provided in section 778. 110 of Title 29 of the Code of Federal Regulations is the correct formulation of an overtime calculation.

The court has been assured that this is the method currently followed by Champion in calculating overtime compensation for its employees. An examination of one plaintiff's overtime claim demonstrates that indeed Champion is calculating overtime correctly. In one week, plaintiff Marlene Freeman worked 41.25 hours. She had a contract base hourly rate of $22.42. During that week, she earned shift differential, weekend differential, incentive pay and on-call pay totaling $56,75. Following the C.F.R. example above, Freeman's overtime calculation is as follows:

(1) 41.25 hours x $22.42     = $924.825     (total hours x base rate)

                      + 56.75     (amount of "bonus pay")

                      $981.575

(2) $981.575 / 41.25 = $23.796 "regular rate"

(3) $23.796 x 1 1/2 = $35.694 "overtime rate"

(4) 40 x $23.796     =     $951.84 (non-OT hours x regular rate)

     1.25 x $35.694     =     $ 44.62 (OT hours x 1 1/2 regular rate)

                      $996.46

OR

41.25 x $23.796     = $981.585     (total hours x regular rate)

1.25 x $11.90     = $ 14.875     (OT hours x 1/2 regular rate)

                $996.460 [12]

FN12. Following the court's third example illustrated at footnote 11 above, the optional calculation is:

41.25 x $22.42     = $924.825     (total hours x straight rate)

Bonus pay     = + 56.75

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 10
Not Reported in F.Supp.2d, 2000 WL 1474414 (D.N.D.), 141 Lab.Cas. P 34,095, 7 Wage & Hour Cas.2d (BNA) 150
(Cite as: 2000 WL 1474414 (D.N.D.))

| Regular pay | = $981.575 | |
| 1.25 x $11.90 | = + 14.875 | (OT hours x 1/2 regular rate) |
| Total pay | = $996.45 | |

This is exactly the pay that Freeman received for the week in question.

**\*8** Freeman actually received $996.45 pay for the week in question, the penny difference appears to be a rounding issue. As the court's calculation demonstrates Champion appears to be following the correct overtime calculation formula. If, however, there are plaintiffs that have not been paid according to the formula found here to be correct, then those claims should be presented to the court and the court will do the appropriate calculation.[FN13] It is stressed that the Code of Federal Regulations overtime calculation formula described in section 778. 110 of Title 29 is correct; the court will not entertain further arguments claiming that that formula is incorrect or erroneous.

> FN13. Further, the court instructs that plaintiffs may be entitled to additional overtime compensation in this action if the related state court action on the meal break claim proves to be successful.

E. Prevailing Parties

In determining an employee's "regular rate" for purposes of overtime compensation, all remuneration for employment[FN14] paid to the employee must be included. 29 U.S.C. § 207(e). Champion does not dispute that it erroneously failed to include some required types of remuneration into the calculation of the "regular rate" from December 21, 1994, to September 12, 1997, and again from July 26, 1998, to April 29, 1999. Champion has corrected the errors in its computer system, and has made, or is in the process of making, repayments to all affected employees and former employees. Plaintiffs do not dispute that Champion currently calculates the "regular rate" correctly. Thus, there is no ma-

terial dispute of fact regarding the types of remuneration to be included within the "regular rate" calculation. Hence, summary judgment is appropriate on this claim.

> FN14. Some payments, like gifts and discretionary payments, are excluded from the calculation of the "regular rate"; however, those exclusions are not relevant here. *See* 29 U.S.C. § 207(e)(1)-(7).

This question, thus, arises: *who* is entitled to be awarded summary judgment; or put another way, who is a prevailing party on this issue.

The question of "prevailing party" becomes an issue as it relates to the mandatory fee shifting provision of the FLSA. While the FLSA does not expressly use the term "prevailing party," it certainly contemplates fee shifting in a successful minimum wage or overtime claim. The FLSA provides that "the court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

Whether a litigant is a "prevailing party" is a legal question. *Warner v. Independent School Dist. No. 625,* 134 F.3d 1333, 1336 (8th Cir.1998); *Jenkins v. State of Missouri,* 127 F.3d 709, 714 (8th Cir.1997) (en banc). "Decisions construing this term in the civil rights fee-award statute, 42 U.S.C. § 1988, 'are generally applicable in all cases in which Congress has authorized an award of fees to a "prevailing party." ' " *Warner,* 134 F.3d at 1336 (quoting *Hensley v. Eckerart,* 461 U.S. 424, 433 n. 7 (1983)).

Noting the confusion surrounding awarding attorney's fees and "prevailing party," the Eighth Circuit in *Tyler v. Corner Constr. Corp.,* 167 F.3d 1202 (8th Cir.1999) has issued clearer guidelines. The first step is determin-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1474414 (D.N.D.), 141 Lab.Cas. P 34,095, 7 Wage & Hour Cas.2d (BNA) 150
(Cite as: 2000 WL 1474414 (D.N.D.))

ing whether the plaintiff is a "prevailing party." *Id.* at 1204. " '[A] plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." ' *Id.* (quoting *Farrar v. Hobby,* 506 U.S. 103, 111-12 (1992)). This relief may come in the form of an enforceable judgment, a consent decree, or a settlement. *Id.*

*9 Where, however, a defendant has voluntarily changed its behavior before trial, rendering the lawsuit moot, a plaintiff is a "prevailing party" if the suit was "a catalyst for the defendant's voluntary compliance and the defendant's compliance was not gratuitous, meaning that the plaintiff's suit was neither 'frivolous, unreasonable nor groundless." ' *Id.* at 1205. The catalyst theory is an alternative to the *Farrar* approach; it extends prevailing party status to plaintiffs who have not received actual relief on the merits of their claim. *Id.*

Turning to the facts of this case, plaintiffs must establish their "prevailing party" status via the catalyst theory since they have not received actual relief on the merits of their claim through a judgment, consent decree, or settlement. The first step is to consider whether plaintiffs' suit was "frivolous, unreasonable or groundless."

Champion admittedly was incorrectly calculating the "regular rate" used in paying overtime compensation by leaving out remuneration such as on-call pay and certain types of premium pay. This exclusion amounted to a violation of section 207(a)(1), providing for overtime compensation, of the FLSA. Champion was legally obligated to make the correction, and did not do so "gratuitously." Therefore, plaintiffs' suit was neither "frivolous, unreasonable nor groundless."

The more pressing question is whether plaintiffs' suit was a catalyst for Champion's voluntary compliance with the FLSA. Champion asserts that it discovered the errors in calculating the regular rate during union negotiations at DHHS in late 1996 and early 1997. Champi-

on states that it knew of the problems by February of 1997; however, repayments were not made and the system was not changed until September 12, 1997. Giving the benefit of doubt to Champion, this is roughly a difference of six months.

Plaintiffs assert that the pressure of this class action lawsuit moved Champion to correct its errors in calculating the regular rate for overtime compensation. Plaintiffs point to these undisputed facts in support of their assertion:

(1) on June 13, 1996, this suit was begun with the plaintiffs alleging inter alia that DHHS "failed to pay overtime wages for hours worked in excess of 40 hours per week at a rate not less than one and one-half (1 1/2 ) times an employee's regular rate;"

(2) On February 2, 1997, plaintiffs filed a brief with the court in which they state in a footnote that "In the instant case, the defendant hospital *does not* include call pay in an employee's rate of pay for determining overtime compensation. Even under the Champion defendants' reading of the law, this hospital is in violation of the FLSA, and must pay overtime at a rate that *includes* call pay as part of the employee's regular rate of pay" (emphasis in original);

(3) On February 27, 1997, DHHS ran through its computer center a series of four examples of wage computations, which confirmed for them that certain types of pay were being excluded from the computation of the "regular rate;"

*10 (4) An internal memo at DHHS is circulated on March 11, 1997 discussing the overtime calculation problem;

(5) The court approves a notice to potential class action plaintiffs, which is directed in part to current and former "employees who did not have their 'on call pay' included in the Hospital's computation of such employees' rate of pay for overtime calculations." This notice was mailed to potential class action plaintiffs, and was published in the *Forum* [the local newspaper] on June 4,

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1474414 (D.N.D.), 141 Lab.Cas. P 34,095, 7 Wage & Hour Cas.2d (BNA) 150
**(Cite as: 2000 WL 1474414 (D.N.D.))**

June 11, and June 18 of 1997;

(6) On September 9, 1997, DHHS notifies its employees of errors in the system which overpaid and underpaid some employees, and notifies the employees that it will make adjustments for the underpayment.

Plaintiffs in this action undisputably sought relief in the form of correct overtime compensation payments, among other relief. Without a doubt, plaintiffs have asserted various claims over the four and one half years this litigation has been proceeding; nonetheless, Champion was aware from the beginning that plaintiffs were challenging their overtime compensation. It is apparent that just as the claims began to clearly crystallize, Champion voluntarily corrected the errors. The reason, Champion claims, that these errors were discovered and changes were made was due to union negotiations.

This is a conclusion the court cannot accept. Even by Champion's own assertions, there was at least a six month intervening period between the time the errors were discovered and the changes were made. During this intervening period, notices were sent out to potential party plaintiffs and a notice was published three times in the local newspaper. Certainly, the chronology of events is not dispositive of the issue; however, it is a proper variable for the district court to weigh. *Sablan v. Department of Fin. of Commonwealth of N. Mariana Islands,* 856 F.2d 1317, 1326 (9 [th] Cir.1988). It is more than coincidental that three months after the noticing period, Champion was finally able to correct problems that they assert were known of at least three months prior to notices being sent and published. In examining this evidence, the court is left with the firm conclusion that through this suit, plaintiffs created the pressure needed to spur Champion to correct the errors. Thus, plaintiffs qualify as a catalyst, and are therefore entitled to prevailing party status on the issue of including the correct remuneration into the calculation of the regular rate for overtime compensation.[FN15]

> FN15. The court does not determine whether liquidated damages, pursuant to 29 U.S.C. §

216(b), are appropriate on this issue as it has neither been addressed nor briefed by the parties. This issue along with a determination of reasonable attorneys fees and costs of the action may be addressed upon final resolution of the entire case.

III. CONCLUSION

In light of the foregoing, the court hereby summarizes its order:

(1) Plaintiffs' motion for partial summary judgment regarding liability for the failure to include on-call pay in computation of overtime, (doc. # 312), is GRANTED;

(2) Plaintiffs' motion for partial summary judgment regarding liability for the federal wage claim for on-call time, (doc. # 317), is DENIED;

(3) Plaintiffs' motion for partial summary judgment regarding liability for utilizing an incorrect overtime computation, (doc. # 320), is DENIED;

*11 (4) Defendant Champion's motion for summary judgment on the on-call claim, (doc. # 326(2)), is GRANTED;

(5) Defendant Champion's motion for summary judgment on the erroneous overtime computation claim, (doc. # 326 (2)), is GRANTED as explained above.

IT IS SO ORDERED.

D.N.D.,2000.
Wisnewski v. Champion Healthcare Corp.
Not Reported in F.Supp.2d, 2000 WL 1474414 (D.N.D.), 141 Lab.Cas. P 34,095, 7 Wage & Hour Cas.2d (BNA) 150

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT C



LEXSEE 1988 DOL WH LEXIS 25

[NO NUMBER IN ORIGINAL]

U.S. DEPARTMENT OF LABOR

*1988 DOLWH LEXIS 25*

September 6, 1988

**JUDGES:** Paula V. Smith, Administrator

**OPINION:**

[*1]
This is in response to your letter concerning the application of the overtime pay provision of the Fair Labor Standards Act (FLSA.). You are specifically concerned with the proper method of computing overtime premium pay on cost of living (COLA) payments. Your office represents ***. That union has a collective bargaining agreement with Company which contains a provision for a wage adjustment comprised of two separate payments, a percentage increase of 2% and a single COLA payment, has agreed to include the COLA in the regular rate for overtime pay, but a problem has arisen about the correct computation method. We regret the delay in responding to your inquiry.

The Wage and Hour Division or the Department of Labor administers FLSA, the Federal law of most general application concerning wages and hours of work. This law requires that all covered and nonexempt employees be paid not less than the minimum wage or $ 3.35 an hour and not less than one and one-half times their regular rates of pay for all hours worked over 40 in a workweek. The FLSA is discussed in more detail in the enclosed "Handy Reference Guide to the Fair Labor Standards Act."

You use as an example "a 'typical'  [*2]  splicer with a regular hourly rate of $ 16.4625 who works 48 hours in a week, Monday through Saturday, 8 hours a day, and whose single payment weekly COLA adjustment is $ 6.45496." You describe both the union's and the employer's method of computing overtime pay and ask which one is correct.

A. computes the employee's pay for the week as $ 857.97 as follows:

1. Regular Hours 40

2. Hourly Rate 16.4625

3. COLA Adjustment (Weekly) 6.45

4. COLA Adjustment (Hourly)

(6.45 divided by 40) .16

5. Hourly Rate Included COLA

1988 DOLWH LEXIS 25, *2

Adjustment (2 + 4) 16.6225

6. 40 Hour Straight Time Pay

(1 x 2) $ 658.50

7. 8 Hours Overtime Pay

(1.5 x 8 x $ 16.6225) $ 199.47

8. Gross Pay (6 + 7) $ 857.97

B. The employer computes the employee's pay for the week as $ 856.59 as follows:

1. Regular Hours 40

2. Overtime Hours 8

3. Straight Time 48

4. Hourly Rate 16.4625

5 Straight Pay $ 790.20

6. COLA Adjustment (Weekly) 6.45

7. Adjusted Base Pay $ 790.65

8. Premium Hourly Rate* 16.59697

(*7 divided by 3)

9. Premium Hours 4

10. Premium Pay (8 x 9) 66.39

11. Gross Pay (5 / 10) $ 856.59

You note that the single payment weekly adjustment ($ 6.45) is applied only [*3] to 4 premium hours by the employer's method. However, instead of dividing the new regular rate in half and multiplying that amount by the number of overtime hours, in this example the employer is dividing overtime hours in half and multiplying that number by the full regular rate.

The difference in overtime pay in the two examples result from the different methods of prorating the $ 6.45 COLA into the regular rate. The union divided the COLA by 40, while the employer divided the COLA by 48. Overtime is based on the employee's regular rate of pay. The regular rate is determined by dividing all income (except for statutory exclusions) by total hours worked, not just by 40 hours. The employer's computation, which includes all hours worked in the week (48) rather than just the first 40 hours, is correct.

We trust that the above is responsive to your inquiry.

1988 DOLWH LEXIS 25, *3

Sincerely,

**Legal Topics:**

For related research and practice materials, see the following legal topics:
Labor & Employment LawWage & Hour LawsCoverage & DefinitionsOvertime & Work Period

# EXHIBIT D

Westlaw.

1999 WL 33210914 (DOL WAGE-HOUR)                                          Page 1

1999 WL 33210914 (DOL WAGE-HOUR)

Wage and Hour Division
United States Department of Labor

Opinion LetterFair Labor Standards Act (FLSA)

October 21, 1999

\*\*\*

This is in response to your letter concerning the application of the Fair Labor Standards Act (FLSA) to premium rates paid by an employer. We regret the delay in responding.

You present a situation where the regular working hours of a group of employees consists of three 12-hour days, for which the employees are paid at the rate of $20 per hour. As an inducement to work an additional 8 hours each week, the employer pays an additional $5 per hour for all hours worked in excess of 36 in the workweek. You ask whether the additional $5 payment may be counted as a "premium rate" under the FLSA and whether that amount may be counted as a credit toward overtime compensation due.

Section 7(e)(5) of the FLSA provides that an employee's regular rate of pay shall not include "extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) or in excess of the employee's normal working hours or regular working hours, as the case may be." Furthermore, section 7(h) of the FLSA allows an employer to credit himself with such a premium against the overtime compensation due under the FLSA.

Provided that the 36 hours per week represents the employees' regular working hours, it is our opinion that the payment of an additional amount for hours worked in excess of 36 hours per week will not be considered part of the regular rate of pay for the employees. In addition, the employer may take credit for or offset that additional amount against overtime compensation due under the FLSA.

You further state that in response to the opportunity to receive additional compensation, the employees now work 44 hours per week, regularly. As a result of the change to the employees' regular working hours, the additional $5 paid per hour worked over 36 in a week must be included in determining the regular rate of each employee. The employer may not take a credit against overtime due under the FLSA for providing this additional amount.

This opinion is based exclusively on the facts and circumstances described in your request and is given on the basis of your representation, explicit or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your request might require a different conclusion than the one

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

expressed herein.

Sincerely,
Daniel F. Sweeney
Office of Enforcement Policy
Fair Labor Standards Team

1999 WL 33210914 (DOL WAGE-HOUR)
END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT E

Westlaw.

1985 WL 304329 (DOL WAGE-HOUR)                                             Page 1

1985 WL 304329 (DOL WAGE-HOUR)

Wage and Hour Division
United States Department of Labor

Opinion LetterFair Labor Standards Act (FLSA)

WH-526

December 23, 1985

\*\*\*

This is in reply to your March 28 letter asking, on behalf of some of your clients, whether certain methods of compensating transit employees for their hours of work are in compliance with the monetary requirements of the Fair Labor Standards Act (FLSA).

You state that most local transit operators have complex employee pay structures which are the result of collective bargaining agreements (CBAs) with representatives of their employees. You point out that each CBA may establish a set of work schedule provisions and pay rates which are unique to a particular local transit operator. Although you have reviewed 29 CFR Part 778 (the Wage and Hour Division's "Interpretative Bulletin on Overtime Compensation") and 29 CFR Part 785 (the Wage and Hour Division's "Interpretative Bulletin, Part 785: Hours Worked Under the Fair Labor Standards Act of 1938, As Amended"), you still have questions regarding the application of the FLSA to methods of compensation in the transit industry. In this regard, you enclosed with your letter several examples of how transit employees are paid for their hours of work. You request our opinion as to how the FLSA would be interpreted with respect to these employee wage payments.

Since you present several different situations, we will address them in the order presented.

In your first example, you state that the bus driver selects a duty assignment of 5 days of work per week with each workday consisting of a 4-hour morning work period and a 5-hour afternoon work period. These two work periods are separated by a 5-hour off-duty period during which the bus driver is completely relieved from all duties. The CBA requires that a half-time "overtime penalty" be paid for all hours of work in excess of 8 hours of work on a daily basis. In addition, the CBA requires that the bus driver be paid a half-time "spread penalty" for each hour of work in excess of 10 hours of "spread" time per workday. Spread time includes all the duty and off-duty time between the time an employee first reports to work at the beginning of his/her workday until the time the employee is released from all duties at the end of that workday. For this example, the spread time is 14 hours. You indicate that the straight time hourly wage rate is $14.00. The amount of earnings to be paid to the bus driver, in this example, under the CBA would be computed as follows:

| | |
|---|---:|
| 4 hours of work in the morning (4 = hours x $14.00) | $ 56.00 |

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

| | |
|---|---:|
| 5 hours of work in the afternoon (5 = hours x $14.00) | $ 70.00 |
| Overtime penalty (1 hour x $14.00 x .5) | $ 7.00 |
| Spread penalty (4 hours x $14.00 x .5) = | $ 28.00 |
| Daily pay = | $161.00 |
| | |
| Weekly pay (5 days x $161.00) = | $805.00 |

You ask how the total pay should be computed under FLSA for this driver.

Section 7 of FLSA requires that a covered employee who is employed for more than 40 hours in a workweek must be compensated "at a rate not less than one and one-half times the regular rate at which he is employed." Generally, an employee's "regular rate" is calculated by dividing all remuneration for employment paid in the workweek by the total hours worked by the employee in that workweek. See, e.g., Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 580 (1942); Walling v. Hemerich & Payne, Inc., 323 U.S. 37, 40-41 (1944); and Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 434-435 (1945). On the other hand, where the only compensation received by an employee is an hourly wage, the hourly wage is the regular rate. Section 7(e) of FLSA, however, defines "regular rate" in such a way as to exclude certain payments. Of particular importance with respect to your example is section 7(e)(7) of FLSA.

That section excludes from the regular rate so-called "clock-time" premiums, which are defined by FLSA as:
> . . . extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding 8 hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section), where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek.

As this statutory provision makes clear, there are three prerequisites which must be met in order for spread penalty premium payments to be excluded from the regular rate calculation. First, the premium must be provided pursuant to an employment contract or CBA. This prerequisite is explained more fully in section 778.204(c) of 29 CFR Part 778. In your first example, this prerequisite is clearly met.

Second, the spread penalty premium must be paid for work outside of the hours established in good faith by the employment contract or CBA as the basic, normal, or regular workday (not exceeding 8 hours) or workweek (not exceeding 40 hours). Since entitlement to the spread penalty premium is earned on a daily basis and not a weekly basis, we need only address that portion of the statutory test. In order for this test to be satisfied, the amount of time that an employee is on duty for a day before becoming entitled to a spread penalty premium cannot be greater than 8 hours, and the entitlement to the spread penalty premium must arise for work performed outside the established workday under the employment contract or CBA.

In your first example, the bus driver is on duty for no more than 8 hours before becoming entitled to the spread penalty premium, and hence that part of the statutory prerequisite is satisfied. The fact that the employee does not become entitled to the premium pay until more than 8 hours have elapsed does not, under that statutory language, lead to a different

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

result.

As for the statutory prerequisite that the premium pay be for work "outside * * * the basic, normal, or regular workday" established in good faith under the employment contract or CBA, we would consider any time outside the "spread" established in the employment contract or CBA (10 hours, in the example above) as satisfying this prerequisite.

This conclusion rests on our understanding that the spread period established by employment contracts and CBAs in the transit industry has, in fact, been established in good faith and is in no manner arbitrary in relation to actual work schedules. Given the wide variety of differing work schedules in the transit industry, including, particularly, the frequent use of split shifts, it is clear that a significant number of drivers will earn spread penalty premiums on a regular basis. (This is true of the bus driver in the example given above.) Other bus drivers, however, particularly those on straight shifts with no dead time in the middle of the day, will probably not earn spread time except occasionally. We consider the spread period established in the employment contract or CBA to be the "basic, normal, or regular workday" as required by section 7(e)(7).

The third and final prerequisite, for excluding certain premium payments from the regular rate calculation, is that the spread penalty premium must be not less than one and one-half times the rate established in the employment contract or CBA for similar work performed during the basic, normal, or regular workday. This prerequisite is met in the example given for spread penalty premiums.

In addition, we would consider the premium payment for hours worked in excess of 8 hours of actual work as also satisfying the three prerequisites of section 7(e)(7) of FLSA.

In all situations where these three prerequisites are satisfied, the spread penalty premium and daily overtime premium payments may be excluded from the bus driver's total compensation for purposes of calculating the regular rate on which the FLSA overtime premium pay is computed. In addition, under section 7(h) of FLSA, the spread time premium pay and the daily overtime premium pay could be credited toward any overtime pay that may be due the bus driver under FLSA.

In computing this bus driver's total pay under FLSA we would consider the $14.00 per hour pay rate as establishing the regular rate of pay. Therefore, the bus driver's total pay for the workweek under the monetary requirements of FLSA is computed as follows:

| | |
|---|---:|
| Straight time pay (45 hours x $14.00) = | $630.00 |
| Overtime premium pay (5 hours x = $14.00 x .5) | $ 35.00 |
| Total pay  = | $665.00 |

Since, in your example, the bus driver is paid $630.00 in straight time pay and $175.00 in creditable premium pay, the bus driver has been paid in compliance with FLSA. We wish to point out that surplus overtime premium payments, which may be credited against overtime pay pursuant to section 7(h) of FLSA, *may not* be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods.

In your second example, you state that the bus driver selects a duty assignment of 5 days of work per week with each workday consisting of a work period of 7 1/2 consecutive hours of work. In addition, the bus driver volunteers to work, and does work, on one of his/her regularly scheduled days off. The bus driver works the same schedule of work hours as

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

he/she would on one of the normal workdays. The CBA requires that the bus driver be guaranteed a minimum of 8 hours of pay per day on any workday regardless of the number of hours actually worked by the bus driver that workday. The CBA also requires a minimum of 8 hours of pay at time and one-half the straight time wage rate for work performed on a scheduled day off. In a given workweek, the bus driver works the 5 regularly scheduled days of work. This bus driver's rate is $14.00 per hour. The amount of earnings to be paid to this bus driver, in this example, under the CBA would be computed as follows:

(7 1/2 hours of actual work) 8 hours x $14.00 x 5 days = $560.00

(7 1/2 hours of actual work) 8 hours x $14.00 x 1.5 = $168.00

(45 hours of actual work) *** Weekly pay = $728.00

You ask how this bus driver's total pay should be computed under FLSA.

In this example, the regular rate for overtime pay purposes is not the bus driver's hourly pay rate, but would be determined by dividing all remuneration for employment paid in the workweek by the total hours worked by the employee in that workweek. The computation would be as follows:

Straight time wages (48 hours of pay x $14.00) = $672.00

Regular rate ($672.00 / (6 days x 7.5 hours)) = $ 14.93

The amount of overtime pay due the bus driver would be computed as follows:

($14.93 x 5 (overtime hours of work) x .5) = $37.33

As we explained in our response to your first question, certain premium payments may be excluded from the regular rate calculation and credited against overtime pay due under FLSA. It is our opinion that the extra premium payment for work performed on the bus driver's day off can be excluded from the regular rate calculation pursuant to section 7(e)(7) and credited against overtime pay due the bus driver pursuant to section 7(h) of FLSA. Therefore, since $56.00 (8 hours x $14.00 x .5) of creditable premium payments is paid to the bus driver and he/she is due $37.33 overtime premium pay under FLSA, no additional pay is due the bus driver under FLSA.

In your third example, you state that the bus driver selects a duty assignment referred to as the "extra board." The bus driver who selects this duty assignment is known as the "extra man." The work of an extra man includes filling in for employees who are not at work for any reason. The extra man could also be called upon to perform bus runs (called "trippers") which are too short in length to be assigned to another bus driver as a full day's work assignment. Each day, the extra man is "marked up," meaning that the extra man is given his/her assignment for the next workday. The work assignment might be, for example, a full day's work, or just a "time to report" to "protect the service," i.e., to standby to perform the work of an employee who may not come to work. The method of assigning work to be performed by the extra man and the rotation of bus drivers as the extra man is controlled by very detailed CBA negotiated rules. These CBA rules require the employer to pay a monetary penalty to the extra man whenever the employer does not properly assign the work for the extra man. Under the CBA, an extra man who reports at the time he/she has been advised to report is guaranteed a minimum of 3 hours of pay even if he/she is not assigned any work to perform. The CBA also guarantees a minimum of 3 hours of pay for an extra man who works a tripper. In addition, an extra man is guaranteed a minimum of 8 hours of pay for each day he/she is scheduled for an extra board work assignment.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

To illustrate how the "extra man" may work in a given workweek you have provided the following work schedule:

<u>Day 1</u>: The extra man reports at 5 a.m. to the bus depot to protect the service and is released from duty at 7 a.m., when it is apparent there will be no work for him/her to perform. However, the extra man is told to report back to the bus depot at 10 a.m. for a work assignment that is to be completed by 5 p.m. that day.

<u>Days 2 and 3</u>: The extra man reports at 5 a.m. to the bus depot to protect the service and is released from duty at 8 a.m. However, the extra man is told to report back to the bus depot at 12 noon to protect the service and is released from duty at 3 p.m., when it is apparent that there will be no work for him/her to perform.

<u>Days 4 and 5</u>: The extra man works 4 hours in the morning, has a period of 5 hours off duty during which the extra man is completely relieved from all duties. In addition, the extra man has 5 hours of work to perform in the afternoon.

<u>Day 6</u>: The extra man volunteers to work and works 9.5 consecutive hours on his/her regular day off for the transit operator.

The amount of earnings to be paid to the extra man in this example under the CBA would be computed as follows:

<u>Day 1</u>

A guarantee of 3 hours of pay for protection duty

| | | | | |
|---|---|---|---|---|
| 2 hours of actual work regular bus driver's run | (3 hours x $14.00) | = | | $ 42.00 |
| 7 hours of actual work | (8 hours x $14.00) | = | | $112.00 |

<u>Day 2</u>

| | | | | |
|---|---|---|---|---|
| 6 hours of actual work | (8 hours x $14.00) | = | $112.00 | |

<u>Day 3</u>

| | | | | |
|---|---|---|---|---|
| 6 hours of actual work | (8 hours x $14.00) | = | $112.00 | |

<u>Day 4</u>

| | | | |
|---|---|---|---|
| 9 hours of actual work | (4 hours x $14.00) = | | $ 56.00 |
| | (5 hours x $14.00) = | | $ 70.00 |
| Overtime penalty | (1 hour x $14.00 x .5) = | | $ 7.00 |
| Spread penalty | (4 hours x $14.00 x .5) = | | $ 28.00 |

<u>Day 5</u>

| | | | |
|---|---|---|---|
| 9 hours of actual work | (4 hours x $14.00) = | | $ 56.00 |
| | (5 hours x $14.00) = | | $ 70.00 |

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

| | | | |
|---|---|---|---|
| Overtime penalty | (1 hour x $14.00 x .5) = | | $ 7.00 |
| Spread penalty | (4 hours x $14.00 x .5) = | | $ 28.00 |

Day 6

9.5 hours of actual work (9.5 hours x $14.00 x 1.5) = $199.50

48.5 total hours of actual work *** Weekly pay = $899.50

You ask how the total pay should be computed under FLSA for this driver.

As we explained in our responses to your first and second questions, the daily overtime penalty, the spread penalty, and the day-off premium payments may be excluded from the total compensation for purposes of calculating the regular rate on which the FLSA overtime premium pay is computed. Therefore, we would exclude the 2 hours of overtime penalty premium payments, the 8 hours of spread penalty payments, and the 9.5 hours of premium payments for work performed on a regular day off, from the weekly pay of the driver for purposes of calculating the regular rate.

| | | |
|---|---|---|
| FLSA total compensation ($899.50 - $136.50) | = | $763.00 |
| Regular rate ($763.00 / 48.5 (total hours)) | = | $ 15.73 |
| FLSA overtime pay ($15.73 x (8.5 overtime hours) x (.5)) | = | $66.85 |

Since the bus driver is paid $136.50 (19.5 hours x $14.00 x .5) of premium payments, which may be credited against overtime pay due under FLSA, and he/she is due only $66.85 of overtime premium pay under FLSA, no additional pay is due the bus driver under FLSA.

We trust that the above is responsive to your inquiry.

Sincerely,
Herbert J. Cohen
Deputy Administrator

1985 WL 304329 (DOL WAGE-HOUR)
END OF DOCUMENT

# EXHIBIT F

Westlaw.

Page 1

Not Reported in F.Supp.2d, 2003 WL 21209854 (N.D.Ill.), 149 Lab.Cas. P 34,796, 8 Wage & Hour Cas.2d (BNA) 1436
(Cite as: 2003 WL 21209854 (N.D.Ill.))

c

United States District Court,
N.D. Illinois, Eastern Division.
Wilfredo LABOY, Plaintiff,
v.
ALEX DISPLAYS, INC. and Chuck Felder, individually, Defendants.
No. 02 C 8721.

May 21, 2003.

*MEMORANDUM OPINION AND ORDER*

CONLON, J.

*1 Wilfredo Laboy ("Laboy") sues Alex Displays, Inc. ("Alex Displays") and Chuck Felder ("Felder")(collectively, "defendants") for unpaid overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, as amended by the Portal-to-Portal Act, 29 U.S.C. § 251 *et seq.,* and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105 *et seq.* Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56.

BACKGROUND

All facts are undisputed unless otherwise noted. Alex Displays is a family-owned and operated corporation that designs and builds trade show exhibits. Alex Displays employs between ten and twelve individuals, including Felder. Felder is sole shareholder and president of Alex Displays. Felder handles all administrative and accounting matters for the company, including payroll.

From January 2000 to August 2002, Laboy was employed by Alex Displays as a laborer. Laboy's job duties included building trade show displays. In addition, Laboy was responsible for assembling and dismantling trade show displays.

Alex Displays' laborers worked in Chicago most of the time. Approximately three to five times a year, employees attended trade shows held in Las Vegas and New York. Alex Displays' laborers, including Laboy, arrived several days before the trade show was scheduled to begin to assemble the displays. At the end of the show, the laborers dismantled the displays. During the trade show, the laborers would check on the displays. The laborers worked approximately the same number of hours at each trade show.

To facilitate payroll, Alex Displays used a bonus system to pay its employees attending trade shows in New York and Las Vegas. Under the bonus system, each employee received two checks. The first check reflected payment for forty hours at an employee's regular rate regardless of the number of hours worked during the first week at the trade show. According to Alex Displays, the second check compensated employees for overtime worked during the trade show. Alex Displays claims it paid more than one and one-half times the employees' regular rate for overtime at trade shows to compensate for the inconvenience of working away from home, as well as meal expenses in excess of the per diem rate paid to each employee.

Laboy seeks overtime compensation under the FLSA and IMWL for the first week of the trade shows held in Las Vegas and New York. Specifically, he claims overtime for three weeks in 2000, four weeks in 2001, and three weeks in 2002.

DISCUSSION

I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once a moving party

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2
Not Reported in F.Supp.2d, 2003 WL 21209854 (N.D.Ill.), 149 Lab.Cas. P 34,796, 8 Wage & Hour Cas.2d (BNA) 1436
(Cite as: 2003 WL 21209854 (N.D.Ill.))

has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Silk v. City of Chicago,* 194 F.3d 788, 798 (7th Cir.1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.,* 212 F.3d 969, 972 (7th Cir.2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

## II. Laboy's Overtime Claims

*2 The parties apparently agree that the overtime provisions of the FLSA and the IMWL are coextensive because neither party addresses Laboy's IMWL claim. The Illinois Administrative Code and Illinois case law support the parties' assumption that if the bonus program used by Alex Displays to compensate Laboy for working overtime complies with the FLSA, the program also complies with Illinois law. *See Condo v. Sysco Corp.,* 1 F.3d 599, 601 n. 3 (7th Cir.1993), *citing* 56 Ill. Admin. Code § 200.170 (1991) and *Haynes v. Tru-Green Corp.,* 154 Ill.App.3d 967, 977, 507 N.E.2d 945, 951 (4th Dist.1987). Therefore, Laboy's federal and state law claims will be considered together under the FLSA's framework.

Employers must compensate employees who work more than forty hours a week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). According to defendants, Laboy was compensated at an amount equal to or greater than one and one-half times his regular rate for all hours worked in excess of forty hours per week. Specifically, defendants claim Laboy cannot establish the number of hours he purportedly worked in excess of forty hours per week; even if he could, he failed to properly calculate his regular rate for determining overtime pay.

### A. Hours Worked

Laboy bears the burden of proving defendants did not compensate him for completed work. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946). Laboy must "show the amount and extent of overtime work as a matter of just and reasonable inference." *Id.* Defendants argue Laboy cannot sustain his burden.

Defendants claim Laboy repeatedly contradicted himself during discovery as to the amount of overtime worked. *See* Motion at 4 ("None of plaintiff's testimony is worthy of any credence"). Although Laboy's testimony may be questionable, the court cannot resolve issues of credibility on summary judgment. *See Liberty Lobby,* 477 U.S. at 255. Therefore, the court reviews all facts, including Laboy's testimony, in the light most favorable to Laboy. *See Id.*

As Laboy points out, defendants provide estimates of Laboy's overtime hours. According to defendants, Laboy worked the following hours at the New York and Las Vegas trade shows:

| Date | Hours |
|---|---|
| February 2000 | 64 |
| July 2000 | 55 |
| August 2000 | 69 |
| January 2001 | 52 |
| February 2001 | 64 |

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21209854 (N.D.Ill.), 149 Lab.Cas. P 34,796, 8 Wage & Hour Cas.2d (BNA) 1436
**(Cite as: 2003 WL 21209854 (N.D.Ill.))**

| | |
|---|---|
| July 2001 | 52 |
| August 2001 | 69 |
| January 2002 | 58 |
| February 2002 | 64 |
| July 2002 | 55 |

Motion, Ex. Q at ¶¶ 64-73, 75. Laboy is entitled to rely on defendants' estimates to meet his burden of proof. *Anderson,* 328 U.S. at 687.

**B. Regular Rate**

Defendants next claim Laboy improperly calculated his regular rate in determining the amount allegedly due as overtime compensation. According to Laboy, payments made under Alex Displays' bonus program must be included in calculating his regular rate. Under the FLSA, "[t]he regular rate by its very nature must reflect all payment which the parties have agreed shall be received regularly during the work week, exclusive of overtime payments." *Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S. 419, 424 (1945). "To permit overtime premium to enter into the computation of the regular rate would be to allow overtime premium on overtime premium-a pyramiding that Congress could not have intended." *Bay Ridge Operating Co. v. Aaron,* 334 U.S. 446, 464 (1948). Therefore, payments made under Alex Display's bonus program must be excluded in calculating Laboy's regular rate only if the payments were for overtime.

**\*3** Defendants take issue with Laboy's change of heart regarding the nature of the bonus payments. At his deposition, Laboy unequivocally testified that the bonus payments he received for working trade shows was for overtime. Motion, Ex. D at 48-51. In his affidavit filed in response to defendants' summary judgment motion, Laboy changed his mind, claiming:

After reviewing the pay stubs and the deposition of Mr. Felder, I now remember that the bonus checks for out of town trade show work were paid at the same rate re-

gardless of the number of hours worked while out of town. My original testimony, that the bonuses changed depending upon the number of hours I worked at the out of town trade shows was an honest mistake made during my deposition.

Pl. Resp., Ex. B at ¶ 3. Generally, a party cannot create an issue of fact by submitting an affidavit to contradict prior deposition testimony. *Buckner v. Sam's Club, Inc.,* 75 F.3d 290, 292 (7th Cir.1996). However, Laboy's characterization of the bonus payment is an improper legal conclusion that cannot be considered on summary judgment. *See, e.g., Pfeil v. Rogers,* 757 F.2d 850, 861 (7th Cir.1985)("Because legal argumentation is an expression of legal opinion and is not a recitation of a 'fact' to which an affiant is competent to testify, legal argument in an affidavit may be disregarded") Indeed, employees cannot waive their entitlement to overtime wages under the FLSA. *Brooklyn Savings Bank v. O'Neill,* 324 U.S. 697, 706 (1945). Although the contradiction in Laboy's testimony may be relevant to his credibility, it does not impact the legal classification of the bonus program.

Defendants demonstrate that payments made under the bonus program should be excluded from the calculation of Laboy's regular rate. Under 29 C.F.R. § 778.201(a):

Certain premium payments made by employers for work in excess of or outside of specified daily or weekly standard work periods or on certain special days are regarded as overtime premiums. In such case, the extra compensation provided by the premium rates need not be included in the employee's regular rate of pay for the purpose of computing overtime compensation due under section 7(a) of the Act.

Three types of premium payments are outlined in §§

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4
Not Reported in F.Supp.2d, 2003 WL 21209854 (N.D.Ill.), 149 Lab.Cas. P 34,796, 8 Wage & Hour Cas.2d (BNA) 1436
(Cite as: 2003 WL 21209854 (N.D.Ill.))

7(e)(5), (6) and (7) as set forth in § 778.200(a). 29 C.F.R. § 778.201(b). Defendants claim §§ 7(e)(5) and (7) apply:

As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include -

(5) Extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) or in excess of the employee's normal working hours or regular working hours, as the case may be; [discussed in §§ 778.201 and 778.202] ... or;

*4 (7) Extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a)), where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek; [discussed in §§ 778.201 and 778.206].

The court need not determine whether the parties had an agreement for purposes of § 7(e)(7), because the payments must be excluded from the regular rate under § 7(e)(5):

The regulation interpreting this provision makes it clear that so long as the overtime compensation is contingent upon the employee having worked in excess of eight hours in a day or in excess of the specified number of hours in the workweek, whether the extra compensation is at a rate greater than, less than, or at one and one-half times the base rate, the extra premium compensation 'may be credited toward statutory overtime payments pursuant to section 7(b) of the Act.'

*Nolan v. City of Chicago,* 125 F.Supp.2d 324, (N.D.Ill.2000), *citing* 29 C.F.R. § 778.202(a).

Laboy does not dispute that § 7(e)(5) applies. Instead, he argues § 778.200(a)(3) requires inclusion of the bonus program in the calculation of his regular rate. Section 778.200(a)(3) provides in relevant part:

As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include -

(3) Sums paid in recognition of services performed during a given period if ... both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly ...

29 C.F.R. 200(a)(3)(a). As Laboy concedes, "[t]he bonus payments were expected regularly by the employees who traveled out of town for trade show work." Pl. Resp. at 5. Therefore, § 778.200(a)(3) does not apply and defendants are entitled to a credit for payments made under the bonus program. *See* 29 C.F.R. § 778.201(a)("under section 7(h) this extra compensation may be credited toward the overtime payments required by the Act").

III. Failure to Plead Affirmative Defense

Laboy contends defendants cannot take advantage of § 7(e)(5) because they failed to plead that provision as an affirmative defense under Fed.R.Civ.P. 8(c). Defendants concede they failed to plead the defense, but argue their failure is harmless. "The rule that forfeits an affirmative defense not pleaded in the answer (or by an earlier motion) is ... not to be applied rigidly." *Herremans v. Carrera Designs, Inc.,* 157 F.3d 1118, 1123 (7th Cir.1998). To the contrary, "appellate courts are not inclined to find a technical failure to comply with Rule 8(c) fatal when the district court has chosen to recog-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21209854 (N.D.Ill.), 149 Lab.Cas. P 34,796, 8 Wage & Hour Cas.2d (BNA) 1436
**(Cite as: 2003 WL 21209854 (N.D.Ill.))**

nize a belatedly asserted affirmative defense, so long as the record confirms that the plaintiff had adequate notice of the defense and was not deprived of the opportunity to respond." *Venters v. City of Delphi,* 123 F.3d 956, 968 (7th Cir.1997), *citing Blaney v. United States,* 34 F.3d 509, 512-13 & n. 3 (7th Cir.1994)(collecting cases).

**\*5** Laboy had adequate notice of the defense. Indeed, Laboy does not identify any prejudice caused by defendants' presentation of the defense for the first time in their summary judgment motion. Defendants filed their summary judgment motion four days after Laboy served them with long overdue supplemental discovery responses ordered by the court. Defendants claim they "had no idea that plaintiff's complaint was limited to the weeks he worked out-of-town for the last three years until they received plaintiff's Rule 26(a) disclosures and discovery responses on April 4, 2003." Reply at 11-12. Nothing in the record indicates defendants' claim is untrue. To the contrary, Laboy's complaint contains only a general statement that defendants owe overtime compensation for hours worked in excess of 40 a week. Laboy does not identify any basis for raising the defense earlier. More importantly, Laboy took advantage of the opportunity to respond to the defense. Under these circumstances, defendants' technical failure to comply with Rule 8(c) is harmless.

CONCLUSION

Laboy does not dispute that he was paid more than one and one-half times his regular rate if his bonus payments are excluded from the calculation of his regular wage rate. For the reasons stated above, bonus payments for trade show work are excluded in calculating Laboy's regular wage rate. Accordingly, his claim for overtime pay fails.

N.D.Ill.,2003.
Laboy v. Alex Displays, Inc.
Not Reported in F.Supp.2d, 2003 WL 21209854 (N.D.Ill.), 149 Lab.Cas. P 34,796, 8 Wage & Hour Cas.2d (BNA) 1436

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.