## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**LAWRENCE RODRIGUEZ, et al.,**

       **Plaintiffs,**

**vs.**                                     **No. CIV-07-0901 JB/ACT**

**CITY OF ALBUQUERQUE,**

       **Defendant.**

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
## AND MEMORANDUM IN SUPPORT

### MOTION

Plaintiffs present the following Motion for Summary Judgment, stating as grounds that the material facts in this case are stipulated and undisputed and that Plaintiffs are entitled to partial judgment in their favor pursuant to Rule 56, Fed. R. Civ. Proc., as a matter of law.

### MEMORANDUM

This is a collective action brought under the Fair Labor Standards Act (FLSA) by City employees and former employees charging that the City has incorrectly calculated their overtime compensation. In addition to the named-Plaintiffs, more than 200 employees and former employees who worked overtime for the City of Albuquerque have opted in to this collective action. The employees have been subjected to a common scheme, with variants, to avoid or diminish their payments for overtime work.

This case presents some important and previously unresolved issues concerning the calculation of overtime compensation and the interface between the law and collective bargaining agreements between the City and its employees who work overtime.

## I.    INTRODUCTION

The Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., is one of the most important laws governing the relationship between employees and employers.  The law sets out minimum wage standards and rules for the payment of overtime wages at a rate of time-and-a-half of the employees' regular rate of pay.  Congress deliberately left many key terms of the FLSA, such as the definitions of "work" and "regular rate of pay" for the courts to interpret and define.  A substantial body of employment law has developed from the efforts of employers and employees to do that.

In this case, Plaintiffs contend that the City miscalculates their regular rate and overtime pay, both by using the wrong denominator and multiplier and by utilizing a dual calculation method that eliminates either the benefit of the collective bargaining provision or the benefit of the FLSA provisions for calculating the regular rate of pay.   In addition, Plaintiffs allege that the City fails to include required sick leave and vacation leave buy backs in the regular rate and overtime pay calculation.  The City denies Plaintiffs' allegations.  The parties have stipulated to the material facts and the issues are ripe for summary adjudication; Plaintiffs contend that they are entitled to summary judgment as a matter of law.

## II.    THE PARTIES HAVE STIPULATED TO MATERIAL FACTS

Pursuant to the parties' agreement and the Court's Order, the parties have stipulated to the material facts that apply to this case (Doc. 67), making the parties' cross-motions for summary judgment appropriate.  With respect to the calculation of the regular rate of pay, the City stipulates that it "calculates the 'regular rate of pay' based on the number of hours worked by employees, including overtime hours, rather than by the number of hours in the employees'

normal work week (Stipulation No. 8) and that "The City uses a one-half multiplier in calculating the additional over-time pay due." (Stipulation No. 9).  It is stipulated that the City's collective bargaining agreements with its employees and employee unions (except firefighters) provide that employees will be employed for regular forty hour workweeks.  (Stipulations Nos. 21, 24, 27, 30, and 33)

With respect to the City's method of dual calculations, Plaintiffs rely on the fact that the City's Personnel Rule 302.2 provides that "when overtime is required . . . compensation must be in accordance with the Fair Labor Standards Act (FLSA) <u>and</u> any applicable collective bargaining agreement." (Stipulation No. 17, underlining in stipulation).  Plaintiffs also rely on the stipulated fact that each of the collective bargaining agreements provide that "for the purpose of computing overtime, paid leave shall be considered time worked" or some variant of that language (Stipulations Nos. 21, 24, 26, 28, 31, and 33).  Although the Transit drivers contract does not expressly state that language, "the City's practice for many years has been to include hours of paid leave as time worked."  (Stipulation No. 35).

The City has stipulated that it uses a dual calculation system "whereby it compares the employee's wage entitlements under the applicable CBA to the employee's wage entitlements under the FLSA.  The City pays pursuant to whichever calculation yields the greater amount for the employee."  (Stipulations Nos. 54 and 55).  Police officers are compensated solely pursuant to the terms of their CBA and no FLSA calculation is made.  (Stipulation No. 56).  It is stipulated that the CBAs "are more generous than the FLSA in certain respects" and that the "FLSA is more generous than the CBAs in certain respects."  Contractual overtime calculations exclude add-ons required by the FLSA.  (Stipulations Nos. 57, 58, and 59).

Finally, it is stipulated that City contracts require the City to buy back certain accrued sick leave and vacation time, but that the City does not include such payments in its employees' regular rates of pay.  (Stipulations Nos. 23, 24, 26, 29, 32, 39, and 52).

### III.    ARGUMENT AND AUTHORITIES

Plaintiffs are entitled to judgment as a matter of law because the City's method of calculating its employees' overtime pay is not in accordance with the FLSA, in that the City of Albuquerque:

1)    erroneously calculates employees' regular rate of by by dividing base pay and add-on pay by the total hours worked (including overtime hours) rather than the "normal, non-overtime hours" in the workweek and by then multiplying by one-half rather than one-and-one-half; and

2)    makes two calculations of overtime wages due to each employee each pay period, one under the terms and provisions of the collective bargaining agreements, the other under the FLSA, and then selects only one of the calculations:

   a)    overtime due under the respective collective bargaining agreements without including pay bonuses and incentives, such as longevity pay or other remuneration in the calculation of the regular rate of pay; or

   b)    overtime due under the FLSA without including paid leave in the total of time or days worked; and

   c)    takes "credits" for contractual payments against the overtime pay it owes; and

3)    fails to include sick leave and vacation buy back pay in its calculation of the regular rate of pay.

A.    **The Regular Rate of Pay**

Under the FLSA, Plaintiffs are owed overtime wages amounting to "not less than one and one-half times the regular rate" at which they are employed," for hours worked in excess of their normal work weeks.  29 U.S.C. § 207(a)(1).  The "regular rate" used to calculate overtime pay, "is the hourly rate actually paid to the employee for the normal, non-overtime work week." *Aaron v. Witchita*, 54 F. 3d. 652, 655 (10th Cir. 1995); citing, *149 Madison Ave. Corp. v. Asselta,* 331 U.S. 199 (1947).  The "regular rate" "must be drawn from what happens under the employment contract."  Id., citing *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446.  The "regular rate" is not just the basic rate of pay for the normal workweek but includes "all remuneration for employment paid to, or on behalf of, an employee."  § 207(e). As a basic premise behind the calculation of overtime under the FLSA, "the 'regular rate' under the Act is a rate per hour."  29 C.F.R. Sec. 778.109.

"While the words 'regular rate' are not defined in the Act, they obviously mean the hourly rate actually paid for the normal, non -overtime workweek."  *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 40 (1944), citing *Overnight Motor Co. v. Missel*, 316 U.S. 572.  "The Supreme Court has described it as the hourly rate actually paid to the employee for the *normal, non-overtime workweek* for which he is employed – an 'actual fact.'"  29 C.F.R. Sec. 778.108 (The "regular rate") emphasis added; citing *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419.

> Section 7 of the Act requires inclusion in the "regular rate" of "all remuneration for employment paid to, or on behalf of, the employee" except payments specifi-cally excluded by paragraphs (1) through (7) of that subsection.  As stated by the Supreme Court in the *Youngerman-Reynolds* case cited above:  "Once the parties have decided upon the amount of wages and the mode of payment the determina-tion of the regular rate becomes a matter of mathematical computation . . .

29 C.F.R. Sec. 778.108.

The regular rate of pay cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee [;] it must be drawn from what happens under the employment contract."  29 C.F.R. § 778.108; *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 462-63 (1942).  "It is not an arbitrary label chosen by the parties; it is an actual fact."  *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945).  The rule is that the regular rate "shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee."  § 297(e).  Plaintiffs allege that the City of Albuquerque has evaded or diminished its obligations under the FLSA, with the result that City employees receive less overtime compensation than they are entitled to under the law.

**B.     Incorrect Arithmetic in Calculation of Overtime Pay**

In all cases where the City is calculating overtime pay for its employees pursuant to the provisions of the FLSA, it is incorrectly calculating that hourly "regular rate" by dividing the employees' hourly base pay and additional compensation by the number of hours worked in the particular week for which calculations are made, which *includes* overtime hours.  This  results in a lower "regular rate" than the correct method of calculation, which requires dividing the hourly pay and additional compensation for the "normal, non-overtime workweek" by the number of hours in that week, not including overtime hours.  In each such case, the City is also then incorrectly multiplying the incorrectly calculated "regular rate of pay" by 50% rather than 150% as required by the FLSA.  The result is that the City is paying its employees significantly less overtime pay than required by the FLSA.

**1.     Division**

The regular rate is the hourly rate an employer pays the employee "for the *normal, non-overtime workweek for which he is employed*."  *Walling v. Youngerman-Reynolds Hardwood*

*Co.*, 325 U.S. at 424 (emphasis added).  In *Newmark v. Triangle Aluminum Industries, Inc.,* 277 F. Supp. 480 (N.D. Ga., 1967), the Court addressed the calculation of damages where the employee has a fixed salary and held that it is the agreed upon compensation for the "normal, non-overtime workweek" that is the base salary amount.

In *Newmark*, the Court rejected the employer's argument that total compensation received divided by all hours worked should be used to determine the regular rate and that half of that should then be multiplied by the overtime hours in order to determine overtime wages.  277 F. Supp. at 481-82.  The Court stated:

> (D)efendant has overlooked 29 C.F.R. § 778.113 . . . which in describing the method for computing the "regular rate" for salaried employees, reiterates that the "regular hourly rate is computed by dividing the salary by the number of hours which the salary is intended to compensate."

> It is obvious that the phrase "hours actually worked," the divisor sought by defendant, is not synonymous with "hours for which the agreed-upon salary is intended to be compensation."  If the agreed-upon hours are less than those actually worked, the divisor would be smaller and the resulting "agreed rate per hour" would be correspondingly larger.

*Newmark*, 277 F. Supp. At 481-82; also see, *Cowan v. Treetop Enterprises, Inc.*, 163 F. Supp. 2d 930, 938-941 (M.D. Tenn. 2001) ("the Court concludes that the agreed-upon work hours for Plaintiffs' work . . . controls on the number of hours that will be divided into the weekly compensation here to determine the employees' regular hourly rate of pay"); also see, *Dingwall v. Friedman Fisher Associates*, 3 F. Supp. 2d 215 (N.D. N.Y. 1998).

The regulations defining the regular rate of pay provide that an employee's regular rate is "determined by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek *for which such compensation was paid.*"  29 C.F.R. § 778.3.  See, *Hernandez v. 65 de Infanteria Thom McAn, Inc.*, 516 F.2d 1293,

1296 (1st Cir. 1975). This necessarily involves making such a calculation prior to adding

overtime pay to the amount of compensation, since the overtime pay cannot be calculated until

the regular rate is determined.

In a recent FLSA case, *Scott v. City of New York*, 592 F. Supp. 2d 475 (SDNY, 2008), the

court addressed the same issue and resolved any doubt about the impropriety of the City's

inclusion of overtime hours in the divisor. In *Scott*, "over fifteen thousand current and former

New York City police officers and detectives" asserted that the New York City "systematically

violate(d) plaintiffs' overtime rights under the FLSA." *Scott*, 592 F. Supp. 2d at 478. One of the

major issues was the calculation of the regular rate:

> The crux of the dispute between the parties concerning the regular rate is whether
> the rate is based on compensation for an officer's regular work schedule or
> whether it must be determined based on all hours an officer has worked, including
> overtime. The parties have labeled this disagreement "the denominator dispute." .
> . . An employee's regular rate of pay will of course be higher if fixed payments –
> specifically longevity pay – are spread across fewer hours of work.

Scott, 592 F. Supp. 2d at 487.

The New York district court observed that the U. S. Supreme Court had "laid out the

general principle underlying regular rate calculations in *Walling v. Helmerich & Payne*, where it

stated "While the words 'regular rate' are not defined in the Act, they obviously mean the hourly

rate actually paid for the normal, non-overtime workweek." *Scott*, id.; *Accord Gorman v.*

*Consolidated Edison Corp.*, 488 F. 3d 586, 595 (2nd Cir. 2007). The court acknowledged that:

> However, defendants correctly note that the most on-point regulation does not
> echo the language of *Walling*. Specifically, 29 C.F.R. Sec. 778.209 – entitled
> "Method of inclusion of bonus in regular rate" – states that a bonus payment
> should be "added to the other earnings of the employee . . . and the total divided
> by total hours worked."

*Scott*, id.  Therefore, "(i)t is unclear whether the regulation refers to the total non-overtime hours worked or the total hours worked including overtime."  *Scott*, id.  The court goes on to clarify the question of whether "total hours worked" does or does not include overtime hours:

> "The proper scope of [a regulation] is derived not from reading it in isolation, but from a careful consideration of the complete regulatory scheme . . . against the backdrop of its policies and objectives."  *United States v. Stansell,* 847 F.2d 609, 614 (9th Cir. 1988).  Thus any ambiguity in section 778.209 should be resolved to yield a single consistent understanding of the regular rate as "the hourly rate actually paid for the normal, non[-]overtime workweek."  29 C.F.R. Sec. 778.108 (citing *Youngerman-Reynolds Hardwood Co.*, 325 U.S. at 419).  Therefore the ambiguous term "total hours worked" denotes the total number of hours worked in the regular workweek.

*Scott*, id.  The *Scott* court thus totally supports Plaintiffs' contentions that the correct divisor is the hours worked in the employees' regular workweek, forty hours, rather than the number of hours worked including overtime as the City contends.

As a result of dividing by the hours worked in the particular work week, including overtime hours, rather than dividing by forty,  the normal, non-overtime hours in the City employees' workweeks, the City arrives at a lower hourly "regular rate of pay" than required by the FLSA.  The City then compounds its error by multiplying by one-half rather than one-and-a-half.

### 2.    Multiplication

The City's justification for using a one-half multiplier is that it has already included the add-on in the full compensation, which includes overtime hours.  This, however, is a false premise, as most of the add-ons, such as longevity pay, only cover the first forty hours, and do not apply to the overtime hours.  No statutory provision allows the use of a one-half add on, and to the contrary, the standard rate of overtime pay is one and a half times the regular rate of pay.

The City's second calculation error flows from the first. If the initial compensation is considered to include the overtime hours, then the calculation of the regular rate should only include an additional .5 rather than the legally required 1.5 multiplier. This is to avoid the "double pay" syndrome where "the employee is compensated twice for the overtime hours, and for the portion of bonus pay attributable to the overtime hours." This supports Plaintiffs' contention that the correct way to calculate the overtime pay is to conduct two separate computations, one for the initial 40-hour (or, in the City's case, 80-hour pay period) workweek, and the other for the overtime pay.

The overtime pay computation should be divided into two parts, one for the regular workweek (or pay period) and the other for the overtime hours. As a result, there is no duplication of pay in the overtime calculation. The regular rate of pay stays the same no matter how many hours the employee works. The City's method of calculating overtime pay, on the other hand, short-changes the employee without justification. The "regular rate" varies depending on the number of hours worked.

### 3.    City Employees Have a Fixed, Non-Fluctuating Workweek

There are, of course, cases in which the use of a divisor that includes overtime hours is appropriate. Under the FLSA's fluctuating workweek exception, § 778.114(a), for example, employers may calculate overtime for an employee with a set salary "whose hours of work fluctuate from week to week" and who has reached "a mutual understanding with his employer that he will receive a fixed amount as straight-time pay for whatever hours he is called upon to work in a workweek, whether few or many . . ." *Agawam*, at 287, citing *Condo v. Sysco Corp.*, 1 F.3d 599, 601 (7th Cir. 1993) .

> . . . the overtime compensation regulations . . .  provide two methods by which to calculate an employee's "regular rate" of pay.  The first applies if the employee is paid a fixed weekly salary for a specific number of hours to be worked each week. 29 C.F.R. § 778.113(a).  The second applies if the employee is paid a fixed weekly salary regardless of how many hours the employee may work in a given week.  Id. at § 114(a).
>
> By its own terms, § 114 applies only if there is "a clear mutual understanding of the parties" that the fixed salary is compensation for however many hours the employee may work in a particular week, rather than for a fixed number of hours per week.

*Valerio v. Putnam Associates, Inc.*, 173 F.3d 35, 39 (1st Cir., 1999).

While neither of these two calculation methods applies precisely to City employees paid by the hour (rather than by a salary) for a normal 40-hour workweek, the first, where "the employee is paid a fixed weekly salary for a specific number of hours to be worked each week," is far more applicable to City of Albuquerque employees employed at a fixed wage rate for a 40-hour workweek.

**4.    The City's Arithmetic Results in a Lower Regular Rate and Less Overtime Pay**

The regular hourly rate of pay for a 40-hour-a-week public employee is derived by first taking the employee's wage rate (e.g. $15.00/hour) and adding to that the total of additional remuneration (such as longevity pay, hazardous duty pay, and other such "add-ons" (for example $60.00) for the week, divided by 40, the number of hours in the workweek.  The result, (e.g., $16.50) is the "regular rate of pay for that employee for that week.  If the employee works 60 hours in a particular workweek, his overtime pay is $24.75 (16.50 times 1.5) times 20 (overtime hours) or $495.00 which, added to his base pay of $660.00 ($600 plus $60.00 in add-on payments) pays him $1155.00 for the week.  Assuming the add-ons remain the same, the rate is the same for each week, regardless of how many overtime hours are worked.

Using the City's calculation method, however, the employee's rate of pay is $15.00/hr

times 60 hours ($900) plus $60.00 ($960.00), which divided by 60 (total hours worked in the

workweek) results in $16.00 as the "regular rate," and overtime pay (.5, <u>not</u> 1.5) is $8.00, times

20, or $160.00 which added to the base pay of $960.00 pays the employee <u>$1120.00</u> for the

week.  The rate of pay then varies for each week for each employee, depending on how many

hours are worked in the week.

### 5.    Public Policy and Common Sense

Inherent in the City's method of calculating overtime pay, there are at least two concerns

that should be considered.  Under the City's scheme of calculating the "regular rate" by dividing

by the number of hours worked (rather than forty), the more overtime the employee works the

lower the hourly rate of pay he earns.  This is contrary to the intent of the FLSA, while unreason-

ably benefitting employers who use employees for long work weeks.

In *Scott*, supra, the court again discusses one of the issues raised by the Plaintiffs in this

case, discussing the application of longevity pay in the context of a regular rate calculated

without including overtime in the divisor:

> Moreover, this is the most logical outcome based on the purpose of the longevity
> payments at issue.  Where longevity payments are characterized as an addition to
> an employee's base salary – as the CBAs clearly note – those payments reflect the
> greater value of an experienced employee's labor.  Where an employee's compen-
> sation is based on the hours he or she works, the value of that experience is
> received by the employer for every hour that the employee works.  It is counter-
> intuitive for longevity pay – as a component of the regular rate – to decrease when
> an experienced employee volunteers or is ordered to work more hours than a
> regularly scheduled work period.

*Scott*, 592 F. Supp. 2d at 488.

In *New Mexico Department of Labor v. Echostar Communications Corporation*, 2006

NMCA 47; 134 P.3d 780, the New Mexico Court of Appeals invalidated a contract which called

for a fixed weekly salary plus an overtime factor of one-half the hourly rate, calculated so the

hourly rate decreased as the number of hours worked increases.  The New Mexico court held that

New Mexico's wage and hour law "does not permit such agreements, which conflict with the

Act's prohibition against overtime paid at less than time and a half."  *Echostar,* 134 P. 3d at 781.

The Court reasoned that Echostar's contractual provisions were invalid because:

> (1) the statute provides for time and a half; (2) the intent of the statute is to
> adequately compensate for overtime, to discourage overtime, and to encourage the
> employment of more workers; (3) a specific provision of the statute provides for
> basing overtime on fluctuating rates of pay for one limited category of employees;
> and (4) the Supreme Court authorities relied upon addressed a differently worded
> statute.  Accordingly, we hold that the contract between Wendt and Echostar
> violates the public policy set forth in the Minimum Wage Act.

*Echostar*, 134 P. 3d at 783.  Other state courts have had the same concern.

In *Dresser Industries v. Alaska Department of Labor*, 633 P.2d 998, 1006 (1981) the

Alaska Supreme Court upheld a State regulation prohibiting use of the flexible work week

exception:  "This contravenes the policies of requiring increased overtime compensation and

promoting the spreading of employment."  See also, *Skyline Homes, Inc. v. Department of

Industrial Relations*, 165 Cal. App. 3d 239; 211 Cal. Rptr. 792 (Ct. App. 4th Dist., Div. 2, 1985)

("the rate must be computed by dividing the weekly straight time salary by no more than 40

hours regardless of how many hours . . . worked.").

Another serious concern is that under the City's calculation methodology, the "regular

rate" becomes highly irregular.  Rather than having every employee have a different rate of pay

each week, depending on the number of overtime hours worked in the week, the correct method

of calculating overtime results in the same rate each week, regardless of the hours of overtime

worked.  Surely the term "regular rate" implies that it is to be the same, or "regular," rather than different each week.

What appears to be ambiguity in the law and regulations is actually easily resolved by applying the principles behind the law and using common sense.  The "regular rate" as defined by the law is the rate agreed upon by the parties.  It does not vary from one week to the next, depending on the number of hours worked by the employee in the particular week.  It is not different for each employee, depending on the number of hours worked.  While there are certainly differences from one employee to the next, for example because one employee has more seniority and is thus entitled to a higher longevity payment, there is no way the collective bargaining agreements would contemplate or common sense would support endlessly variable rates of pay for similarly situated employees.  On the issue of calculation of overtime pay based on the "regular rate" rules,  Plaintiffs are entitled to judgment in their favor as a matter of law.

### C.    Two Calculations:  Contract vs. FLSA

The City's contends that it may properly calculate contractual overtime separately from statutory overtime, and then chose the higher of the two.  This raises the question, however, of whether the City violates the law while calculating according to the contractual terms and violates the contracts when it calculates according to the law.  Neither is permissible, yet both are happening under the City's overtime pay scheme.

Hours of paid leave, when employees are paid pursuant to the provisions in a collective bargaining agreement but do not actually "work" are a crucial consideration in this case.  The primary types of paid leave for most City employees are vacation, sickness, injury, and holidays.  Some paid leave (vacation and sick time) "accrues" and usually can be "sold back" or donated.

Although it would appear that the application of the law to the work and pay of the City of Albuquerque's public employees would be direct and relatively simple, that is far from the case.

Stated simply, the FLSA requires an employer to pay overtime wages, calculated at "time-and-a-half of the regular rate of pay for the normal, non-overtime workweek" after forty hours of "work." Thus, considering only the FLSA provision, in a normal five-day, forty-hour week when an employee has a day off with pay, he must "work" another eight hours before meeting the FLSA's forty-hour overtime threshold.

However, the City and each of its unions have a negotiated clause in their contract that provides that paid leave will be counted as days worked for the purpose of calculating overtime. For employees working under those contracts, overtime pay starts after forty hours of "normal, non-overtime" pay, regardless of whether or not they were actually "working" all forty hours.[1]

The City calculates overtime owed to its employees, with the exception of Police Department employees, making two calculations for each employee: once for "contractual overtime" and once for "statutory overtime." Contractual overtime is based on the terms set out in the collective bargaining agreements between the City and its employee unions. Contractual overtime is calculated by the City in accordance with the contract, but not, under the City's methodology, in accordance with the provisions of the FLSA.

The situation is even more extreme for Police Department employees. Members of the bargaining unit represented by the Albuquerque Police Officers Association (APOA) have expressly traded their right to a rate of overtime pay governed by the FLSA (which includes

---

[1] The only exception is Fire Department employees, who work three different work periods, rather than standard 40-hour work weeks.

bargained for pay incentives and bonuses) for consideration of their days of paid leave as if they were days worked. For Police Department employees there is only one calculation and it is based on the contractual overtime provision. There is no "overtime adjustment" on the checks of Police employees; all overtime for Police Department employees is calculated at exactly one-and-a-half times their base rate of pay.

For most of City employees the City performs two calculations of overtime pay: one under the collective bargaining agreement which essentially ignores the requirements of the FLSA; the other under the FLSA which ignores the provisions of the bargaining agreement. The City then pays the higher of the two calculations. This procedure is apparently unprecedented. Except for what was agreed to by the Police officers and invalidated by the court in *Wheeler v. Hampton Township*, 399 F.3d 238 (3rd. Cir., 2005), neither the City nor the Plaintiffs have found any other case in which this dual calculation procedure is utilized.

The City's Merit System Ordinance, § 3-1-11, provides that overtime pay "be paid by the city for work performed outside of established work hours in accordance with the Fair Labor Standards Act." And Rule 302.2 of the City's Personnel Rules provides that:

> (W)hen overtime is required for non-exempt employees, compensation must be in accordance with the Fair Labor Standards Act (FLSA) <u>and</u> any applicable collective bargaining agreement.

(Underlining added). The City must pay its employees "in accordance with the FLSA <u>and</u> any applicable collective bargaining agreement." Since the City does not do that, it violates the FLSA.

The Collective Bargaining Agreements between the City and its unions expressly state that paid leave (i.e., vacation, sick leave, holidays, etc.) shall be counted as days worked and

clarify that employees working over 40 hours in a week "shall be compensated for all such time at a rate equal to one and one-half times their regular pay."  The Management union contract, for example, specifies that "(p)aid time will be considered hours worked for purposes of calculating overtime" and that overtime compensation "must be in accordance with the FLSA <u>and</u> this Agreement."  Local 3022 Agreement, at p. 16, § 14.1; underlining added.

The Police union contract goes even further, trading the proper calculation under the FLSA of the regular rate in exchange for the City's agreement to pay for leave time as if it were "time worked."   As stated in the APOA contracts in effect between at least 2001 and the present:

> The parties hereto agree that for the purpose of computing overtime, paid leave will be considered time worked and <u>the regular rate includes the hourly rate with no other remunerations included.</u>

In testing the validity of a collectively bargained agreement under the FLSA, "the courts are required to look beyond that which the parties have purported to do." *Herman v. Anderson Floor Company*, 11 F. Supp. 2d 1038, 1041-42 (E.D. Wisc. 1998), quoting *149 Madison Ave.*, at 204, (citing, *Walling*, 325 U.S. at 424).  An agreement by the parties to treat certain payments differently than as compensation for hours of employment within the meaning of the [FLSA] does not comply with the FLSA. *Herman*, at 1042, citing *Walling v. Harnischfeger Corp.*, 325 U.S. 427, 432 (1945).

In *Wheeler,* supra, the Township's police officers made the same deal as the Albuquerque Police officers:  no additional remunerations, bonuses, or pay incentives, would be included in the regular rate calculation but non-work pay would count as days worked.  Some of the officers subsequently filed a complaint, contending:

> that the Township's method of calculating overtime short-changed them under the FLSA, even though they agreed to that method in a collective bargaining agree-ment.  The Township argues that, while the officers bargained away in the

> agreement one of their rights under the FLSA, the Township over-compensated the officers by bargaining away a more valuable right under the FLSA and thus offset the Township's liability under the Act.

*Wheeler*, 399 F.3d at 240.  The Township "argued that the Officers traded their right to have incentive/expense pay added . . . in the CBA's overtime calculation in exchange for the inclusion of non-work pay. . . which" the Township contended "is not required under the FLSA."

The Township's contention in *Wheeler* was exactly the same as the City of Albuquerque's argument that it picks the higher of the bargaining agreement calculation and the FLSA calculation, with the result that the scheme benefits both the employer and the employees.  In *Wheeler* the appellate court questioned the basis for the Township's defense:

> We agree that under § 207(e)(2), the Township did not have to agree to a CBA (collective bargaining agreement) that included non-work pay in its regular rate. Assuming, as do the parties, that such pay already is included in the CBA, however, we disagree that under § 207(e)(2) the Township does not have to include non-work pay in its regular rate.  The CBA requires the Township to do so, and § 207(e) nowhere suggests that we should relieve the Township of that obligation.

*Wheeler*, at 243.

Section 207(e) states that an employee's "regular rate" of pay "*shall not be deemed* to include . . . payments made for occasional periods when no work is performed."  The Third Circuit Court held that the "pivotal language is 'shall not be deemed.'"

> The function of § 207(e)(2) is to forbid this Court from *deeming* that the CBA include non-work pay.  We will follow that injunction, for the parties agree that the CBA already contains non-work pay in the regular rate.  There is thus nothing for this Court to "deem."  The deed is already done by the parties' own hands. . . . Consequently, we see no textual reason to "credit" the Township for including such pay in its regular rate.

*Wheeler*, at 244.

Another appellate court addressed whether the FLSA requires inclusion of contractual benefits "in the officers' 'regular rate' for purposes of overtime calculation under the FLSA." *O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003). Because the regular rate "must be discerned from what actually happens under the governing employment contract" the court held that the contractual add-on incentive pay must be included in the regular rate calculation. Id.

In *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728 (1981) the Court addressed whether the provisions of a collective bargaining agreement could overcome an individual's right to sue under the FLSA. The Court noted:

> This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to . . . overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate. . . .

Again in this context, the "regular rate of pay" is the wage *actually paid* to the employee. The employees' regular rates "must be drawn from what happens under the employment contract." *Bay Ridge Operating Co.*, 334 U.S. at 464. "(I)t is an actual fact." *Walling,* 325 U.S. at 424 (1945). The City simply ignores the prescription of the FLSA that requires the employees' regular rate of pay to be based on what it actually pays them for. Under the *facts* of this case, that necessarily *includes* the provisions of the collective bargaining agreements. The reason the City has no authority or other support for its "dual method of pay calculations" is that it violates the letter and intent of the law, and is rarely if ever attempted in the public sector.

Thus, with only a few exceptions, the City makes two calculations of overtime wages for each City employee in each pay period: one under the provisions of the collective bargaining

-19-

agreement; the other under the provisions and requirements of the FLSA.  The City then pays the higher of the two.  Whenever the City fails to pay wages based on the calculated "regular rate" it violates the FLSA, as the federal statute requires that the employees' "regular rate "*must reflect all payments which the parties have agreed shall be received* regularly during the work week," *Walling,* 325 U.S. at 424.  The FLSA and the City's rules and agreements with its unions require it to pay overtime that includes <u>both</u> the requirements of the FLSA and the terms of the contracts, not one or the other.

The law requires the City to pay overtime wages at a rate that includes <u>both</u> the provisions of the applicable CBA <u>and</u> the requirements of the FLSA.  As a result of the City's mistaken reading of "and" to mean "or" the City selects the higher of the two, rather than the total of the agreed upon provisions <u>and</u> the statutory requirements.  The court cannot overturn what the employees bargained for with the City in good faith; at the same time, the court cannot condone or approve the City's violations of the requirements of the FLSA.

### D.    Taking of "Credits"

As a side-effect of the dual calculation methodology, the City is taking "credits" or "offsets" against overtime pay.  These "credits" are ostensibly for vacation time, sick time, and holidays that the City pays  at regular, non-overtime pay rates, pursuant to its collective bargaining agreements.  The "credits" are not properly creditable or chargeable against overtime pay under the provisions of the FLSA.  According to the City it:

> ...properly excludes holiday pay in the regular rate under the FLSA, because § 7(e) excludes, among other things:  (2) Payments made for occasional periods when no work is performed due to vacation, holiday, illness....

.

Chavez City Summary Judgment Memo at p. 14.  The City admits that it takes credits for hours paid but not worked, such as holiday pay, call-in pay, or longevity pay, to offset overtime

liability.  *Chavez* City Memo at p. 21.  Under its dual calculation system the City unilaterally takes "credits" against its overtime pay liabilities.  These "credits" are not limited to holiday pay, which the City frequently compensates at time-and-a-half or even double-time rates, but also includes paid leave time, such as vacation and sick leave compensated at only base rates of pay.  The result is that the employees have no idea what they are actually paid for and what the City takes away in "credits."

The City is not entitled to the credit allowed under § 207(h)(2) for anything other than what it has actually paid as a premium, at a rate *no less than* time-and-a-half of the regular rate of pay.  The pay for which the City takes credits against owed overtime pay, i.e., vacation, sick leave, and other paid leave time, is not creditable under the FLSA because the City did not provide any extra, or premium, pay for those hours.  See 29 U.S.C. § 207(e)(5)-(7).  Furthermore, these payments are not themselves related to the performance of overtime, and instead are payments that were bargained for and "were not intended to compensate the employees in lieu of overtime compensation."  *DuPlessis v. Delta Gas, Inc*., 640 F. Supp. 891, 897 (E.D. La. 1986).  When the City takes "credit" for paid leave against "contractual overtime," it does so without any justification in either the law or the contract.

In *Dunlop v. Gray-Goto, Inc.,* 528 F.2d 792, 793 (10th Cir. 1976) the court addressed a contention that there was no overtime compensation due to employees whose employer "had paid its employees certain fringe benefits, including paid vacations . . . the value of which equaled or exceeded the amount of overtime compensation otherwise due under the Act."  The Tenth Circuit Court disagreed, holding that while the paid leave benefits "in the form of paid vacations, six holidays with pay each year, biannual bonuses, and the extension of benefits of a group insurance policy  would appear to be included" in 29 U.S.C. § 207(e) "as we read 29 U.S.C. § 207(h) such

benefits . . . may not be credited toward overtime compensation due under the Act." 528 F.2d

at794;  See, *Alexander v. United States*, 28 Fed. Cl. 475, 479, 480 (Ct. Fed. Cl., 1993)

In *Kohlheim v. Glynn County, Georgia*, 915 F.2d 1473 (11th Cir. 1990) the court

discusses "'credit' for excessive overtime premiums paid."  The court held that the defendant

would only be entitled to credit for overtime premiums paid that were equal or greater than one

and one half times the regular rate.  Here, none of the pay for vacation or sick time was paid at an

overtime rate.  Except for holidays paid at time-and-a-half rates or double time rates, there is no

"premium pay"against which the City can properly claim credit for vacation time, sick leave, or

other ordinary paid leave time.

### E.    Failure to Include Paid Buy Backs

The City of Albuquerque has failed to include all the properly applicable "other compensa-

tion" in calculating the "regular rate of pay" of some of its employees, with the result that these

employees receive less overtime pay than required by the FLSA.  The City has, applicable to

particular bargaining units, a vacation buy-back and sick-leave buy-back program.  When the

City converts an employee's sick leave or "buys back" vacation time, that adds a  significant

amount of money to the employees' pay and it must be included in the regular rate of pay

> The authority of federal regulation Sec. 778.223, coupled with the statutory
> presumption favoring the inclusion of all monies in the regular rate of pay,
> mandate that lump sum payments awarded under the City's sick leave buy-back
> program be included in the firefighters' regular rate of pay.

*Acton v. City of Columbia, Missouri*, 436 F.3d 969, 981 (8th Cir. 2006).  The City's failure to

include buy back of accrued sick leave and vacation leave hours in the employees' regular rates

of pay constitutes an additional violation of the FLSA.

IV.    CONCLUSION

The City incorrectly interprets the "hours worked" in a pay period to include, rather than exclude, overtime hours.  This results in a larger denominator (or divisor) and a lower regular rate of pay for City employees.  The City then multiplies the total hours, including overtime, by a one-half multiplier rather than separating regular work hours (generally forty per week) from overtime hours and applying a time and a half multiplier to the regular rate and overtime hours. This also results in a lower overtime payment than required by the FLSA.

The regular rate of pay under the provisions of the FLSA is "drawn from what happens under the employment contract."  *Bay Ridge Operating Co.* 334 U.S. at  464.  The regular rate calculation for City employees is based on a standard forty-hour work week (times two for a two-week pay period).  The "regular rate" "must reflect all payments which the parties have agreed shall be received. . . .  it is an *actual fact*."  *Walling*, 325 U.S. at 424.  The unavoidable "actual fact" in this case is that the City pays its employees for leave time as if it were paying for "work." However, when it calculates its employees' overtime pay pursuant to the FLSA the City disregards that "actual fact" and leaves that pay and those days out of its regular rate calculations.

The stipulated facts in this case show that the City derives its employee payments primarily from the terms of its collective bargaining agreements with its employees.  As such, the terms and payments made by the City form the "regular rate payments," and the City cannot rely on a constricted view of the FLSA and manipulation of the terms of the union contracts to change that.  Nor does the law allow the City's end-run around the FLSA based on its refusal to calculate overtime rates that incorporate both contractual and statutory provisions.

For all the reasons set out herein, the Plaintiffs' motion for partial summary judgment on the four issues addressed above should be granted.

Respectfully submitted,


*Electronically signed and filed*
_____
Paul Livingston
Attorney for Plaintiffs
P.O. Box 250
Placitas, NM 87043
(505) 771-4000

and

BREGMAN and LOMAN, P.C.

*Electronically signed*
_____
Sam Bregman
Attorney for Plaintiffs
111 Lomas Blvd. NW, Suite 230
Albuquerque, NM 87102
(505) 761-5700

I  hereby certify that the foregoing
was filed electronically and a copy
has been forwarded by the Court to
the following at their e-mail addresses
on September 4, 2009:

Michael I. Garcia:  migarcia@cabq.gov
Ed Bergmann:  ebergmann@seyfarth.com

*Electronically signed*
_____
Paul Livingston