# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**LAWRENCE RODRIGUEZ, et al.,**

   **Plaintiffs,**

**vs.**             **No. CIV-07-0901 JB/ACT**

**CITY OF ALBUQUERQUE,**

   **Defendant.**

## PLAINTIFFS' RESPONSE TO CITY'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs present the following response to the City's Motion and Memorandum for Summary Judgment (Docs. 69, 70). This is a collective action brought under the Fair Labor Standards Act (FLSA) by City employees and former employees charging that the City has incorrectly calculated their overtime compensation.

### A. SUMMARY OF RESPONSE

The City contends that:

> the only dispute in this case concerns a fundamental misconception of the law by Plaintiffs as to the proper method of calculating overtime pay premiums for non-exempt public employees subject to collective bargaining agreements.

Defendant's Summary Judgment Memorandum (henceforth "Doc. 70"), at p. 1. The City asks the Court to find that it always uses "the proper method of calculating overtime."

The City's apparent disregard or disdain for Plaintiffs' claims notwithstanding, it can hardly be denied that the City's use of a novel dual calculation methodology raises concern about the interplay between the City's collective bargaining agreements and its obligations to City employees under the FLSA. In addition, Plaintiffs are challenging the City's stubborn use of

arithmetic that underpays City employees and a use of contractual "credits" to offset FLSA liabilities that is neither authorized nor permitted under the FLSA.

There are three contested issues:  1) dual calculations; 2) arithmetic; and 3) credits.

### 1.     Dual Calculations

The first issue results from City's use of dual calculations, making one calculation of overtime pay under the collective bargaining agreement provisions (without the inclusion of statutorily required enhancements to the regular rate) and making another calculation under the provisions of the FLSA.  The second calculation fails to include or consider any of the contractual provisions and benefits, such as hours or days of paid leave counting as hours or days worked.

Plaintiffs challenge the dual calculation methodology, contending that the "regular rate of pay" under the FLSA is based on the *actual* rate of pay.  This *actual* pay is a product of the *actual* provisions in the collective bargaining agreements.

### 2.     Arithmetic

As to the second issue, the City misrepresents the law, fails an arithmetic test, and persistently underpays City employees who work overtime.  Without any logical justification for doing so, the City calculates the regular rate of pay by including overtime work hours in the divisor;  Plaintiffs point to authority for the proposition that, for City employees who are paid an hourly wage to work a normal 40-hour workweek, to determine the regular rate, the pay for forty hours of work, plus wage enhancements, should be divided by forty, the number of hours in the regular work week.  That pay rate should be applied to all overtime hours, adding time and a half the regular rate of pay to the employees' base rate and enhancements for the forty-hour work-week.

### 3.    "Credits" and Offsets

The third issue concerns the City's improper taking of "credit" against its overtime

liability.  The City admits that:

> In calculating overtime pay under its dual method, the City determines the amount
> it owes under the FLSA and also the amount it owes under the applicable CBAs
> which are more generous than the FLSA in certain respects.  *The contractual pay
> rates are then credited against the City's FLSA overtime liability to the em-
> ployee...*

(Doc. 70, at p. 3, emphasis added).  As these "credits" are for regular (non-overtime)  payments,

including times employees are on paid sick leave or vacation, they are not allowed under the

terms of the FLSA

### B.    ARGUMENT AND AUTHORITIES

### I.    RESPONSE TO CITY'S ARGUMENT ON THE
### "DUAL CALCULATION" PROCESS

The City separately calculates overtime pay, once based on the provisions of collective

bargaining agreements and again based on the provisions of the FLSA, but without any of the

benefits of the CBAs.  The City then pays the higher of the two calculations.  The Police union

has agreed to waive the FLSA "regular rate of pay" provisions altogether and has agreed to

overtime payment based only on the contract.

Most of the City collective bargaining agreements state that "for the purpose of comput-

ing overtime, paid leave will be considered time worked."  (E.g., Local 624 CBA, Doc. 67-3, p.

6).  Hours of paid leave, when employees are paid pursuant to the provisions in a collective

bargaining agreement, are a crucial consideration in this case.  The primary types of paid leave

for most City employees are vacation, sickness, injury, and holidays.  Some paid leave (vacation and sick time) "accrues" and usually can be "sold back" or donated.

Stated simply, the FLSA requires an employer to pay overtime wages, calculated at "time-and-a-half of the regular rate of pay for the normal, non-overtime workweek" after forty hours of work.  Thus, considering only the FLSA provision, in a normal five-day, forty-hour week when an employee has a day off with pay, he must work another eight hours before meeting the FLSA's forty-hour overtime threshold.

However, the City and most of its unions have a negotiated clause in their contracts that provides that paid leave will be counted as time worked for the purpose of calculating overtime. For employees working under those contracts, overtime pay starts after forty hours of normal, non-overtime pay.  The Management union contract, for example, specifies that "(p)aid time will be considered hours worked for purposes of calculating overtime" and that overtime compensation "must be in accordance with the FLSA and this Agreement."  (Doc. 67-5, Local 3022 Agreement, at pp. 3 & 4; underlining added).

The City's Merit System Ordinance, § 3-1-11, provides that overtime pay "be paid by the city for work performed outside of established work hours in accordance with the Fair Labor Standards Act."  And Rule 302.2 of the City's Personnel Rules provides that:

> (W)hen overtime is required for non-exempt employees, compensation must be in accordance with the Fair Labor Standards Act (FLSA) and any applicable collective bargaining agreement.

(Underlining added).  The City must pay its employees "in accordance with the FLSA and any applicable collective bargaining agreement."  Since the City does not do that, it violates the FLSA.

-4-

The Police union contract goes even further, expressly trading the proper calculation of the regular rate under the FLSA for the City's agreement to pay for leave time as if it were "time worked."   As stated in the APOA contracts in effect between at least 2001 and the present:

> The parties hereto agree that for the purpose of computing overtime, paid leave will be considered time worked and *the regular rate includes the hourly rate with no other remunerations included.*

(Doc. 67-2, at p. 5; emphasis added).

In testing the validity of a collectively bargained agreement under the FLSA, "the courts are required to look beyond that which the parties have purported to do."  *Herman v. Anderson Floor Company*, 11 F. Supp. 2d 1038, 1041-42 (E.D. Wisc. 1998), quoting *149 Madison Ave.*, at 204, (citing, *Walling*, 325 U.S. at 424).  An agreement by the parties to treat certain payments differently than as compensation for hours of employment within the meaning of the [FLSA] does not comply with the FLSA.  *Herman*, at 1042, citing *Walling v. Harnischfeger Corp.*, 325 U.S. 427, 432 (1945).

On the other hand, whether application of an agreement to treat paid leave time as time worked is consistent with the policies and practices of the FLSA has been addressed and decided in *Wheeler v.  Township*, 399 F.3d at 240.   In *Wheeler,* the Township's police officers made the same deal as the Albuquerque Police officers:  no additional remunerations, bonuses, or pay incentives, would be included in the regular rate calculation but non-work pay would count as days worked.  Some of the officers subsequently filed a complaint, contending:

> that the Township's method of calculating overtime short-changed them under the FLSA, even though they agreed to that method in a collective bargaining agreement.  The Township argues that, while the officers bargained away in the agreement one of their rights under the FLSA, the Township over-compensated the officers by bargaining away a more valuable right under the FLSA and thus offset the Township's liability under the Act.

-5-

*Wheeler*, 399 F.3d at 240.  The Township "argued that the Officers traded their right to have incentive/expense pay added . . . in the CBA's overtime calculation in exchange for the inclusion of non-work pay. . . which" the Township contended "is not required under the FLSA."

The Township's contention in *Wheeler* was exactly the same as the City of Albuquerque's argument that it picks the higher of the bargaining agreement calculation and the FLSA calculation, with the result that the scheme benefits both the employer and the employees.  In *Wheeler* the appellate court questioned the basis for the Township's defense:

> We agree that under § 207(e)(2), the Township did not have to agree to a CBA (collective bargaining agreement) that included non-work pay in its regular rate. Assuming, as do the parties, that such pay already is included in the CBA, however, we disagree that under § 207(e)(2) the Township does not have to include non-work pay in its regular rate.  The CBA requires the Township to do so, and § 207(e) nowhere suggests that we should relieve the Township of that obligation.

*Wheeler*, at 243.

Section 207(e) states that an employee's "regular rate" of pay "*shall not be deemed* to include . . . payments made for occasional periods when no work is performed."  The Third Circuit Court held that the "pivotal language is 'shall not be deemed.'"

> The function of § 207(e)(2) is to forbid this Court from *deeming* that the CBA include non-work pay.  We will follow that injunction, for the parties agree that the CBA already contains non-work pay in the regular rate.  There is thus nothing for this Court to "deem."  The deed is already done by the parties' own hands. . . . Consequently, we see no textual reason to "credit" the Township for including such pay in its regular rate.

*Wheeler*, at 244.

Another appellate court addressed whether the FLSA requires inclusion of contractual benefits "in the officers' 'regular rate' for purposes of overtime calculation under the FLSA."

-6-

*O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003). Because the regular rate "must be discerned from what actually happens under the governing employment contract" the court held that the contractual add-on incentive pay must be included in the regular rate calculation. Id.

In *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728 (1981) the Court addressed whether the provisions of a collective bargaining agreement could overcome an individual's right to sue under the FLSA. The Court noted:

> This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to . . . overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate. . . .

Again in this context, the "regular rate of pay" is the wage *actually paid* to the employee. The employees' regular rates "must be drawn from what happens under the employment contract." *Bay Ridge Operating Co.*, 334 U.S. at 464. "(I)t is an actual fact." *Walling,* 325 U.S. at 424 (1945). The City simply ignores the prescription of the FLSA that requires the employees' regular rate of pay to be based on what it actually pays them. Under the facts of this case that necessarily *includes* the provisions and benefits of the collective bargaining agreements.

The regular rate of pay "must be drawn from what happens under the employment contract." 29 C.F.R. § 778.108; *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 462-64 (1942) ("words and practices under the contract are the determinative facts in finding the regular rate"). "It is not an arbitrary label chosen by the parties; it is an actual fact." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). The law requires the City to pay overtime wages at a rate that includes both the provisions of the applicable CBA and the requirements of

-7-

the FLSA.  On the issue of the City's dual calculation of overtime wages, the City's Motion for

Summary Judgment should be denied and Plaintiffs' motion should be granted.

## II.    RESPONSE TO THE CITY'S ARGUMENT ON ARITHMETIC: DENOMINATOR AND MULTIPLIER

The City seeks summary judgment on its contention that it correctly calculates overtime

pay.

### A.    Dividing and Multiplying

The City errs in calculating the regular rate by dividing the normal, non-overtime pay and

add-ons for the forty-hour week by the number of hours the employee worked (including

overtime hours) rather than dividing by forty, the number of hours in the normal workweek.

After incorrectly calculating the regular rate – minimizing it by using a larger denomina-

tor – the City compounds its error by failing to separate the regular work hours (40) from the

overtime hours worked in a particular week.  Treating overtime and non-overtime hours the same

allows the City to set an erroneous "regular rate," lower than achieved by establishing the rate

based on the normal 40-hour workweek and then applying it to overtime hours.  By doing that the

City compels the false conclusion that any add-ons, such as longevity pay, cover all the hours

worked, including overtime hours, rather than payment for the normal 40-hour workweek.

In calculating its employees' regular rate, the City insists that it "properly divides by the

actual number of hours worked..."  The City's divisor includes overtime hours.  However, the

regular rate is the hourly rate an employer pays the employee "for the normal, *non-overtime*

workweek for which he is employed."  *Walling v. Youngerman-Reynolds Hardwood Co.*, 325

U.S. at 424 (emphasis added); *Aaron v. City of Wichita, Kansas*, 54 F.3d 652, 655 (10th Cir.

1994); *149 Madison Ave. Corp. v. Asselta,* 331 U.S. 199 (1947)

A salaried employee's regular rate of pay is "determined by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek *for which such compensation was paid*." 29 C.F.R. § 778.3. See, *Hernandez v. 65 de Infanteria Thom McAn, Inc.*, 516 F.2d 1293, 1296 (1st Cir. 1975). This necessarily involves making such a calculation prior to adding overtime pay to the amount of compensation, since the overtime pay cannot be calculated until the regular rate is determined.

In *Newmark v. Triangle Aluminum Industries, Inc.,* 277 F. Supp. 480 (N.D. Ga., 1967), the court addressed the calculation of damages where the employee has a fixed salary and held that it is the agreed upon compensation for the "normal, non-overtime workweek" that is the base salary amount. The court rejected the employer's argument that total compensation received divided by all hours worked should be used to determine the regular rate and that half of that should then be multiplied by the overtime hours in order to determine overtime wages. 277 F. Supp. at 481-82, explaining that:

> (D)efendant has overlooked 29 C.F.R. § 778.113 . . . which in describing the method for computing the "regular rate" for salaried employees, reiterates that the "regular hourly rate is computed by dividing the salary by the number of hours which the salary is intended to compensate."
>
> It is obvious that the phrase "hours actually worked," the divisor sought by defendant, is not synonymous with "hours for which the agreed-upon salary is intended to be compensation." If the agreed-upon hours are less than those actually worked, the divisor would be smaller and the resulting "agreed rate per hour" would be correspondingly larger.

*Newmark*, 277 F. Supp. At 481-82; also see, *Cowan v. Treetop Enterprises, Inc.*, 163 F. Supp. 2d 930, 938-941 (M.D. Tenn. 2001) ("the Court concludes that the agreed-upon work hours for Plaintiffs' work . . . controls on the number of hours that will be divided into the weekly

compensation here to determine the employees' regular hourly rate of pay"); also see, *Dingwall v. Friedman Fisher Associates*, 3 F. Supp. 2d 215 (N.D. N.Y. 1998).

In a recent FLSA case, *Scott v. City of New York*, 592 F. Supp. 2d 475 (SDNY, 2008), the court addressed the same issue and resolved any doubt about the impropriety of the City's inclusion of overtime hours in the divisor.  In *Scott*, "over fifteen thousand current and former New York City police officers and detectives" asserted that the New York City "systematically violate(d) plaintiffs' overtime rights under the FLSA."  *Scott*, 592 F. Supp. 2d at 478.  One of the major issues was the calculation of the regular rate:

> The crux of the dispute between the parties concerning the regular rate is whether the rate is based on compensation for an officer's regular work schedule or whether it must be determined based on all hours an officer has worked, including overtime.  The parties have labeled this disagreement "the denominator dispute." . . . An employee's regular rate of pay will of course be higher if fixed payments – specifically longevity pay – are spread across fewer hours of work.

*Scott*, 592 F. Supp. 2d at 487.

The New York district court observed that the U. S. Supreme Court had "laid out the general principle underlying regular rate calculations in *Walling v. Helmerich & Payne*, where it stated "While the words 'regular rate' are not defined in the Act, they obviously mean the hourly rate actually paid for the normal, non-overtime workweek."  *Scott*, id.; *Accord Gorman v. Consolidated Edison Corp.*, 488 F. 3d 586, 595 (2nd Cir. 2007).  The court acknowledged that:

> However, defendants correctly note that the most on-point regulation does not echo the language of *Walling*.  Specifically, 29 C.F.R. Sec. 778.209 – entitled "Method of inclusion of bonus in regular rate" – states that a bonus payment should be "added to the other earnings of the employee . . . and the total divided by total hours worked."

*Scott*, id.  "It is unclear whether the regulation refers to the total non-overtime hours worked or the total hours worked including overtime."*Scott*, id.  The court goes on to clarify the question of whether "total hours worked" does or does not include overtime hours:

> "The proper scope of [a regulation] is derived not from reading it in isolation, but from a careful consideration of the complete regulatory scheme . . . against the backdrop of its policies and objectives."  *United States v. Stansell,* 847 F.2d 609, 614 (9th Cir. 1988).  Thus any ambiguity in section 778.209 should be resolved to yield a single consistent understanding of the regular rate as "the hourly rate actually paid for the normal, non[-]overtime workweek."  29 C.F.R. Sec. 778.108 (citing *Youngerman-Reynolds Hardwood Co.*, 325 U.S. at 419).  Therefore the ambiguous term "total hours worked" denotes the total number of hours worked in the regular workweek.

*Scott*, id.  The *Scott* court thus totally supports Plaintiffs' contentions that the correct divisor is the hours worked in the employees' regular workweek, forty hours, rather than the number of hours worked including overtime, as the City contends.

Other cases similarly support the Plaintiffs' use of a "normal workweek" denominator that doesn't include overtime hours.  In *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259 (11th Cir. 2008), the Court held that the parties had both advocated the wrong denominator:

> The district court instructed the jury that it should use the total number of hours the store managers worked in order to calculate their regular rate of pay.  That is not the law.  An interpretative bulletin promulgated by the DOL provides the correct method for calculating an employee's regular rate of pay.

*Farm Stores*, 518 F.3d at 1268.  The Court cites 29 C.F.R. Sec. 778.113(a).  That interpretative bulletin specifies that a weekly salary is divided by the number of hours in the  employees' regular workweek:

> In the situation here, where the employee is paid solely on a weekly salary basis, the number of hours the employee's pay is intended to compensate – not necessarily the number of hours he actually works – is the divisor.

*Farm Stores*, 518 F.3d at 1268, 1269.

-11-

The Tenth Circuit Court of Appeals  has also explained that:

The regular rate is the hourly rate actually paid to the employee for the normal, non-overtime work week for which he is employed.

*Aaron v. City of Wichita, Kansas*, 54 F.3d 652, 655 (10th Cir, 1995), the court found that firefighters and the city had agreed to "weekly salaries intended to cover 112 hours of work for each pay period."  The court concluded that the "regular rate consisted of the [agreed] bi-weekly salary divided by 112."

The City's justification for using a one-half multiplier is that it has already included the add-on in the full compensation, which includes overtime hours.  The City falsely claims that Plaintiffs seek a double compensation.  Plaintiffs actually contend that the City should first calculate a "regular rate" for employees' normal 40-hour work week, and then pay time-and-a-half that regular rate of pay for each hour of overtime pay.

The City's second calculation error flows from the first.  The overtime pay computation should be divided into two parts, one for the regular workweek (or pay period) and the other for the overtime hours.  As a result, there is no duplication of pay in the overtime calculation.  The regular rate of pay stays the same no matter how many hours the employee works.  The City's method of calculating overtime pay, on the other hand, short-changes the employee without justification.

### B.    Fluctuating Workweek

There are, of course, cases in which the use of a divisor that includes overtime hours is appropriate.  Under the FLSA's fluctuating workweek exception, § 778.114(a), for example, employers may calculate overtime for an employee with a set salary "whose hours of work fluctuate from week to week" and who has reached "a mutual understanding with his employer

-12-

that he will receive a fixed amount as straight-time pay for whatever hours he is called upon to

work in a workweek, whether few or many . . ." *Agawam*, at 287, citing *Condo v. Sysco Corp.*, 1

F.3d 599, 601 (7th Cir. 1993) .

> . . . the overtime compensation regulations . . . provide two methods by which to
> calculate an employee's "regular rate" of pay. The first applies if the employee is
> paid a fixed weekly salary for a specific number of hours to be worked each week.
> 29 C.F.R. § 778.113(a). The second applies if the employee is paid a fixed
> weekly salary regardless of how many hours the employee may work in a given
> week. Id. at § 114(a).
>
> By its own terms, § 114 applies only if there is "a clear mutual understanding of
> the parties" that the fixed salary is compensation for however many hours the
> employee may work in a particular week, rather than for a fixed number of hours
> per week.

*Valerio v. Putnam Associates, Inc.*, 173 F.3d 35, 39 (1st Cir., 1999).

While neither of these two calculation methods applies to City employees paid by the

hour (rather than by a salary) for a normal 40-hour workweek, the first, where "the employee is

paid a fixed weekly salary for a specific number of hours to be worked each week," is far more

applicable to City of Albuquerque employees employed at a fixed wage rate for a 40-hour

workweek.

The City refers to the Department of Labor's C.F.R. 778.110 (Hourly rate employee).

The first paragraph assumes an employee "employed solely on the basis of a single hourly rate."

In that case the hourly rate is the regular rate of pay, no division is needed, and the addition of

1/2 the regular rate results in the same payment as paying the regular rate for the first forty hours

and the time-and-a-half rate for the overtime hours. The second paragraph adds to the hourly rate

a production bonus. Since a production bonus necessarily covers all the hours worked, it is

appropriate to spread the bonus throughout all the time worked. In the case now before the

Court, however, there are no production bonuses, and the wage enhancements are in large part those (such as longevity pay) that are correctly applied to the normal, non-overtime workweek.

### C.     The Arithmetic Matters

For employees with wage enhancements like longevity pay there is a significant difference between the City's method of calculation and the correct calculation of overtime wages. As a result of dividing by the hours worked in the particular work week, including overtime hours, rather than dividing by forty (the normal, non-overtime hours in the City employees' workweeks), the City arrives at a lower hourly "regular rate of pay" than required by the FLSA. The City then compounds its error by multiplying by one-half rather than one-and-a-half times the overtime pay.[1]

In *Scott*, supra, the court discusses the application of longevity pay when the regular rate is correctly calculated without including overtime hours in the divisor:

> Moreover, this is the most logical outcome based on the purpose of the longevity payments at issue. Where longevity payments are characterized as an addition to

---

[1] The regular hourly rate of pay for a 40-hour-a-week public employee is derived by first taking the employee's wage rate (e.g. $15.00/hour) and adding to that the total of additional remuneration (such as longevity pay, hazardous duty pay, and other such "add-ons" (for example $60.00) for the week, divided by 40, the number of hours in the workweek. The result, (e.g., $16.50) is the "regular rate of pay for that employee for that week. If the employee works 60 hours in a particular workweek, his overtime pay is $24.75 (16.50 times 1.5) times 20 (overtime hours) or $495.00 which, added to his base pay of $660.00 ($600 plus $60.00 in add-on payments) pays him $1155.00 for the week. Assuming the add-ons remain the same, the rate is the same for each week, regardless of how many overtime hours are worked.

Using the City's calculation method, however, the employee's rate of pay is $15.00/hr times 60 hours ($900) plus $60.00 ($960.00), which divided by 60 (total hours worked in the workweek) results in $16.00 as the "regular rate," and overtime pay (.5, not 1.5) is $8.00, times 20, or $160.00 which added to the base pay of $960.00 pays the employee $1120.00 for the week. The rate of pay then varies for each week for each employee, depending on how many hours are worked in the week.

-14-

> an employee's base salary – as the CBAs clearly note – those payments reflect the greater value of an experienced employee's labor. Where an employee's compensation is based on the hours he or she works, the value of that experience is received by the employer for every hour that the employee works. It is counter-intuitive for longevity pay – as a component of the regular rate – to decrease when an experienced employee volunteers or is ordered to work more hours than a regularly scheduled work period.

*Scott*, 592 F. Supp. 2d at 488.

### D.   Other Cases and Considerations

Inherent in the City's method of calculating overtime pay, there are at least two concerns that should be considered. Under the City's scheme of calculating the "regular rate" by dividing by the number of hours worked (rather than forty), the more overtime the employee works the lower the hourly rate of pay he earns. This is contrary to the intent of the FLSA, while unreasonably benefitting employers who use employees for long work weeks. In *New Mexico Department of Labor v. Echostar Communications Corporation*, 2006 NMCA 47; 134 P.3d 780, the New Mexico Court of Appeals invalidated a contract which called for a fixed weekly salary plus an overtime factor of one-half the hourly rate, calculated so the hourly rate decreased as the number of hours worked increases. The New Mexico court held that New Mexico's wage and hour law "does not permit such agreements, which conflict with the Act's prohibition against overtime paid at less than time and a half." *Echostar,* 134 P. 3d at 781. The Court reasoned that Echostar's contractual provisions were invalid because:

> (1) the statute provides for time and a half; (2) the intent of the statute is to adequately compensate for overtime, to discourage overtime, and to encourage the employment of more workers; (3) a specific provision of the statute provides for basing overtime on fluctuating rates of pay for one limited category of employees; and (4) the Supreme Court authorities relied upon addressed a differently worded statute. Accordingly, we hold that the contract between Wendt and Echostar violates the public policy set forth in the Minimum Wage Act.

*Echostar*, 134 P. 3d at 783.

-15-

Other state courts have had the same concern. In *Dresser Industries v. Alaska Department of Labor*, 633 P.2d 998, 1006 (1981) the Alaska Supreme Court upheld a State regulation prohibiting use of the flexible work week exception: "This contravenes the policies of requiring increased overtime compensation and promoting the spreading of employment." See also, *Skyline Homes, Inc. v. Department of Industrial Relations*, 165 Cal. App. 3d 239; 211 Cal. Rptr. 792 (Ct. App. 4th Dist., Div. 2, 1985) ("the rate must be computed by dividing the weekly straight time salary by no more than 40 hours regardless of how many hours . . . worked.").

Another serious concern is that under the City's calculation methodology, the "regular rate" becomes highly irregular. Rather than having every employee have a different rate of pay each week, depending on the number of overtime hours worked in the week, the correct method of calculating overtime results in the same rate each week, regardless of the hours of overtime worked. Surely the term "regular rate" implies that it is to be the same, or "regular," rather than different each week.

What appears to be ambiguity in the law and regulations is actually easily resolved by applying the principles behind the law and using common sense. The "regular rate" as defined by the law is the rate agreed upon by the parties. It does not vary from one week to the next, depending on the number of hours worked by the employee in the particular week. It is not different for each employee, depending on the number of hours worked. While there are certainly differences from one employee to the next, for example because one employee has more seniority and is thus entitled to a higher longevity payment, there is no way the collective bargaining agreements would contemplate or common sense would support endlessly variable rates of pay for similarly situated employees. On the issue of calculation of overtime pay based on the "regular rate" rules, Plaintiffs are entitled to judgment in their favor as a matter of law.

-16-

### III.    THE CITY IMPROPERLY TAKES CREDIT FOR "PAID LEAVE" PAY-MENTS

The City of Albuquerque takes "credits" against owed overtime for the pay earned by employees during paid leave time. Some contractual overtime payments may be credited against owed overtime pay:

> Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this section shall be creditable towards overtime compensation payable pursuant to this section.

29 U.S.C. Sec. 207(h)(2). The three categories warranting credits against FLSA obligations are (5) premium pay amounting to at least time-and-a-half the regular rate for hours worked in excess of eight in a day or in excess of the maximum workweek . . . ; (6) extra compensation of no less than time-and-a-half the regular rate for work on Saturdays, Sundays, holidays, etc.; and (7) payments of at least time-and-a-half pursuant to "an applicable employee contract or collective bargaining agreement," for work outside the normal hours.

As a side-effect of its dual calculation methodology, the City is routinely taking "credits" or "offsets" against overtime pay.

> In calculating overtime pay under its dual method, the City determines the amount it owes under the FLSA and also the amount it owes under the applicable CBAs which are more generous than the FLSA in certain respects. *The contractual pay rates are then credited against the City's FLSA overtime liability to the employee...*

(Doc. 70, at p. 3, emphasis added). These "credits" are ostensibly for vacation time, sick time, and holidays that the City pays at regular, non-overtime pay rates, pursuant to its collective bargaining agreement provisions counting hours of paid leave as hours worked. Such "credits" are not properly creditable or chargeable against overtime pay under the provisions of the FLSA.

"The payments for [time not treated as hours worked] cannot, of course, qualify as overtime premiums creditable toward overtime compensation under section 7(h) of the Act."  29 C.F.R. Sec. 778.320; *Ballaris v. Wacker Siltronic Corporation*, 370 F.3d 901, 914 (9th Cir. 2004).  The City is not entitled to the credit allowed under § 207(h)(2) for anything other than what it has actually paid as a premium, at a rate *no less than* time-and-a-half of the regular rate of pay.

The pay for which the City is now taking credits against owed overtime pay, i.e., vacation, sick leave, and other paid leave time, is not properly creditable under the FLSA because the City did not provide any extra, or premium, pay for those hours.  See 29 U.S.C. § 207(e)(5)-(7).  Also, *DuPlessis v. Delta Gas, Inc.*, 640 F. Supp. 891, 896 (DC ED La, 1986) (Defendants unsuccessfully sought "a credit against plaintiffs' award of overtime compensation for the extra compensation paid for non-productive time...")

Furthermore, the City's payments to its employees for paid leave are the result of collective bargaining  negotiations and agreements; they are not themselves related to the performance of overtime, but are payments that were bargained for and "were not intended to compensate the employees in lieu of overtime compensation." *DuPlessis,* 640 F. Supp. at 897. The City takes "credits" for leave time (such as sick leave or vacation leave) paid as provided in the collective bargaining agreements.  The "contractual pay rates" are then "credited" against the overtime payments the City owes its employee.  This "credit" scheme is plainly improper and contrary to the law.

In *Dunlop v. Gray-Goto, Inc.,* 528 F.2d 792, 793 (10th Cir. 1976) the court addressed a contention that there was no overtime compensation due to employees whose employer "had paid

its employees certain fringe benefits, including paid vacations . . . the value of which equaled or exceeded the amount of overtime compensation otherwise due under the Act." The Tenth Circuit Court disagreed, holding that while the paid leave benefits "in the form of paid vacations, six holidays with pay each year, biannual bonuses, and the extension of benefits of a group insurance policy would appear to be included" in 29 U.S.C. § 207(e) "as we read 29 U.S.C. § 207(h) such benefits . . . may not be credited toward overtime compensation due under the Act." 528 F.2d at 794; See, *Alexander v. United States*, 28 Fed. Cl. 475, 479, 480 (Ct. Fed. Cl., 1993)

In *Kohlheim v. Glynn County, Georgia*, 915 F.2d 1473 (11th Cir. 1990) the court discusses "'credit' for excessive overtime premiums paid." The court held that the defendant would only be entitled to credit for overtime premiums paid that were equal or greater than one and one half times the regular rate. Here, none of the pay for vacation or sick time was paid at an overtime rate. Except for some holidays paid at time-and-a-half rates or double time rates, there is no "premium pay"against which the City can properly claim credit for vacation time, sick leave, or other ordinary paid leave time. The City's motion for summary judgment on the issue of taking credits against liability should be denied.

## IV.    CITY AUTHORITIES

The City attached Exhibits A through F, apparently as authority for its contentions. Exhibit A is a 1997 U. S. Department of Labor opinion letter that lacks relevance or authority. Exhibit B is an unreported 2000 opinion of the North Dakota U. S. District Court in *Wisnewski v. Champion Healthcare Corp.*, 2000 WL 1474414 (D. N. D.). The Plaintiff alleged that the Defendant "failed to include all of the plaintiffs' remuneration when calculating overtime." The Court notes that:

> Part 778 of Title 29 of the Code of Federal Regulations constitutes an interpretative bulletin and not a regulation. . . . It is stressed that the Code of Federal Regulations overtime calculation formula described in section 778.110 of title 29 is correct.

Wisnewski, at *6, *8.  The Court's reference is to the "production bonus" calculation.

The City's Exhibit C is a September, 1988 opinion letter addressing the inclusion of  "A wage adjustment comprised of two separate payments, a percentage increase of 2% and a single COLA payment."  In calculating the regular rate, "the union divided the COLA by 40, while the employer divided the COLA by 48.  The Department of Labor wrote in response to an inquiry that the "regular rate is determined by dividing all income by total hours worked, not just by 40 hours."

Exhibit D is another opinion letter written on October 21, 1999.  The inquirer asked if a $5 payment "may be counted as a "premium rate" under the FLSA and whether that amount may be counted as a credit toward overtime compensation due."  The response was that since the employees began working a 44 hour duty shift, "the additional $5 . . . must be included in determining the regular rate of each employee" and "(t)he employer may not take a credit against overtime due under the FLSA. . . ."  It is unclear how this assists the City Defendant.

The City's Exhibit E, attached to its motion for summary judgment, is a Department of Labor Opinion Letter dated December 23, 1985, concerning a bus driver who worked split shifts and worked as a protector on the Transit Department's "extra board."  The Transit employee's case supports a wide-range of opinion but appears largely irrelevant to anything in this overtime case.

Finally, the City's Exhibit F is the unpublished opinion in *LaBoy v. Alex Displays, Inc.*, 2003 WL 21209854 (N. D. Ill.).  The Court observes that "Indeed, employees cannot waive their

entitlement to overtime wages under the FLSA. *LaBoy*, at *3, citing *Brooklyn Savings Bank v. O'Neill*, 324 U.S. 697, 706 (1945). The Court allowed the credit of premium pay, holding that "the extra premium compensation "may be credited toward statutory overtime payments pursuant to section 7(b) of the Act.

.    **V.    CONCLUSION**

The regular rate of pay under the provisions of the FLSA is "drawn from what happens under the employment contract." *Bay Ridge Operating Co.* 334 U.S. at 464. The regular rate calculation for City employees is based on a standard forty-hour work week (times two for a two-week pay period). The "regular rate" "must reflect all payments which the parties have agreed shall be received. . . . it is an *actual fact*." *Walling*, 325 U.S. at 424. The unavoidable "actual fact" in this case is that the City has expressly agreed to pay its employees for leave time as if it were paying for "work." However, when it calculates its employees' overtime pay pursuant to the FLSA the City disregards that "actual fact" and leaves that pay and those hours and days out of its regular rate calculations.

The City incorrectly interprets the "hours worked" in a pay period to include, rather than exclude, overtime hours. This results in a larger denominator (or divisor) and a lower regular rate of pay for City employees. The City then takes half its lower than required regular rate of pay and multiplies it by the number of overtime hours, and adds that lower number to the employees non-overtime pay. This also results in a lower overtime payment than required by the FLSA.

As for the taking of "credits" against owed overtime, the City incorrectly takes credits for regular non-overtime payments for sick, vacation, and other paid leave, and subtracts that from

the employee's overtime pay.  For all the reasons set out herein, the City's motion for summary

judgment in its favor on the legal issues in this case should be denied and Plaintiffs' motion on

these issues should be granted.

Respectfully submitted,

*Electronically signed and filed*

_____

Paul Livingston
Attorney for Plaintiffs
P.O. Box 250
Placitas, NM 87043
(505) 771-4000

and

BREGMAN and LOMAN, P.C.

*Electronically signed*

_____

Sam Bregman
Attorney for Plaintiffs
111 Lomas Blvd. NW, Suite 230
Albuquerque, NM 87102
(505) 761-5700

I  hereby certify that the foregoing
was filed electronically and a copy
has been forwarded by the Court to
the following at their e-mail addresses
on September 23, 2009:

Michael I. Garcia:  migarcia@cabq.gov
Ed Bergmann:  ebergmann@seyfarth.com

*Electronically signed*

_____

Paul Livingston