# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LAWRENCE RODRIGUEZ, STEVEN J.
DURAN, GREG MIERA, and ROSE
MARIE NEAL, On behalf of themselves
and other present and former City employees,

       Plaintiffs,

vs.                                                              No. CIV 07-0901 JB/ACT

CITY OF ALBUQUERQUE,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion for Summary

Judgment, filed September 4, 2009 (Doc. 69); and the Plaintiffs' Motion for Summary Judgment and

Memorandum in Support, filed September 5, 2009 (Doc. 73). The Court held a hearing on October

21, 2009. The primary issues are: (i) whether, in calculating the "regular rate" of pay for city

employees, a concept found in 29 U.S.C. § 207(e), Defendant City of Albuquerque properly divides

the total remuneration by the number of hours actually worked by the employee, or whether it

should instead use the number of hours in a normal workweek under the applicable collective

bargaining agreement ("CBA"); (ii) whether the City's method of calculating the pay for all hours

then adding one-half the regular rate for each hour of overtime worked is appropriate, or whether

the City must calculate pay for the first forty hours[1] and then calculate overtime at one and one-half

times the regular rate for each hour that the employee worked that week beyond forty; (iii) whether

the City is correct in excluding from the regular-rate calculation monies paid as buy-back for unused

---

[1] Or, in the case of employees whose workweek is other than forty hours, the number of
hours in a normal workweek under the employment contract.

vacation time and sick leave; (iv) whether the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 to 219, automatically incorporates the employee-friendly elements of the underlying employment agreement or, rather, whether overtime under the FLSA and under the employment contract can be determined independently from one another; (v) whether the City improperly grants certain credits against its overtime liability under the FLSA; (vi) whether the Court should award the Plaintiffs additional liquidated damages; and (vii) whether the Court should allow the Plaintiffs to take advantage of the extended three-year statute of limitations because the City's conduct was willful. After considering the stipulated facts, evidence, briefs, and arguments at hearing, the Court has concluded: (i) the proper divisor in the regular-rate equation is the number of hours in a normal, non-overtime workweek, when the parties agree to such number in the employment contract; (ii) because the use of a 0.5 multiplier is not what makes the City's method of calculation improper, the Court will find for the City on this issue; (iii) buy-back monies are remunerations within the meaning of the FLSA and properly included in the regular-rate calculation; (iv) the City's dual-calculation method of determining a city employee's overtime compensation would be proper if it correctly calculated overtime under the FLSA; (v) the Court finds that the City properly grants appropriate credits against its FLSA overtime liability; (vi) the Court will award some liquidated damages to the Plaintiffs; and (vii) the Court finds that the Plaintiffs have failed to prove that the City's violation of the FLSA was willful, and so the Court will apply the two-year statute of limitations in this case. In sum, the Court will grant the Plaintiffs' motion in part and deny it in part, and grant the City's motion in part and deny it in part.

## STIPULATED FACTS

The parties stipulate to the following material facts, see Stipulated Facts, filed July 28, 2009 (Doc. 67), to be taken into evidence without further proof. The Court recites word for word, without

any change to conform to the Court's style, either in the wording of the stipulation or in the citations, unless indicated otherwise.  In addition, the City put forth additional facts that the Court will consider after it sets forth the stipulations.

I.    **Parties.**

1.    Plaintiffs in this case allege they are present and former City employees entitled to have their overtime wages calculated in accordance with the provisions of the Fair Labor Standards Act (FLSA) and the applicable collective bargaining agreements.

2.    Over 200 individual Plaintiffs, including four named Plaintiffs, have opted in and have been certified as members of this collective action.

3.    Defendant the City of Albuquerque ("City") is a municipality and public employer.

II.    **Procedural Background.**

A.    **This Litigation**

4.    On September 12, 2007, Plaintiffs Lawrence Rodriguez, Steven J. Duran, Rosemary Neal,[2] Jason Brown, and Greg Miera, on behalf of themselves and other present and former City employees, filed a Complaint for collective action under 29 U.S.C. § 216(b) ("Section 216(b)") of the FLSA.

5.    They allege that the City has not paid certain employees the overtime wages to which they are entitled under the FLSA.

6.    Specifically, Plaintiffs allege that they have a right of recovery under the FLSA, 29 U.S.C. § 207(a)(1), for unpaid overtime wages owed to them for hours worked in excess of their normal 40-hour or other regular work week or period.

_____

[2] In the First Amended Complaint, "Rosemary Neal" was changed to reflect Plaintiff's proper name, "Rose Marie Neal."

7.      They allege that the City has failed to include all the properly applicable "other compensation" in calculating the "regular rate of pay" of some of its employees, with the result that these employees receive less overtime pay than required by the FLSA.

8.      The City calculates the "regular rate of pay" based on the number of hours worked by employees, including overtime hours, rather than by the number of hours in the employees' normal work week; Plaintiffs disagree with this calculation.

9.      The City uses a one-half multiplier in calculating the additional over-time pay due; Plaintiffs believe a one-and-one-half multiplier should be used.

10.     In addition, they allege that in many cases, the City is incorrectly taking "credits" or "offsets" against overtime pay for holiday, sick time, or other pay which is provided in a union agreement or which is otherwise properly not creditable or chargeable against overtime pay under the provisions of the FLSA.

11.     The City has denied any violation of the FLSA.

12.     Discovery closed on October 27, 2008.  However, neither party has taken any discovery in this case.

13.     On November 6, 2008, the City moved for summary judgment on the basis of res judicata or collateral estoppel arguing that the issues in this litigation had already been decided in another case before this court, Chavez. v. City of Albuquerque, No. CIV 02-562 JCH/ACT (D.N.M.) ("Chavez").  The Court denied the City's Motion on December 22, 2008.

14.     On April 8, 2009, Plaintiffs moved for collective action certification.[3]  On July 15, 2009, the Court granted Plaintiffs' motion, allowing the case to proceed as a collective action.

_____

[3] The stipulated facts state that the Plaintiffs moved for certification on April 8, 2009, but the docket indicates that the motion was filed on February 23, 2009.

15.     On July 17, 2009, the Court vacated the bench trial scheduled from August 10-12, 2009.  It ordered that the Parties submit a statement of stipulated facts and it set a briefing and hearing schedule for motions for summary judgment.

**III.    City's Rules and Ordinances.**

16.     The City's Merit System Ordinance, § 3-1-11, provides that "Overtime may be paid by the city for work performed outside of established work hours in accordance with the Fair Labor Standards Act."

17.     The City's Personnel Rule 302.2 provides that "when overtime is required for non-exempt employees, compensation must be in accordance with the Fair Labor Standards Act (FLSA) and any applicable collective bargaining agreement."

**IV.    Collective Bargaining Agreement Provisions.**

18.     Almost all classified City employees are represented by labor unions and covered by collective bargaining agreements ("CBAs") negotiated between the unions and the City.[4]  These

---

[4] Relevant portions of the most recent CBAs between the City and the various unions that represent City employees [were attached to the stipulations of facts.  See Stipulated Facts Exhibits 1-8, filed July 28, 2009 (Doc 67).]  Historic CBAs have contained sections identical in form, if not in substance, to the provisions of the most recent CBAs cited and discussed herein.  Portions of the following CBAs [were] attached as Exhibits . . . :  Agreement between the City of Albuquerque and Albuquerque Police Officer's Association, Effective July 1, 2008 through June 30, 2011 (Exhibit 1); Agreement Between the City of Albuquerque and Local 624 AFSCME, July 1, 2008 to June 30, 2010 (Exhibit 2); Agreement Between the City of Albuquerque and the Albuquerque Area Fire Fighters Union, IAFF Local 244 City Chapter, Effective:  July 1, 2006 thru June 30, 2008 (Exhibit 3); Agreement Between the City of Albuquerque and Local 3022 AFSCME, Council 18, AFL-CIO, September 24, 2008 (Exhibit 4); Agreement Between the City of Albuquerque and the Albuquerque Officers' Association, Local 1888, September 24, 2008 (Exhibit 5); Agreement Between the City of Albuquerque and Albuquerque Clerical and Technical Employees, AFSCME, Local 2962, AFL-CIO, CLC, October 9, 2008 (Exhibit 6); Agreement Between the City of Albuquerque and the New Mexico Transportation Union, Effective:  July 1, 2006 through June 30, 2008 (Exhibit 7); Agreement between the City of Albuquerque and AFSCME Local 624 Transit Union, Effective November 9, 2008 through June 30, 2011 (Exhibit 8).

CBAs establish various terms and conditions of employment. Some of the terms and conditions of employment in the CBAs exceed the overtime requirements of the FLSA.

19. For example, the following overtime payments are provided under the CBAs, but are not required under the FLSA:

(a) Overtime pay for work beyond the regular schedule.

(b) Overtime pay for working on a holiday.

(c) Overtime pay for off-shift court appearances for police officers.

(d) Overtime pay caused by counting hours of paid, unworked leave such as sick leave or vacation leave time as hours worked. The CBAs provide compensation for such leave time such as holidays, vacation time and sick leave time. If employees perform work on holidays, they receive premium compensation under their respective union contracts.

20. The normal work week of most City employees is set out in their CBAs. The normal work week for all employees except firefighters is 40 hours per week, consisting of five eight-hour days or four ten-hour days.

**B.    Albuquerque Police Officers' Association Contract**

21. The contract between the Albuquerque Police Officers' Association ("APOA") and the City (. . . Exhibit 1) provides, under a caption titled, "General Workday Provisions," that the "normal workday shall be eight (8) or ten (10) hours." Under a caption titled, "General Work Week Provisions," it provides that the "normal workweek will be forty (40) hours comprised of either five (5) eight-hour or four (4) ten-hour days." Under a caption titled "Overtime," the contract also provides that "[e]mployees shall be entitled to overtime compensation at the rate of time-and-one-half their regular straight-time rate when they perform work in excess of forty (40) hours in any one workweek" and that "for the purpose of computing overtime, paid leave shall be considered time worked, as per Section 2.5 (FLSA)."

22.     The contract between the APOA and the City further states, under a separate caption titled, "Fair Labor Standards Act":

> Under the Fair Labor Standards Act (FLSA), paid leave is not considered time worked for the purpose of computing overtime and the <u>regular rate</u> for the purpose of computing overtime includes all remunerations.
>
> The parties thereto agree that for the purpose of computing overtime, paid leave will be considered time worked and the regular rate includes the hourly rate with no other remunerations included.  Under 7K of the FLSA, the parties agree that for the purpose of computing overtime, the pay schedule will be a 7 consecutive-day, 40-hour workweek.
>
> Applications of the FLSA as it pertains to the exempt status of positions will not change from current practice.

Exhibit 1 (emphasis in original).

23.     The contract between the APOA and the City provides for the sale back to the City of excess vacation and sick leave at the end of the year.  Specifically, the contract provides that "[a]ll excess vacation accruals will be paid to the employee as monetary compensation at the end of the calendar year on an hour for hour basis."  The contracts further provide that "[a]ny sick leave accrued over the maximum [of 2000 hours] will automatically be converted to hazardous duty leave at the rate of two days of sick leave for one day of hazardous duty leave."  *See* Exhibit 1.

## C.     AFSCME Local 624 Contract

24.     The contract between the City and AFSCME, Local 624 (. . . Exhibit 2), covering all permanent non-probationary B-series employees whose job code begins with a 1, 2, or 3, performing work classified in the 1, 2, or 3 job codes (i.e., certain blue collar employees), provides that "[a]n employee's workweek shall consist of forty (40) hours per week, eight (8) hours per day, five (5) consecutive days per week or ten (10) hours per day, four (4) days per week."  The contract states that "[e]mployees shall be paid at the rate of time and one-half (1-1/2) for all hours worked in excess

of 40 hours per week. . . .  For the purpose of computing overtime, paid leave will be considered time worked."  This provision falls under a caption titled "Overtime."  The contract provides that "[e]mployees who have accumulated over one year vacation may convert 50% of the accumulation over one year to a cash payment once per year."  Sick leave may also periodically be converted to a cash payment.  *See* Exhibit 2.

### D.    Albuquerque Area Fire Fighters Union Contract

25.    The contract between the Albuquerque Area Fire Fighters Union and the City (. . . Exhibit 3), covering all sworn, permanent, non-probationary safety sensitive fire fighters through the rank of commander, provides that work schedules for the Fire Department will consist of (a) a "56-hour work week cycle consisting of two consecutive 24-hour shifts and four days off," (b) a "42-hour work week cycle of two 10-hour shifts, two 14-hour shifts and four days off," or (c) a "40-hour work week cycle [consisting of] 4 10-hour shifts."  The contract provides, that "[o]vertime worked shall be paid at time and one-half the regular rate of pay.  All hours worked in excess of the employee's regular assigned shift will be compensated at the overtime rate of time and one half the regular rate of pay." In addition, "[t]ime spent in leave with pay status shall be considered time worked for purposes of computing overtime."  *See* Exhibit 3.

26.    The contract between the City and the Albuquerque Area Fire Fighters Union provides that if a fire fighter has accumulated sufficient vacation or sick leave (at the end of the year for sick leave and once per calendar year for vacation leave), that employee can sell his or her leave back to the City.  Specifically, the CBA provides that Fire Department employees "who have accumulated over two years vacations [sic] may convert up to six (6) days over the two-year accumulation to cash payment once per calendar year."  With respect to sick leave, the CBA provides that employees on a 56-hour workweek may sell back their leave as follows: "[f]or sick

-8-

leave hours accumulated over 700 hours the employee may convert any or all such hours on the basis of 3 hours of sick leave for one hour's pay . . . .  For hours accumulated over 1008 hours on the basis of 2 hours of sick leave for one hour's pay . . . .  For hours accumulated over 1400 hours on the basis of 3 hours of sick leave for 2 hour's pay."  The contract further provides that employees on a 40-hour workweek may sell back their leave as follows: "[f]or sick leave hours accumulated over 500 hours the employee may convert any or all such hours on the basis of 3 hours of sick leave for one hour's pay . . . .  For hours accumulated over 720 hours on the basis of 2 hours of sick leave for one hour's pay . . . .  For hours accumulated over 1000 hours on the basis of 3 hours of sick leave for 2 hour's pay."  The contract provides that employees on a 42-hour workweek may convert their leave as follows: "For sick leave hours accumulated over 525 hours the employee may convert any or all such hours on the basis of 3 hours of sick leave for one hour's pay . . . .  For hours accumulated over 756 hours on the basis of 2 hours of sick leave for one hour's pay . . . .  For hours accumulated over 1050 hours on the basis of 3 hours of sick leave for 2 hour's pay."  *See* Exhibit 3.

### E.    AFSCME Local 3022 Contract

27.    The contract between the City and AFSCME, Local 3022 (. . . Exhibit 4), covering all MT, MJ, and ML employees and eligible part-time M-series employees (i.e., certain white collar employees), provides that, "FLSA non-exempt employee[s] shall have a workweek of forty (40) hours per week, eight (8) hours or ten (10) hours per day."

28.    The contract between the City and AFSCME, Local 3022, provides, under a caption titled "Overtime," that "when overtime is required for non-exempt employees, compensation must be in accordance with the Fair Labor Standards Act (FLSA) and this Agreement.  Paid time will be considered hours worked for purposes of calculating overtime."  *See* Exhibit 4.

29.    The contract between the City and AFSCME, Local 3022 also provides that

employees may sell back their sick leave. Specifically, employees who have "reached the specified accumulation levels" may convert sick leave to cash "in November of each year." *See* Exhibit 4.

### F.     AFSCME Local 1888 Contract

30.     The contract between the City and AFSCME, Local 1888 (. . . Exhibit 5), covering all non-probationary Department of Municipal Development Security Officers, Animal Services Officers, APD Transport Officers, and Transit Security Officers, provide*s*, that "an Employee's normal work week shall be forty (40) hours per week, eight (8) hours per day, five (5) consecutive days, of eight (8) consecutive hours per week, except for employees presently working ten (10) hours per day, four (4) consecutive days of ten (10) consecutive hours per week."

31.     The contract between the City and AFSCME, Local 1888, provides, under a caption titled "Overtime," that "[f]or the purpose of computing overtime, paid leave will be considered time worked." The contract provides that "leave with pay is available for the following reasons: vacation, sickness, injury, emergencies, City business, jury duty, voting, annual military services and education and leave with pay taken in conjunction with the F.M.L.A. policy." With respect to holidays, the Local 1888 contract states that:

> [e]mployees shall receive holiday pay at straight time at their hourly rate of pay for eight (8) hours, for all holidays not worked. In the event that an Employee is required to work on a holiday and does not exercise an option to take a floating holiday, the employee shall be paid holiday pay at the rate mentioned above plus time and one half for all hours worked.

*See* Exhibit 5.

32.     Under the contract between the City and AFSCME, Local 1888, unused sick leave may be sold back to the City. *See* Exhibit 5.

### G.     AFSCME Local 2962 Contract

33.     The contract between the City and AFSCME, Local 2962 (. . . Exhibit 6), covering

non-probatory C-Series employees (i.e., clerical and technical employees), states, under a caption titled "Overtime," that "[e]mployees shall be paid at the rate of time and one-half (1-1/2) for all hours worked in excess of forty (40) hours per week" and that "[f]or the purpose of computing overtime, paid leave will be considered time worked." The contract also states that "[e]mployees required to work on holidays will be paid regular holiday pay plus time and one-half (1-1/2) for the hours actually worked."

34.     Under the contract with Local 2962, employees "who have reached the specified accumulation levels" may convert sick leave to "cash payment." *See* Exhibit 6.

### H.     New Mexico Transportation Union Contract

35.     The contract between the City and the New Mexico Transportation Union (. . . Exhibit 7), covering full-time permanent non-probatory employees holding the job position of Motor Coach Operators (MCO) and Sun Van Chauffeur (SVC), states under a caption titled "Overtime," that driver-employees "will be paid at the rate of time and one-half their regular hourly rate of pay for all hours worked in excess of 40 hours per week." Although the contracts do not contain a general provision indicating that for purposes of computing overtime, paid leave will be considered time worked, the City's practice for many years has been to include hours of paid leave as time worked.

### I.     AFSCME Local 624 Transit Union Contract

36.     The contract between the City and AFSCME Local 624 Transit Union (. . . Exhibit 8), covering full-time permanent, non-probatory Motor Coach Operators (MCOs) and Sun Van Chauffeurs (SVCs) employed by the Albuquerque Transit Department, states under a caption titled "Overtime," that "MCO Operators, Extra Board Operators and SVCs will be paid at the rate of time and one-half their regular hourly rate of pay for all hours worked in excess of 40 hours per week."

37.    The contract provides that if "the unscheduled extra board protector is called in to work and no work is available when he/she reports to work, the employee will be guaranteed at least two (2) hours work." *See* Exhibit 8.

38.    It also provides that "[t]ime during which an employee is off work as a result of uncertified personal sick leave shall not be included in the calculation for overtime eligibility." *See* Exhibit 8.

39.    The contract provides that an employee "who has accumulated over two (2) years vacation may convert fifty percent (50%) of the accumulation over two (2) years to a cash payment once a year." *See* Exhibit 8.

40.    The City pays "time and one-half" for all hours worked on the day the City observes certain holidays. *See* Exhibit 8.

41.    The contract provides, under a caption titled "Call Back" that "All operators who have completed their assignments and are called back to work or are asked to work additional hours with a break of thirty (30) minutes, will be paid for a minimum of two (2) hours at straight time rate, or at one and one-half their normal hourly rate for actual time worked, whichever is greater." *See* Exhibit 8.

## V.    **Contractual Remunerations.**

42.    In addition to regular and overtime pay, the CBAs require the City to pay certain employees additional types of pay, such as longevity, superlongevity, hazard, shift differential, assignment, fire certification, skill/assignment differential, bilingual, education, and firearms qualification (hereinafter referred to as "add-ons"), on a bi-weekly basis.

43.    The CBAs do not require the City to include these add-ons in its calculation of the contractual overtime rate. In contrast, the FLSA requires inclusion of certain regularly-paid add-ons

and non-discretionary bonuses in the calculation of the statutory overtime rate.

44.    Longevity pay is an extra amount of pay that the City regularly pays employees each pay period after a certain number of years of service as an incentive to encourage employees to continue their employment with the City.  Longevity pay must be included in calculating the "regular rate" of pay under the FLSA.

45.    The City regularly pays superlongevity pay each pay period to certain employees as another incentive to encourage continued employment.  Superlongevity pay must be included in calculating the "regular rate" of pay under the FLSA.

46.    The City regularly pays hazard pay to certain employees each pay period for performing hazardous duties.  Officers assigned to hazardous classifications, such as pilots, bomb squad, aerial observer, and SWAT team, among others, also receive this type of hazard pay.  Hazard pay must be included in calculating the "regular rate" of pay under the FLSA.

47.    The City regularly pays shift differential pay each pay period to employees working shifts other than the day shift.  Employees working swing shift, for example, regularly receive, while working that shift, a certain additional amount of pay, while employees working graveyard shift receive an even greater amount of shift differential pay while working that shift.  Shift differential pay must be included in calculating the "regular rate" of pay under the FLSA.

48.    The City regularly pays assignment differential pay (abbreviated on employee pay stubs as "assign pay") every pay period to Fire Department employees who are certified paramedics through the rank of Captain.  Likewise, the City pays employees of the Albuquerque Police Department "Special Skills Pay," for officers who have specialties such as polygraph examiners, field training officers, or area sergeant coordinators in certain areas.

49.    The City regularly pays assignment pay (abbreviated on employee pay stubs as

"assignment pay") each pay period to employees assigned to non-field positions with work weeks less than 56 hours. Assignment pay must be included in calculating the "regular rate" of pay under the FLSA.

50.     The City regularly awards "fire certificate" pay each pay period to fire fighter employees who are wild land certified at the arduous level. Fire certification pay must be included in calculating the "regular rate" of pay under the FLSA.

51.     The City regularly pays "skill pay" to employees who have special training, certification, or experience.

52.     Under the terms of certain collective bargaining agreements, employees of the Albuquerque Police and Fire Departments are able to sell their sick leave and vacation pay back to the City. The City of Albuquerque does not include this buy back in the calculation of the employees' overtime. When the City buys back excess leave, it simply gives its employees separate checks and does not include the buy back pay in their regular pay check. The payment therefore is not added to the pay stubs and is not included in calculating the "regular rate" under the FLSA. The City does not include this type of pay in its calculation of the "regular rate" under the FLSA.

**VI.    The City's Payroll System.**

53.     The City of Albuquerque pays its employees through its Empath System. The pay stubs the City gives to employees with their pay represent summary totals of their payment amount for a bi-weekly period. The pay stubs do not include back-up calculations.

**VII.   Dual Calculation of Wages.**

54.     To determine the amount of wages owed to each employee during a given pay period, the City utilizes a dual method of pay calculation whereby it compares the employee's wage

-14-

entitlements under the applicable CBA to the employee's wage entitlements under the FLSA. The City pays pursuant to whichever calculation yields the greater amount for the employee.

55.    The City, through its Empath system, completes a dual calculation for each non-exempt employee for each pay period, with the exception of police officers employed by the Albuquerque Police Department.

56.    Police officers are compensated solely pursuant to the terms of the applicable CBA. In other words, no FLSA calculation is made for police officers and no comparison between contractual and statutory compensation is made.

57.    The CBAs are more generous than the FLSA in certain respects. The CBAs provide for the payment of certain overtime premiums that are not required by the FLSA. For example, certain CBAs require the payment of daily overtime and the payment of overtime on holidays. The CBAs also establish a 40-hour overtime threshold and require the City to count hours paid but not worked towards the 40-hour threshold. In contrast, the FLSA does not require employers to pay daily and holiday overtime, does allow employers to pay certain employees (police officers) overtime after 43 hours instead of 40, and does not contain an explicit provision requiring employers to count hours paid as hours worked.

58.    The FLSA is more generous than the CBAs in certain respects. The FLSA requires payment for overtime hours based on the employees' regular rate of pay. The Contracts, in contrast, do not require payment based on the regular rate of pay and thus do not include pay enhancements in the calculation of the overtime wage.

59.    Contractual overtime is calculated at one and one-half times the employee's base hourly rate. The employee's base rate excludes add-ons (e.g., longevity pay, superlongevity pay, hazardous duty pay, etc.). In contrast, the FLSA requires the inclusion of certain regularly paid add-

-15-

ons and nondiscretionary bonuses.

60.     Once the City calculates the employee's contractual overtime premium, the City determines whether the employee actually has worked the requisite hours during the workweek in question to be entitled to overtime pay under the FLSA.  The City does not include hours paid but not actually worked in determining whether the employee's hours exceed the statutory threshold. If an employee's actual hours of work exceed 40 or if a fire protection and law enforcement employee's ratio of the number of hours worked to the number of days in the work period exceeds the applicable standard under Section 207(k) of the FLSA, the City calculates the employee's statutory overtime pay entitlement.

61.     If the City determines that an employee is entitled to overtime pay under the FLSA, and further determines that the FLSA pay exceeds the contractual pay, the City pays the employee an FLSA adjustment representing the difference between the contractual pay and the FLSA pay. That adjustment is noted on the employee's pay stub as "FLSA OT Adj." If the pay stub does not contain this one-line FLSA overtime adjustment, then the Empath system has determined that contractual pay exceeded statutory pay for that particular employee and the employee was therefore paid contractual pay.  FLSA compensation is compared to contractual compensation and the employee is paid the greater amount of the two.

62.     The City can obtain from its Empath system sufficient payroll information to recalculate an employee's FLSA pay.  The Empath system can recall a certain amount of historical data showing the day-by-day times that each employee worked.

63.     The City's FLSA calculation provides payment under the FLSA whenever that amount exceeds payment under the CBA.

64.     The City calculates contractual overtime under the terms of the CBA based upon the

-16-

base rate and provides payment under the CBA whenever that amount exceeds pay under the FLSA.

**VIII.    Albuquerque Police Department Employees.**

65.    Under the FLSA (Section 7(k)) the City is not required to pay its police officers statutory overtime until after 43 hours.

66.    In contrast, the contract between the City and the APOA calls for police officers to get overtime after 40 hours.  The contract provides that "Employees shall be entitled to overtime compensation . . . when they perform work in excess of forty (40) hours in any one workweek." Merit Ordinance and Personnel Rules and Regulations, which are both part of the officers' contract with the City, also call for police officer overtime after 40 hours.  Accordingly, the City pays police officers contractual overtime after 40 hours.

67.    The City does not perform a dual calculation for police officers.  Because the City pays police officers overtime after 40 hours pursuant to their CBA, contractual overtime exceeds what the FLSA requires.

68.    The Empath system does not include add-on pay such as longevity, hazard, or superlongevity pay, when it calculates police officers' overtime rate.  Since police officers are paid more than the FLSA wage, the Empath system need not include add-ons or other bonuses or conduct a comparison of statutory and contract wages.

69.    The City periodically and informally monitors police officer contractual pay to make sure that it actually exceeds FLSA requirements.

**ADDITIONAL FACTS**

The City begins its Memorandum in Support of Summary Judgment by listing nine additional facts that, it alleges, are undisputed.  See Defendant's Memorandum in Support of its Motion for Summary Judgment at 5-7, filed September 4, 2009 (Doc. 70)("City's Memo.").  The

relevant portions of those facts are set forth below as they appear in the City's Memorandum --

including footnotes -- unless otherwise indicated:

70.     The issues raised in this case relative to calculation of overtime compensation by the City were adjudicated and ruled on in favor of the City following a trial in another case before this Court, *Chavez v. City of Albuquerque*, No. 02-0562 JH/ACT (D. N.M.)("*Chavez*").

71.     Plaintiffs' claims in *Chavez* were identical to those in this case. . . .

72.     Specifically, the *Chavez* Court granted summary judgment in favor of the City on the question of the proper divisor for calculating the regular rate of pay, the proper multiplier for calculating overtime, and the proper distribution of bonus pay.  *See Chavez* docket 250 at 45-47.

73.     Issues remaining in the *Chavez* case after the Court granted partial summary judgment were trial to the Court on September 10, 2007 in a one day bench trial before Judge Judith C. Herrera.

74.     Laurice Chappell, the City's acting payroll supervisor, was called at trial, both by the *Chavez* Plaintiffs and the City.  Laurice Chappell Declaration, dated September _ [sic], 2009 ("Chappell Decl.") ¶ 3.[5]

75.     After the bench trial and issuing findings of fact and conclusions of law, the *Chavez* Court entered judgment for the City on: (1) the claim that the City does not properly include all bonuses and add-ons in the "regular rate" of pay; and (2) the claim that the City does not properly credit payments against its FLSA overtime liabilities.  *Chavez* docket 278, 281.

76.     The *Chavez* Court entered judgment for the Plaintiffs on the claim that the City fails to include vacation and sick leave buy-back proceeds in the calculation of the "regular rate" of pay under the FLSA.[6]

77.     On January 16, 2009, the City made an offer of judgment to Plaintiffs in this case.  Docket 51.  Plaintiffs did not accept the City's offer of judgment.  The offer of judgment would have more than satisfied Plaintiffs for any alleged damages

---

[5] Relevant pages of the *Chavez* trial transcript [were] attached to the Chappell Declaration.

[6] This was the only claim the *Chavez* Court decided in Plaintiffs' favor.  This narrow issue has created a split between the Sixth and Eighth Circuits.  *Compare Featsent v. City of.* [sic] *Youngstown*, 70 F. 3d 900, 905 (6th Cir. 1995), *with Acton v. City of Columbia*, 436 F. 3d 969 (8th Cir. 2006). . . .

stemming from the City's failure to include vacation and sick leave buy-back proceeds in the calculation of the regular rate of pay.

78.    The method that the City uses to calculate overtime pay is, in all relevant aspects, the same as it was during the relevant time period covered by the *Chavez* case.  Chappell Decl. ¶ 3.

City's Memo. at 5-7.  The Plaintiffs have not contested any of these alleged facts.

## PROCEDURAL BACKGROUND

On June 9, 2009 the Court held a hearing in which the parties suggested that the Court might be able to decide all material issues in this case as a matter of law based on a set of stipulated facts. See Transcript of Hearing at 24:17-26:16 (taken June 9, 2009)(Court, Bregman)("June 9 Tr."); June 9 Tr. at 26:23-27:19 (Court, Bergmann); id. at 33:24-34:18 (Court, Bergmann); id. at 36:11-40:19 (Court, Bregman, Bergmann).  On July 17, 2009, by minute order, the Court vacated the bench trial scheduled from August 10, 2009 to August 12, 2009.  The Court ordered that, if the parties were able to agree on a statement of stipulated facts, the stipulation would be due on July 28, 2009.  The Court further ordered that motions for summary judgment would be due on August 28, 2009; responses would be due on September 11, 2009; and replies would be due September 25, 2009.

The parties met the deadline for filing stipulated facts.  The City, however, filed an unopposed motion to extend the deadlines for filing the parties' motions for summary judgment on August 25, 2009.  See Defendants' Unopposed Motion to Extend Filing Deadlines of Dispositive Motions at 1, filed August 25, 2009 (Doc. 68).  On September 4, 2009, the Court granted the City's motion and set the new deadlines as: (i) September 4, 2009 for motions for summary judgment; (ii) September 22, 2009 for responses to motions for summary judgment; and (iii) October 6, 2009 for replies.  See Order Granting Defendant's Unopposed Motion to Extend Filing Deadlines of Dispositive Motions at 1, filed September 4, 2009 (Doc. 72).  Both parties largely complied with

these deadlines.  See Defendant's Motion for Summary Judgment; Plaintiffs' Motion for Summary

Judgment and Memorandum in Support; Memorandum of Law in Opposition to Plaintiffs' Motion

for Summary Judgment, filed November 22, 2009 (Doc. 74)("City's Response"); Plaintiffs'

Response to City's Motion for Summary Judgment, filed November 23, 2009 (Doc. 75)("Plaintiffs'

Response"); Defendant's Reply in Further Support of its Motion for Summary Judgment, filed

October 6, 2009 (Doc. 77); Plaintiffs' Reply to City's Opposition to Plaintiffs' Motion for Summary

Judgment, filed October 7, 2009 (Doc. 78).

The parties' positions can be summarized as follows:  The Plaintiffs argue that, for several

reasons, the City has been violating the Fair Labor Standards Act by failing to properly calculate the

amount of overtime pay that it owes its employees.  See Plaintiffs' Motion at 1; Plaintiffs' Response

at 1-3.[7]  First, the Plaintiffs insist that the City miscalculates the "regular rate," see 29 U.S.C. §§

207(a)(1), (e), a necessary element in the calculation of the amount of overtime pay due a city

employee under the FLSA, by dividing the total remuneration by the total hours worked -- including

overtime hours -- rather than the number of hours in a normal, non-overtime work period.  See

Plaintiffs' Motion  at 4, 5-9; Plaintiffs' Response at 8-12.  They also insist that the City uses the

wrong multiplier to calculate the overtime pay -- 0.5 rather than 1.5.  See Plaintiffs' Motion at 4, 9-

11; Plaintiffs' Response at 12.  As a result of these arithmetic and order-of-operations errors, the

Plaintiffs argue, the City's employees are being paid less overtime than the FLSA requires.  See

Plaintiffs' Response at 14-15.  Next, the Plaintiffs accuse the City of improperly making two

calculations of overtime -- one under the FLSA and one under the applicable CBA -- and paying the

---

[7] In these cross-motions for summary judgment, the arguments of the parties in their own
motions are nearly identical to the arguments in opposition to the opposing party's motion.  The
Court therefore discusses all arguments at once rather than distinguishing which arguments
correspond to which filing.

employee the greater of the two.  See Plaintiffs' Motion at 4, 14-20; Plaintiffs' Response at 3-8.

Finally, the Plaintiffs also insists that the City incorrectly calculates the "regular rate" because it

fails to include sick leave and vacation buy-back in its calculation, even though the CBAs that the

City entered with each of the Plaintiffs' Unions said that, for the purposes of calculating overtime

pay, paid leave will be considered time worked.  See Plaintiffs' Motion at 4, 22; Plaintiffs' Response

at 3-4, 17-19.

        The City argues that the sole issue in this case is whether it pays its employees an amount

of overtime that satisfies the requirements of the FLSA and asserts that its method of calculation

ensures that the employees always receive at least as much overtime pay as they would receive

under the FLSA's terms.  See City's Response at 4, 8-10; Defendant's Memorandum in Support of

Its Motion for Summary Judgment at 12, filed September 4, 2009 (Doc. 70)("City's Memo.").  The

City maintains that its mathematical formula for calculating overtime complies with the FLSA –

both that it uses the proper divisor when calculating the "regular rate" and that it properly multiplies

the overtime hours worked by a factor of 0.5, rather than 1.5.  City's Response at 2-7; City's Memo

at 12-15.  The City next asserts that it includes all appropriate non-discretionary bonuses in its

calculation of its employee's overtime and that the Plaintiffs are trying to stack the overtime

calculation of the CBAs on top of the overtime calculation in the FLSA, resulting in double-

overtime.  See City's Memo. at 8-12.  It further insists that the Plaintiffs' public policy arguments

are irrelevant.  See City's Response at 7-8.  Next, the City argues that, because it made its overtime

calculation in good faith, the Plaintiffs are not entitled to rely on the three-year statute of limitations,

see 29 U.S.C. § 225(a); Brinkman v. Dep't of Corr., 21 F.3d 370, 372 (10th Cir. 1994)("[T]he jury

determined that defendant willfully violated the FLSA" because "plaintiffs could recover for only

two years of violations unless defendant had acted willfully, in which case a three-year limitations

period applied."), and the Court should decline to award the Plaintiffs any additional amount as "liquidated damages," 29 U.S.C. § 216(b). <u>See</u> City's Memo. at 15-16. The City also asserts that, while it credits some employee overtime against its overtime liability under the FLSA, it does so only when and as the FLSA permits. <u>See</u> City's Response at 10-13; City's Memo. at 16-20. Finally, it argues that a prior decision from this District, <u>Chavez v. City of Albuquerque</u>, has analyzed all of the issues in this case, and that the Court should follow the reasoning in that case and find in favor of the City on all issues. <u>See</u> City's Response at 13-14; City's Memo. at 5-7, 20-22.

The Court scheduled a hearing regarding the motions for summary judgment for October 2, 2009. On October 2, 2009, the Plaintiffs filed an unopposed motion to continue the hearing to October 21, 2009. <u>See</u> Stipulated Motion for Continuance at 1, filed October 2, 2009 (Doc. 76). The Court granted that motion on October 17, 2009. <u>See</u> Order of Continuance, filed October 7, 2009 (Doc. 79). Thus, pursuant to that continuance, the Court held a hearing on these motions on October 21, 2009.

At the hearing, the Court first heard argument from Edward Bergmann, attorney for the City of Albuquerque. His arguments largely followed the flow of the City's briefing. He insisted that the City's "dual calculation method" -- the process of calculating overtime under the FLSA and calculating it under the CBA, and giving the employee the greater amount -- pays overtime in a manner that is fully compliant with the FLSA. <u>See</u> Transcript of Hearing at 3:17-4:5 (taken October 21, 2009)(Bergmann)("Oct. 21 Tr.").[8] Mr. Bergmann then attempted to distinguish the case law that most strongly supported the Plaintiffs' position. <u>See</u> Oct. 21 Tr. at 4:6-10:12 (Bergmann). He insisted that the Court should not look to case law dealing with the FLSA as it applies to salaried

_____

[8] The citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may have slightly different page and/or line numbers.

-22-

employees, because the case before the Court deals with employees that work at an hourly rate.  See id. at 5:7-6:9 (Bergmann).  Mr. Bergmann also argued against the Plaintiffs' use of law from other states, often interpreting other laws, to support their position.  See id. at 7:7-8:13 (Bergmann).  Finally, he pointed to a split in the law on whether sale-back proceeds -- money given by the employer to the employee when the employee "cashes in" unused vacation or sick-leave time -- constitute remuneration and are properly included in the regular-rate calculation.  Id. at 9:19-10:12 (Bergmann).

Samuel Bregman, attorney for the Plaintiffs, started his argument by informing the Court that he expects the Court to be able to decide this case as a matter of law based on the stipulated facts. See id. at 10:21:25 (Bregman).  He also largely repeated the arguments of his briefs: (i) that the dual-calculation model used by the City is inappropriate, and (ii) that the City does its FLSA calculation incorrectly.  See Oct. 21 Tr. at 11:1-15:25 (Bregman).  He added one important clarification. According to Mr. Bregman, the Plaintiffs' concern is that the City is not permitted to calculate its overtime under only the CBA on one hand and only the FLSA on the other, and then pick the greater of the two.  On the contrary, according to Mr. Bregman, the City must determine what is required under the CBAs, and then graft the FLSA's requirements on top of what the CBAs already provide. See Oct. 21 Tr. at 11:9-13 (Bregman)("What they have to do -- and it's our contention I believe Wheeler [v. Hampton Township, 399 F.3d 238 (3d Cir. 2005)] supports this -- is, once the two parties agree on what the terms of the collective bargaining agreement are, then they have to lay the FLSA on top of that and figure out what the correct overtime is.").  Under this theory, the Plaintiffs argue that the FLSA does not normally require paid, unworked time to be included in the regular-rate calculation, but it does in this case.  The Plaintiffs insist that, because the CBAs in this case have a provision -- or, in one instance, a common custom -- under which paid leave must be consider

time worked, the FLSA assimilates that CBA provision and makes it a requirement of the FLSA

calculation.  In other words, because the CBA requires paid leave to be considered time worked, so

does the FLSA when considering whether the employer has paid the minimum mandatory overtime

under the FLSA.

## RELEVANT LAW REGARDING OVERTIME UNDER THE FAIR LABOR STANDARDS ACT

The FLSA "establishes minimum wage, overtime pay, child labor, and equal pay

requirements that apply as provided in the Act."  29 C.F.R. § 778.0.  According to the FLSA's

statement of purpose, Congress enacted it "to correct and as rapidly as practicable to eliminate"

"labor conditions detrimental to the maintenance of the minimal standard of living necessary for

health, efficiency, and general well-being of workers."  29 U.S.C. § 102 (titled "Congressional

finding and declaration of policy").  The Supreme Court of the United States has recognized a dual

Congressional purpose behind the FLSA: "[T]he Congressional purpose in enacting Section 7(a) was

twofold: (1) to spread employment by placing financial pressure on the employer through the

overtime pay requirement[;] . . . and (2) to compensate employees for the burden of a workweek in

excess of the hours fixed in the Act."  Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 39 (1944).

The FLSA is implemented primarily by a series of statutes, see 29 U.S.C. §§ 201-219, and

a series of interpretive bulletins, see 29 C.F.R. §§ 778.0-778.603.  The bulletins are intended to

"constitute the official interpretation of the Department of Labor with respect to the meaning and

application of the maximum hours and overtime pay requirements contained in section 7 of the Act."

29 C.F.R. § 778.1.  The courts therefore give those interpretive bulletins deference when the

interpretation of the statutory language proposed is a reasonable one.  See Aaron v. City of Wichita,

54 F.3d 652, 655 (10th Cir. 1995)(citing the interpretive bulletins as authority); Florez Hernandez

-24-

v. 65 de Infanteria Thom McAn, Inc., 516 F.2d 1293, 1296 (1st Cir. 1975); Scott v. City of New

York, 592 F. Supp. 2d 475, 482 (S.D.N.Y. 2008)(same); Cowan v. Treetop Enters., Inc., 163 F.

Supp. 2d 930, 938 (M.D. Tenn. 2001)(same); Newmark v. Triangle Aluminum Indus., Inc., 277 F.

Supp. 480, 481 (N.D. Ga. 1967)(same). They are not, however, binding. See Batterson v. Francis,

432 U.S. 416, 425 n.9 (1977)("Legislative, or substantive, regulations . . . have the force and effect

of law. . . .   By way of contrast, a court is not required to give effect to an interpretative

regulation.")(internal quotes and alterations omitted).  But see O'Brien v. Town of Agawam, 350

F.3d 279, 287 n.15 (10th Cir. 2003)(noting that 778.114 is an interpretive regulation, but giving it

specific binding effect because it "represents the Secretary of Labor's implementation of the

Supreme Court's holding in Overnight Motor Transp. Co. v. Missell . . . .").

> **1.      Overtime Calculations Under the FLSA.**

This case is primarily concerned with the calculation of overtime wages for employees who

the FLSA covers.[9]  The calculation of overtime under the FLSA is fairly involved.  The general rule

is set forth in section 7(a) of the Act.  See 29 U.S.C. § 207(a)(1).  The Act does not put a limit:

> on the number of hours that an employee may work in any workweek, he may work
> as many hours a week as he and his employer see fit, [but, the employer must pay]
> the required overtime compensation . . . for hours worked in excess of the maximum
> workweek prescribed by section 7(a) [of the Act].

29 C.F.R. § 778.102.  The statute states:

----

[9] The parties appear to assume that the Plaintiffs are all employees that would satisfy the definition of "employee" under the FLSA, see 29 U.S.C. § 203(e), and that the City of Albuquerque constitutes an "employer," see 29 U.S.C. § 203(d).  The Court agrees.  See Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 533-34(1985)("Congress simultaneously brought the States and their subdivisions further within the ambit of the FLSA by extending FLSA coverage to virtually all state and local-government employees."); Acton v. City of Columbia, 436 F.3d 969, 976 & n.8 (8th Cir. 2006) (explaining when and how the FLSA was expanded to include federal and state employers).

> Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than <u>forty</u> hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 7(a)(1)(emphasis added). <u>See</u> 29 U.S.C. § 778.107 ("The general overtime pay standard in section 7(a) requires that overtime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed."). The language of the statute demands that an employee receive one and one-half times the "regular rate" of pay for hours that he works in excess of forty in a given week. <u>Id.</u>

One important principle is that FLSA overtime is based on the number of hours worked in a particular workweek. "The Act does not . . . require . . . that an employee be paid overtime compensation for hours in excess of eight per day, or for work on Saturdays, Sundays, holidays or regular days of rest. If not more than the maximum hours prescribed in the Act are actually worked in the workweek, overtime pursuant to section 7(a) need not be paid." 29 C.F.R. § 778.102. On the other hand, that the FLSA does not require that overtime be paid for those hours does not relieve an employer from paying overtime for them if the contract of employment demands them. <u>See</u> 29 C.F.R. § 778.102. For the purposes of calculating overtime under the FLSA, however, the only concern is whether the total hours worked in a given workweek are above or below the statutory requirement for overtime compensation. <u>See</u> 29 C.F.R. § 778.102.

A second important principle of calculating overtime under the FLSA is that the employee must receive overtime pay at a rate of no less than one and one-half times the "regular rate" for which the employee is employed. This regular-rate concept is of chief importance in this case. <u>See</u> <u>Walling v. Youngerman-Reynolds Hardwood Co.</u>, 325 U.S. 419, 424 (1945)("The keystone of Section 7(a) [of the FLSA] is the regular rate of compensation."). Almost sixty-five years ago, the

Supreme Court described "the regular rate" as "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. at 424. Since that time, Congress has amended the FLSA to include a description of regular rate, see 29 U.S.C. § 207(e)("[T]he 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee," with eight statutory exceptions),[10] and the interpretive bulletins have incorporated the Supreme Court's definition, see 29 C.F.R. § 778.108 ("The Supreme Court has described it as the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed -- an 'actual fact'"). Generally, the exceptions include overtime pay and compensation that is discretionary on the employer's part. See 29 C.F.R. § 779.108.

## 2. Calculating the Regular Rate Without a Regular Workweek.

In Walling v. Youngerman-Reynolds Hardwood Co., the Supreme Court determined the regular rate -- which is always to be calculated as an hourly rate, see Aaron v. City of Wichita, 54 F.3d 652, 655 (10th Cir. 1995); 29 C.F.R. § 778.109 -- for lumber workers that were being paid a certain amount per board-foot of lumber that they "ricked" or "stacked." Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. at 422.[11] The Supreme Court held that, when dealing with "piece

---

[10] To clarify, the FLSA now contains a description of what is included in the regular rate, but still contains no definition precisely setting forth how it is calculated. See Scott v. City of New York, 592 F. Supp. 2d 475, 482 (S.D.N.Y. 2008)("The words 'regular rate' are not defined in the Act.")(quoting Walling v. Helmerich & Payne, Inc., 323 U.S. at 40).

[11] "Stacking" refers to the process of placing one upon another in a somewhat orderly fashion. See The American Heritage Dictionary of the English Language 1749 (3d ed.1992)("2. An orderly pile, especially one arranged in layers."). "Ricking," on the other hand, is the act of creating a more informal pile of something. See id. at 1551 ("A stack of hay, straw, or similar material, especially when covered or thatched for protection from the weather."). The workers in Walling v. Youngerman-Reynolds Hardwood Co. were paid at a lower rate for "ricking" the lumber than for "stacking" it.

work," i.e., work wherein the employee is paid per unit produced, one calculates the regular rate by taking the "quotient of the amount received during the week divided by the number of hours worked." Id. at 424. See id. at 423 (finding the average hourly rate is $0.59/hr). "The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." Id. at 424.

The day before trial, the employer-defendant sought to execute a contract declaring $0.35 per hour to be the "regular rate of pay" for the first forty hours per week. See id. at 422. The Supreme Court was not persuaded:

> [The regular rate] is not an arbitrary label chosen by the parties; it is an actual fact. Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary "regular rate" in the wage contracts.

Id. at 424-25. Thus, the Supreme Court found that the "59-cent figure [was] the average regular rate at which the stackers [were] employed." Id. at 425. It was clear, however, that the regular rate could not be averaged across multiple employees. "The individual regular rate which must be used depends, of course, upon the number of hours worked and the wages received by each stacker during the particular workweek in question." Id.

Since Walling v. Youngerman-Reynolds Hardwood Co., the United States Department of Labor has promulgated an interpretive bulletin regarding how to calculate the "regular rate." That bulletin states, in relevant part:

> The "regular rate" of pay under the Act cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract. The Supreme Court has described it as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed -- an "actual fact." Section 7(e) of the Act requires inclusion in the "regular rate" of "all remuneration for employment paid to, or on behalf of, the employee" except payments specifically excluded by paragraphs (1)

through (7) of that subsection. . . . As stated by the Supreme Court in the [Walling v. ] Youngerman-Reynolds [Hardwood Co.] case cited above: "Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary, 'regular rate' in the wage contracts."

29 C.F.R. § 778.108.  The CFR gives examples of how this number is calculated for an employee that works for an hourly rate of pay.  See 29 C.F.R. § 778.110.  The examples are as follows:

(a)     Earnings at hourly rate exclusively.  If the employee is employed solely on the basis of a single hourly rate, the hourly rate is his "regular rate."  For his overtime work he must be paid, in addition to his straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week.  Thus a $6 hourly rate will bring, for an employee who works 46 hours, a total weekly wage of $294 (46 hours at $6 plus 6 at $3).  In other words, the employee is entitled to be paid an amount equal to $6 an hour for 40 hours and $9 an hour for the 6 hours of overtime, or a total of $294.

(b)     Hourly rate and bonus.  If the employee receives, in addition to his earnings at the hourly rate, a production bonus of $9.20, the regular hourly rate of pay is $6.20 an hour (46 hours at $6 yields $276; the addition of the $9.20 bonus makes a total of $285.20; this total divided by 46 hours yields a rate of $6.20).  The employee is then entitled to be paid a total wage of $303.80 for 46 hours (46 hours at $6.20 plus 6 hours at $3.10, or 40 hours at $6.20 plus 6 hours at $9.30).

29 C.F.R. § 778.110.  As these examples suggest, the "regular rate" is what an hourly employee makes for each hour that he or she works.  If the contract indicates that the worker is to work forty hours per week for a wage of $6.00 per hour, then the regular rate is easily calculated as the regularly paid hourly rate -- $6.00 per hour.  That is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed."  Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. at 424.  When a regular bonus is throw into the mix, the calculation becomes more complicated.  Though the employee is scheduled to work forty hours in the week, and purports to receive $6.00 per hour, the employee receives more than $6.00 per hour when the bonus is considered.

The regular rate is calculated by dividing the amount of compensation received in a regular

workweek by the number of hours that the pay is intended to compensate. The calculation attempts to spread the bonus over the number of hours regularly worked to create an hourly rate that reflects the true value of the employees' work to the employer. As another example, when the employer contracts to pay the employee $15.00 per hour, and requires the employee to work a forty-hour workweek, the employer expects to pay $600.00 for each week of work that the employee gives. At this point, it appears that the employer values the employee's labor at $15.00 for each hour. If the employer then agrees to give the employee a regular weekly "bonus" of an additional $50.00 -- because the employee is particularly skilled, has been particularly loyal, or any other reason -- the employer values a week of the employee's labor at $650.00. The principle behind the "regular rate" is that calculating overtime pay based only upon the $600.00 hourly rate undervalues the employee's overtime labor. The employer is indicating that each hour of the employee's time is worth more than $15.00 or the employer would be content to pay the employee only the $600.00 per week of work. If the employer concludes that it must pay $650.00 for each week of the employee's labor -- $600.00 from hourly wages and the weekly $50.00 bonus -- the employer values one hour of the employee's labor at $16.25 ($650.00 divided by the forty hours in the employee's workweek), and not $15.00. That $16.25 is the "regular rate" for which the employee works, see 29 C.F.R. § 778.110, or the "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed," Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. at 424 (emphasis added). When the employee works more than those forty hours in a given week, therefore, the employer must pay overtime at a rate of one and one-half times the regular rate -- i.e. one and one-half times the value at which the employer holds the employee's work.

<u>**ANALYSIS**</u>[12]

This case involves the interplay between CBAs and the FLSA. The disagreement centers on how the City calculates overtime wages for its employees. The parties' disagreements span the entire process of the overtime calculation. The Court will begin by analyzing the basic calculation of overtime under the FLSA and then discuss the Plaintiffs' contentions that the parties can add additional requirements to the FLSA through their own independent employment contracts.

**I.    THE CITY IS NOT PROPERLY CALCULATING WAGES AND OVERTIME UNDER THE FLSA.**

The parties dispute almost every element in the equation that calculates the wages and overtime of a city employee under the FLSA. The Court finds that, as to some issues, the Plaintiffs have the better argument, and as to others, the City should prevail. The Court will therefore grant in part and deny in part both parties' motions.

**A.    THE REGULAR RATE IS THE HOURLY RATE PAID FOR THE NORMAL, NON-OVERTIME WORKWEEK.**

A large portion of the dispute between the parties centers on the concept of the regular rate. This term is somewhat slippery concept that means very little out of context. Simply stated, the "regular rate" is the baseline from which one calculates overtime pay under the FLSA. The Supreme Court has described the regular rate as "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed," and the "quotient of the amount received during the week divided by the number of hours worked." <u>Walling v. Youngerman-Reynolds Hardwood Co.</u>, 325 U.S. at 424. "The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive

_____

[12] Because the Plaintiffs' claims arise under a federal statute, the Court has jurisdiction under 28 U.S.C. § 1331.

of overtime payments."  Id. at 424.

The "regular rate" is a concept born of statutory language.  Section 207 of Title 29 of the United States Code defines the minimum overtime that an employer must pay its employee by reference to the "the regular rate at which he is employed."  E.g., 29 U.S.C. § 207(a)(1).  The Court begins by looking at the plain language of the statute, including the meaning and context of the words used.  See United States v. Albert Inv. Co., No. 08-6267, 2009 WL 3739424, at *7 (10th Cir. Nov. 10, 2009)("As we always do in cases requiring statutory construction, we begin with the plain language of the law.")(quoting United Keetoowah Band of Cherokee Indians of Okla. v. U.S. Dep't of Hous. & Urban Dev., 567 F.3d 1235, 1241 (10th Cir. 2009)).  The statute does not, however, provide a definition of the term that answers the questions presented, see 29 U.S.C. § 207(e)("[T]he 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee [with several exceptions]."), and the Supreme Court and the United States Court of Appeals for the Tenth Circuit have spoken as to its meaning. The Court will thus not attempt to construe the meaning of the term from the statute alone. Nevertheless, the Court must be mindful to arrive at an interpretation that is consistent with the plain language and structure of the FLSA.

**B.    THE DIVISOR DILEMMA: REGULAR RATE IS CALCULATED BY DIVIDING TOTAL REMUNERATION -- MINUS CERTAIN EXCLUSIONS -- BY THE NUMBER OF HOURS IN THE ORDINARY WORKWEEK.**

The Plaintiffs insist that the City improperly uses the number of hours actually worked during the workweek as the denominator/divisor in the equation for "regular rate."  Plaintiffs' Motion at 4, 5-9; Plaintiffs' Response at 8-12.  They argue that the proper divisor is always forty -- the number of hours in an ordinary workweek under the CBA  -- and that, because the divisor is

-32-

being overrepresented, the regular rate and total overtime compensation is being underrepresented.[13]
<u>See</u> Plaintiffs' Response at 8-12; Plaintiffs' Motion at 4, 5-9.  The City firmly defends its position
and argues that the proper divisor in the regular-rate equation is the total number of hours worked
when the employee works on an hourly basis.  <u>See</u> City's Response at 2-7, City's Memo. at 12-15.
The Court concludes that the appropriate divisor is the number of hours in the normal workweek as
specified in the CBAs.

> ### 1.    Dividing Compensation by the Total Hours Worked Leads to a Problem of Diminishing Add-On Pay.

Where there is no add-on compensation, including overtime hours in the divisor does not
cause underrepresentation of the regular rate if one also includes straight-time compensation for
those overtime hours in calculating the dividend of total compensation.  For example, if the
employee receives $15.00 per hour and has a contract to work a forty-hour workweek, the employee
generally takes home $600.00 per week.  Those circumstances would, unsurprisingly, result in a
"regular rate" of $15.00 per hour.[14]  If, however, the employee works a forty-six hour week, the
employer might divide $600.00 by forty-six, instead of forty, yielding a "regular rate" of $13.04.
This calculation underrepresents the regular rate by approximately $2.00.  If the employer includes
straight-time compensation for the additional six hours, yielding a total compensation of $690.00,

---

[13] The larger the divisor is in a quotient, the smaller the value of the quotient, assuming the
dividend remains the same.  For example, if the dividend -- representing total compensation -- is
$600.00, and the divisor -- representing the hours worked -- is 40, the quotient -- representing the
regular rate -- is $15.00.  If the dividend is $600.00, but the divisor is 46 (perhaps representing forty
straight-time hours and six overtime hours), the quotient is $13.04.

[14] $600.00 (total compensation) $\div$ 40 (hours in the workweek) = $15.00 (regular rate).

however, the regular rate once again becomes $15.00.[15]

If the employer gives the employee add-ons for special skills, such as fire-certification bonuses; for loyalty, such as longevity or superlongevity bonuses; or for undesirable work conditions, such as hazard pay or shift differential pay, the math becomes more complex. The problem is that the benefit of the bonus diminishes if the Court uses the calculation that the interpretive bulletins suggest. In fact, the more hours of overtime the employee works, the less benefit he receives from his bonus per hour. A series of examples should demonstrate this phenomenon. The Court will use the same hypothetical facts as above.

Assuming that an employee receives $15.00 per hour and has a contract under which he is to work forty hours per week, and assuming as well that the employer gives the employee a weekly $50.00 bonus for taking on a position of unique responsibility, this payment results in $650.00 of weekly compensation and, in the ordinary week, a forty-hour workweek. This calculation results in a regular rate of $16.25. Without considering any additional hours in this equation, the overtime rate must be at least one and one-half times the regular rate -- $24.38.[16] Under the City's calculation, however, this result will vary depending upon how many hours of overtime the employee works.

Under the City's methodology, if the employee works forty-five hours in one week, the employee would receive regular pay of $725.00.[17] These values would result in a regular rate of

---

[15] $15.00 (hourly rate) x 46 (hours in the workweek) = $690.00 (total compensation). $690.00 (total compensation) ÷ 46 (hours in the workweek) = $15.00 (regular rate).

[16] $16.25 x 1.5 = $24.375, rounded up to $24.38.

[17] $15.00 (hourly rate) x 45 (hours in the workweek) + $50.00 (weekly bonus) = $725.00.

-34-

$16.11, fourteen cents per hour less than the "regular rate" before any overtime had been worked.[18] And, under the City's overtime calculation, the City would then pay the employee $40.28 in overtime pay, for a grand total of $765.28.[19]  And, if the employee works fifty hours in one week, the employee will receive regular pay of $800.00.[20]  Now, when the employee works a fifty-hour week, the "regular rate" is $16.00, another eleven cents per hour less than the regular rate during a forty-five-hour week.[21]  This mathematical result logically follows when one considers that the effect of dividing by the total hours worked is to spread the weekly bonus over an increasingly large number of hours.[22]  The result does not, however, logically follow from the policies underlying the FLSA or the reasons for which an employer would give an employee a regular bonus.  For instance, if the employer thinks a forty-hour week of the employee's time is worth an additional $40.00 in the form of a longevity bonus,[23]  it seems logical to assume that the employer values the employee's superior experience in the employee's position enough to make each hour of the employee's worktime worth an additional $1.00 over the base rate of pay.

On the other hand, if the divisor and dividend in the regular-rate calculation remain

---

[18] $725.00 (total compensation) ÷ 45 (hours in the workweek) = $16.11.

[19] $16.11 (overtime compensation) x 5 (hours of overtime) x 0.5 = $40.28.

[20] $15.00 (hourly rate) x 50 (hours in the workweek) + $50.00 (weekly bonus) = $800.00.

[21] $800 (total compensation) ÷ 50 (hours in the workweek) = $16.00.

[22] The regular rate will continue to diminish as the employee works more overtime hours until it is more or less equivalent to the regular rate absent any regular weekly bonus.  For instance, if the employee were to work 100 hours, the employee would receive regular compensation of $1,550.00 ($15.00 x 100 hours + $50.00).  The regular rate would be $15.50 ($1,550.00 ÷ 100 hours worked). If the employee somehow worked all 168 hours of the week, the regular rate would drop to $15.30.

[23] The sums that the Court has chosen for its examples are fictitious.  There is no evidence that a longevity bonus is generally $40 per week.

consistent, the regular rate remains consistent, and the overtime rate follows in suit.  The employee's regular rate would be $16.25 no matter how many hours of overtime the employee worked.  If the purpose of the inclusion of regular bonuses in the employee's regular rate is to reflect the higher value of the employee's work to the employer, it does not make sense for the monetary representation of that increased value to diminish as the employee gives the employer more of that highly valued labor.

Furthermore, making overtime by certain higher-skilled employees cheaper and cheaper the more they work does not appear to further the FLSA's twin aims.  Making overtime cheaper would decrease the incentive to spread jobs across more employees, promote burdening a smaller number of employees with longer hours, and decrease the additional compensation that the FLSA mandates must be paid to the employees for the wear-and-tear caused by excessively long hours at work.  See Walling v. Helmerich & Payne, Inc., 323 U.S. at 39.  As the Honorable Shira Scheindlin, United States District Judge for the Southern District of New York, has noted, calculating the regular rate based on the number of hours expected to be worked under the employment contract

> is the most logical outcome based on the purpose of the longevity payments at issue. Where longevity payments [or other, similar payments] are characterized as an addition to an employee's base salary -- as the CBAs clearly note -- those payments reflect the greater value of an experienced employee's labor.  Where an employee's compensation is based on the hours he or she works, the value of that experience is received by the employer for every hour that the employee works.  It is counterintuitive for longevity pay -- as a component of the regular rate -- to decrease when an experienced employee volunteers or is ordered to work more hours than a regularly scheduled work period.

Scott v. City of New York, 592 F. Supp. 2d at 488.  The Court agrees.

## 2. Use of the Hours in the Regular Workweek as the Divisor Better Tracks the Supreme Court's Definition of Regular Rate.

The use of the number of hours in a regular workweek as the divisor (and the amount of

compensation received for those non-overtime hours as the dividend), also simplifies the calculation

of overtime and ensures a calculation that more closely follows the FLSA's language.  The

calculation will be simplified because the hourly overtime rate can be determined once and used

consistently each and every week until something about the employee's employment contract

changes.  For example, the employee working forty-five hours per week, making $15.00 per hour,

receiving a weekly $50.00 bonus, and contracted for forty-hour workweeks, will receive base pay

of $650.00.[24]  The regular rate will always be $16.25, until the employee's contractual hours or pay

change, or the employee receives different regular bonuses.[25]  He or she will then receive $121.88

in overtime pay.[26]  And, as the Plaintiffs argued, "[s]urely the term 'regular rate' implies that it is

to be the same, or 'regular,' rather than fluctuating each week."  Plaintiffs' Motion at 14.  While the

Court will not hold that a regular rate must be set in stone, it does seem unusual that, for all hourly

rate employees, even those with a fixed-length workweek, the "regular rate" will fluctuate from

week to week based on how many hours the employee works.  Such a rate would not qualify as

"regular" in the most common sense of the word.[27]

The Court recognizes that <u>Walling v. Youngerman-Reynolds Hardwood Co.</u> appears

ambiguous on how to properly calculate the regular rate for an employee paid on an hourly basis.

The most oft-cited phrase of the opinion refers to the regular rate as: "the hourly rate actually paid

---

[24]  $15.00 (hourly rate) x 40 (hours in a <u>regular</u> workweek) + $50.00 (weekly bonus) = $650.00.

[25]  $650.00 (total compensation) ÷ 40 (hours in the regular workweek) = $16.25 (regular rate).

[26]  $16.25 (regular rate) x 5 (hours of overtime worked) x 1.5 (FLSA multiplier) = $121.875.

[27]  <u>The American Heritage Dictionary of the English Language</u> 1521 (defining "regular" as "1. Customary, usual, or normal: *the train's regular schedule.*").

-37-

the employee for the normal, non-overtime workweek for which he is employed." 325 U.S. at 424. This passage implies that, to calculate the regular rate, one takes the amount of compensation received in an ordinary week and divides that by the amount of hours that the employee is expected to work in an ordinary workweek. See id. at 424 ("The regular rate . . . must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments."). On the other hand, the opinion also contains language indicating that one takes all compensation received during the week, divided by the total number of hours worked in that week, arriving at a different "regular rate" each week. See id. at 425 ("The individual regular rate which must be used depends . . . upon the number of hours worked and the wages received by each stacker during the particular workweek in question."); id. at 424 (referring to the regular rate as the "quotient of the amount received during the week divided by the number of hours worked.").

The Court believes that any inconsistency in the Supreme Court's language can be resolved by looking to the facts of the case. In Walling v. Youngerman-Reynolds Hardwood Co., the Supreme Court was attempting to determine the "regular rate" for employees who (i) did not receive wages based on time worked; and (ii) did not have an employment contract that set forth an hourly rate, let alone a "regular rate" indicative of what actually occurred between the employer and employee, nor how many hours per week the employees were to work in a regular workweek. See id. at 423 ("[T]he stackers were paid piece rates of 60 cents per thousand board feet ricked and 70 cents per thousand board feet stacked."); id. at 425 ("The 35-cent per hour 'regular rate' fixed by the contracts is obviously an artificial one.").

Without an hourly rate at which the employees were paid, nor a number of hours in the "normal, non-overtime workweek," the Supreme Court had to reconstruct almost every element of the "regular rate" equation. The interpretive bulletins in the CFR also demonstrate that the regular-

rate calculation is different for a piece worker than for an hourly employee. Compare 29 C.F.R. § 778.110 (giving examples of calculation for hourly employees) with 29 C.F.R. § 778.111 (giving examples of calculation for piece work). In that context, the "normal, non-overtime workweek" included all hours worked, because there was no contractual point at which hours became overtime hours under the contract of employment. Furthermore, the hourly rate for those hours included all pay, not including overtime pay, that was meant to compensate those hours. It appears, therefore, that the rule of Walling v. Youngerman-Reynolds Hardwood Co. is that, when a court has no information about the contract of employment, the regular rate should be calculated by taking all compensation earned during that week and dividing it by the number of hours worked during that week. Then, the court should compensate the worker an additional one-half of the regular rate per hour of work in excess of forty in that week. See id. at 426 (discussing "the burden of a 50% premium for the hours [of overtime] worked.").

The Court in this case is faced with a different scenario. The Plaintiffs in this case receive a set hourly wage, but also have a set number of hours which they are to work each week. The combination of the two results in a situation wherein it is relatively easy to calculate the amount of pay actually received during the normal, non-overtime workweek. The Court believes that this straightforward approach is the proper way to calculate the regular rate in this case. This construction is consistent with both the FLSA's structure and intent, and the Supreme Court's oft-stated regular-rate principles.

> **3.  If the Employee Has a Fixed Workweek, Total Compensation Should Exclude Overtime Compensation.**

The City relies on authority that calculates a regular rate for someone other than an hourly rate employee or that calculates an hourly rate employee's regular rate when there is no "normal,

non-overtime workweek" under his employment contract. First, the City relies substantially on 29 C.F.R. § 778.109 for the proposition that the appropriate divisor for the regular rate calculation is the total hours worked. Section 778.109. however, is discussing how to arrive at a regular rate -- which must be an hourly rate -- for an employee that works under an employment scheme other than an hourly rate of pay. The interpretive bulletin says, in relevant part:

> The "regular rate" under the Act is a rate per hour. The Act does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission, or other basis, but in such case the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek, with certain statutory exceptions discussed in §§ 778.400 through 778.421. The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid. The following sections give some examples of the proper method of determining the regular rate of pay in particular instances: (The maximum hours standard used in these examples is 40 hours in a workweek).

29 C.F.R. § 778.109 (emphasis added). The Court believes that the sentence that the City quoted, that "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation is paid," must be read in the context in which it appears. That context is a discussion of how to calculate a regular rate when an employee works under a compensation scheme other than pay-per-hour -- piece-rate, salary, commission, or other basis.

Moreover, the Court is not convinced that this passage states that the divisor must be the absolute total number of hours worked by the employee during the week in question. The phrase, "the total number of hours actually worked by him in that workweek for which such compensation was paid," does not mean all hours worked. It means all hours worked "for which such

compensation was paid." In the context of a salaried employee, generally the compensation paid during the ordinary, non-overtime workweek will be for a set number of hours defined in the contract of employment, and those are the hours "for which such compensation was paid." E.g., Aaron v. City of Wichita, 54 F.3d 652, 657 (10th Cir. 1995)(holding the base salary in the CBAs was intended to cover a 112-hour pay period, making a divisor of 112 appropriate).

Also, when referring to "such compensation," the drafters were clearly referring to the "total remuneration for employment (with statutory exclusions)." 29 C.F.R. § 778.109 (emphasis added). One important exclusion from the total remuneration referenced is contractual overtime. See 29 U.S.C. §§ 207(c)(5), (6), (7); 29 C.F.R. § 778.201; Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. at 424; Zumerling v. Devine, 769 F.2d 745, 751 (Fed. Cir. 1985)("Among such excluded pay is that received for certain hours worked in excess of normal working hours."). It is not completely clear whether it is overtime pay, wages given to compensate for hours worked beyond the ordinary workweek, or overtime "premiums," the amount above and beyond the base amount of compensation that a worker receives for working overtime, that must be excluded from total compensation. If all overtime pay is excluded from the total remuneration, the "total number of hours actually worked . . . for which such compensation was paid" would be hours in the ordinary, non-overtime workweek. Conversely, if the exception for overtime were construed as excepting overtime "premiums" from the total compensation calculation, to maintain the proper ratio between hours of compensation and hours worked, the divisor must reflect all hours worked.

Both interpretations of the "overtime exclusion" seem reasonable, but one allows the Court to calculate the regular rate in conformity with the Supreme Court's repeated definition of regular rate as "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. at 424. See

-41-

Bay Ridge Op. Co. v. Aaron, 334 U.S. 446, 461 (1948)("We have said that the words 'regular rate' obviously mean the hourly rate actually paid for the normal, non-overtime workweek.")(internal quotations omitted); 149 Madison Ave. Corp. v. Asselta, 331 U.S. at 204 ("We have held that the words 'regular rate,' while not expressly defined in the statute, mean the hourly rate actually paid for the normal, non-overtime workweek")(internal alterations omitted); United States v. Rosenwasser, 323 U.S. 360, 363-64 (1945) ("Section 7(a) refers to a 'regular rate' which we have defined to mean the hourly rate actually paid for the normal, non-overtime workweek[.]")(internal quotations omitted); Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 40 (1944)("While the words 'regular rate' are not defined in the Act, they obviously mean the hourly rate actually paid for the normal, non-overtime workweek."). See also Aaron v. City of Wichita, 54 F.3d at 655 ("The regular rate is the hourly rate actually paid to the employee for the normal, non-overtime work week for which he is employed."); Crenshaw v. Quarles Drilling Corp., 798 F.2d 1345, 1348 (10th Cir. 1986) ("The Supreme Court has interpreted 'regular rate' of pay to mean the hourly rate actually paid for the normal, non-overtime workweek.")(internal quotations omitted); 29 C.F.R. § 778.108 ("The Supreme Court has described [the regular rate] as the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed -- an 'actual fact.'").  An employee who works forty hour each week, and receives $15.00 per hour and a bonus of $50.00 per week, is "actually paid" $650.00 each week -- $16.25 per hour -- during the "normal, non-overtime workweek for which he is employed."  That fact -- that the employee is paid $16.25 per hour -- does not change if the employee one week works forty-five hours rather than forty.  An employee who is contracted to work forty hours per week works forty hours during the "normal, non-overtime workweek for which he is employed."

### 4.    The Plaintiffs have a Defined Workweek, and that Workweek Should Be Used to Calculate the Regular Rate.

The remainder of the City's authority is distinguishable from the City's employment arrangement with the Plaintiffs because, in the authority cited, there is no reference to the number of hours that the employee has contracted to work under an employment agreement. In this case, however, the Plaintiffs -- other than the firefighters -- have agreed to work a regular, forty-hour workweek. The Court finds this distinction highly relevant because, in the absence of an employment agreement, there is no reasoned way to determine "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed," Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. at 424; Aaron v. City of Wichita, 54 F.3d at 655, because there is no normal, non-overtime workweek. Once the employer and employee have agreed to what the normal, non-overtime workweek will entail, however, this definition becomes extremely apt. In this case, the City has entered into contracts with the Plaintiffs that state that the normal, non-overtime workweek will consist of forty hours of work. Therefore, the regular rate for the City's employees is calculated based on the number of hours in the non-overtime workweek -- namely, forty.

The most recent Tenth Circuit FLSA case appears to supports this construction. In Aaron v. City of Wichita, 54 F.3d 652 (10th Cir. 1995), firefighters in the city of Wichita, Kansas sued the city under the FLSA. See id. at 653. The firefighters alleged that the City of Wichita underpaid them by improperly calculating the "regular rate" used to compute overtime wages under the Act. Id. at 654. The relevant argument made by the firefighters was that the city "disregarded controlling regular rate principles by designating an artificial hourly rate of pay derived by dividing the plaintiffs' salaries by an overstated divisor." Id.

-43-

The Tenth Circuit began its analysis with the controlling principle: "The regular rate is the hourly rate actually paid to the employee for the normal, non-overtime work week for which he is employed."  Id. at 655 (citing 149 Madison Ave. Corp. v. Asselta, 331 U.S. 199, 203 (1947) modified by 331 U.S. 795 (1947), and Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 40 (1944)). In Aaron v. City of Wichita, the firefighters were compensated based on the number of hours worked, but through some provisions of the CBAs under which they operated, the pay was based on a "base salary."  54 F.3d at 655.[28]  The dispute centered on how many hours that "base salary" was intended to compensate -- i.e., what is the divisor in the regular rate equation?  Id.  The firefighters insisted that the wage was intended to compensate for the standard, forty-hour workweek; the City of Wichita insisted that the pay was intended to compensate for the full 112 hours specified in the contract, even though that would include some hours that were designated as "overtime."  Id.

The district court in Aaron v. City of Wichita concluded that the calculation of regular rate could not take into account overtime hours and that a regular rate should be calculated using a divisor of forty -- the number of hours in a normal workweek under the FLSA.  See 54 F.3d at 655. The Tenth Circuit disagreed, finding that conclusion inconsistent with the CFR's regulations.  The Tenth Circuit appeared to draw a distinction between hours worked in a given week over forty and hours worked in a given week over the number that the contract of employment contemplated:

> If an employee whose maximum hours standard is 40 was hired at a fixed salary of
> $275 for 55 hours of work, he was entitled to a statutory overtime premium for the

_____

[28] The CBAs under which the firefighters were employed apparently contained pay schedules in the form of both a bi-weekly salary and an hourly rate, making Aaron v. City of Wichita something of a hybrid. The Court finds this case to be similar to Aaron v. City of Wichita, as the employees worked for an hourly rate but had a fixed number of hours in the regular workweek, creating something like a de facto salary.

15 hours in excess of 40 at the rate of $2.50 per hour (half-time) in addition to the statutory overtime pay of $7.50 per hour (time and one-half) for any hours worked in excess of 55.

54 F.3d at 655.  The Tenth Circuit found:

If a designated base salary is intended to cover overtime hours as well as non-overtime hours, it is necessary to divide the salary by the total hours and not just the non-overtime hours because a failure to do so will result in a rate that is not representative of the rate actually paid for the 'normal, non-overtime workweek.'

Id. at 656 (quoting 149 Madison Ave. Corp. v. Asselta, 331 U.S. at 203).  See id. at 657 ("If the parties intended a salary to cover overtime hours, the regular rate cannot be inflated by subtracting those hours from the number of hours divided into the salary.").  While the Tenth Circuit referred to the compensation as a salary, as the Court has pointed out, the CBAs designated both a salary and a fixed hourly rate.  See id. at 655.

## 5. When the Employment Contract Specifies Hours in a Regular Workweek, The Case Shares Some Aspects with Salary Cases.

The Honorable Judith C. Herrera, United States District Judge for the District of New Mexico, issued an opinion dealing with this issue, in a case with almost identical facts.  See Chavez v. City of Albuquerque, No. CIV 02-0562, Memorandum Opinion and Order, filed August 10, 2007 (Doc. 250)("Chavez MSJ MOO").  In that case, different employees sued the City of Albuquerque for violating the FLSA by improperly calculating overtime wages.  In her opinion, Judge Herrera was faced with the issue whether the appropriate divisor in the calculation of the regular rate of employment under the FLSA should be the number of hours worked by the employee or the number of hours designated as a regular workweek under the employees' CBAs.  See Chavez MSJ MOO at 16-19.  Judge Herrera found that, although the employees had substantial authority for the proposition that the regular-rate divisor is the number of hours in an ordinary workweek -- generally forty -- all of the cases cited by the employees dealt with salary employment contracts and not with

hourly wage employment contracts.  See Chavez MSJ MOO at 18-19.  Judge Herrera determined

that this distinction between her case and the salary cases cited rendered those cases inapposite, and

therefore she did not consider them.  See id. at 19.  While the Court agrees with Judge Herrera as

a general proposition, it believes that the facts of this case put it within a category of cases as to

which these salary-overtime cases are relevant and persuasive.

In the ordinary hourly-wage case, where an employment contract specifies nothing about the

work relationship except that the employer will pay the employee a certain sum per hour worked,

the distinction between a salaried employee and an hourly employee is material.  In an ordinary

hourly case, there is no regular, non-overtime workweek from which one might otherwise calculate

a regular rate.  Under those circumstances, in the absence of an agreement to the contrary, the total

number of hours worked is the number of hours in the workweek.  Most of the City's authority --

and all of its binding authority -- declaring that the regular-rate divisor in an hourly-wage case is the

total number of hours worked that week lack a set-length workweek.  See Overnight Motor Transp.

Co. v. Missel, 316 U.S. 572, 574-75 (1942)(employee was paid a lump sum per week for a job that

"involved wide fluctuations in the time required to complete his duties"); 29 C.F.R. § 778.109

(discussing how to calculate an hourly regular rate for an employee under a non-hourly pay

arrangement); 29 C.F.R. § 778.110(b)(giving an example of calculating the regular rate for an hourly

rate employee with no pre-set workweek); U.S. Dep't of Labor Op. Ltr., 1988 DOL WH LEXIS 25

(Sept. 6, 1988).[29]  In such a case, the proper divisor is the number of hours worked.

---

[29] The Supreme Court's decision in Bay Ridge Operating Co. v. Aaron, 334 U.S. at 459-60,
also makes the general statement that "the rule for determining the regular rate of pay is to divide
the wages actually paid by the hours actually worked in any workweek."  And, in Bay Ridge
Operating Co. v. Aaron, the employees were working under a contract that set a fixed-length,
standard workweek of forty-four hours.  See id. at 451.  The Supreme Court was faced, however,
with a different problem: the employees' rate of pay changed based on which hours of the day the

On the other hand, when the employee is paid a fixed salary for a number of hours worked in a specified period of time, the words of the Supreme Court ring loudly that the regular rate is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. at 424. The contract designating fixed salary and hours per pay period makes application of this definition conceptually simple -- there is a normal, non-overtime workweek and there is a total amount paid for that period of time. The calculation of a regular rate is simple division, and the court can be confident that the amount of money paid was intended to compensate that number of hours specified in the contract.

In this case, the Court finds itself somewhere in the middle. The wages are paid hourly, but the employee is required to work a certain number of hours each week. This situation results in a contract that designates a specific pay period, and a certain amount of pay that the employee will receive for working that pay period. In other words, the employee is a de facto salary employee. Granted, calculating the regular rate requires more arithmetic, but, if the employee is to be paid $6.00 per hour and is to work forty hours each week, the employee is essentially salaried at $240.00 per week or approximately $960.00 per month.[30] More importantly, there is now a normal, non-

employee worked. See id. Much like the case where there is no set number of hours per week, if there is no set hourly wage, the employee's average hourly rate can be determined only by dividing the total compensation by the total number of hours worked. The Supreme Court mentioned that one of its concerns, in that case, with rejecting a divisor of forty was that the employee may work hours which are compensated at a higher rate after he had already worked forty hours that week, and that, in such a case, the higher-paid hours would not be represented in the employee's regular rate. See id. at 471 n.29. The Court understands such a problem when the employee is paid at a different rate depending on which hours of the day he works. Under the CBAs in this case, however, the hourly rate is the same for all hours in the day, and the City compensates less desirable working times by a shift differential pay add-on, and not by unique hourly rates for those undesirable hours. The Court does not believe that Bay Ridge Operating Co. v. Aaron is representative of the Supreme Court's method of calculating the regular rate in hourly-salary-hybrid cases such as this.

[30] $6.00 x 40 (hours) = $240.00; $240.00 x 4 (approximate weeks per month) = $960.00.

overtime workweek from which the Court can calculate an intended regular rate. For all of these reasons, the Court finds that the appropriate divisor in the regular-rate calculation in this case is the number of hours in the workweek as specified under the CBA, as the Tenth Circuit reasoned in Aaron v. City of Wichita. The Court will therefore grant summary judgment for the Plaintiffs on this issue.

While the Court shares Judge Herrera's concern that its calculation of overtime might result in holding the employer liable for more in bonus payment than it may have intended, see Chavez MSJ MOO at 21-23, the Court believes that increases in pay is a natural result of agreeing in advance to what becomes a frequent and regular payment: the bonus or add-on becomes expected payment. When such an employee works overtime, it is not unreasonable to pay the employee based on what the employee routinely receives. Nor is such a result against public policy. The purpose of the bonus or add-on compensation is to represent the added value of the employee's work to the employer. One of the FLSA's purposes was to give the employer a monetary incentive to distribute work over a larger pool of employees. See Walling v. Helmerich & Payne, Inc., 323 U.S. at 39. Requiring employers to compute overtime pay based on base rate plus add-ons does not appear to be at odds with that policy. It would require the employer to pay more for each hour of his employee's work, which is consistent with the purpose of the add-on pay: to represent the increased value of each hour of that employee's work.[31]  The Court also recognizes that there are other cases

---

[31] The Court is, however, referring specifically to bonuses and add-on compensation that are regularly paid and non-discretionary, such as those described in the stipulated facts. See Stipulated Facts 42-52, at 12-14. Only the add-on compensation and bonuses that are received regularly by the employee, regardless of the number of hours that he works in a given week, are properly included in the de facto salary that the CBAs create. Such payments would be included within the regular rate because they are "payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. at 424. If the bonuses and add-ons, as given, are intended to be a increase to the pay

that do not draw a distinction between an hourly worker and an hourly worker that has a contractually fixed workweek.  See Zumerling v. Devine, 769 F.2d at 751 ("The regular rate is then determined by dividing the total remuneration by the total hours worked, generally the tour of duty during the work period.")(emphasis added); Saunders v. City of New York, 594 F. Supp. 2d 346, 358 (S.D.N.Y. 2008)(although regular workweek was between thirty-five and forty hours under the employment contract, holding proper divisor is the total hours worked).  The Court, however, finds that such a distinction is material.

Judge Herrera also relied on an interpretive bulletin -- 29 C.F.R. § 778.209 -- in concluding that the proper divisor in the regular-rate calculation was the total number of hours worked.  That provision states, in relevant part:

> Where a bonus payment is considered a part of the regular rate at which an employee is employed, it must be included in computing his regular hourly rate of pay and overtime compensation. No difficulty arises in computing overtime compensation if the bonus covers only one weekly pay period. The amount of the bonus is merely added to the other earnings of the employee (except statutory exclusions) and the total divided by *total hours worked*.

29 C.F.R. § 778.209 (emphasis added).  Judge Herrera believed that this bulletin was the Department of Labor's implicit approval of an inverse relationship between the number of overtime hours worked and the regular rate when an employee receives regular add-ons.  See Chavez MSJ MOO at 26-27.  The Court respectfully disagrees.  Rather, the Court is persuaded by the analysis of the same issue in a nearly identical case by Judge Scheindlin.

In Scott v. City of New York, Judge Scheindlin considered whether the City of New York properly calculated overtime under the FLSA for New York Police Department officers.

---

received for forty hours of work, it seems reasonable that additional hours worked would receive a corresponding pay increase.

-49-

Specifically, she considered "whether the [regular] rate is based on compensation for an officer's regular work schedule or whether it must be determined based on all hours an officer has worked, including overtime." 592 F. Supp. 2d at 487. After laying out the Supreme Court's regular rate principles, Judge Scheindlin addressed the defendants' argument that the most on-point FLSA regulation -- 29 C.F.R. § 778.209 -- did not echo the Supreme Court's language that the regular rate be based on the "normal, non-overtime workweek." Scott v. City of New York, 592 F. Supp. 2d at 487. "It is unclear whether the regulation refers to total non-overtime hours worked or the total hours worked including overtime." Id. She concluded:

> "The proper scope of [a regulation] is derived not from reading it in isolation, but from a careful consideration of the complete regulatory scheme . . . against the backdrop of its policies and objectives." Thus any ambiguity in section 778.209 should be resolved to yield a single consistent understanding of the regular rate throughout the DoL FLSA regulations. The basic regulation unambiguously defines the regular rate as "the hourly rate actually paid for the normal, non[-]overtime workweek." Therefore the ambiguous term "total hours worked" denotes the total number of hours worked in the regular workweek.
>
> * * * *
>
> [P]laintiffs properly calculated the regular rate by basing their computations solely on work performed during the regular work period.

Id. (citations omitted) The Court likewise sees an inconsistency between the Supreme Court's expressed interpretation of the regular rate and 29 C.F.R. § 778.209. The Court finds that Judge Scheindlin's interpretation of § 778.209 -- that "total hours worked" denotes the total hours worked in the regular, non-overtime workweek -- is more consistent with the FLSA's plain language and structure, Congress's goals, and the Supreme Court's prior interpretations of the term "regular rate."

### B.    WHILE A ONE-AND-ONE-HALF MULTIPLIER MAKES CALCULATING OVERTIME EASIER, THERE IS NOTHING INHERENTLY WRONG WITH USING A ONE-HALF MULTIPLIER.

The next issue raised by the Plaintiffs is that the City improperly employs a multiplier of 0.5

when calculating overtime rather than 1.5, as the statute requires.  See Plaintiffs' Motion at 4, 9-11;

Plaintiffs' Response at 12.  The City insists that its method of calculation correctly uses a multiplier

of 0.5 to calculate overtime under the FLSA because, by the time it calculates overtime, it has

already compensated the employee "straight time" for the overtime hours worked.  See City's

Response at 2-7; City's Memo. at 12-15.  The City argues that using the Plaintiffs' multiplier of 1.5

would result in overcompensation because the City uses a formula for regular rate that involves

multiplying the total hours worked -- including hours designated as overtime by both the CBAs and

the FLSA – by the employee's hourly rate under the CBA.  At that point, assuming the employee

receives compensation in the amount of the hourly rate multiplied by all hours worked, giving the

employee another 1.5 times his regular rate would result in the employee receiving approximately

2.5 times his base hourly rate as overtime compensation.

        The Court believes that the City's argument may misconstrue the Plaintiffs' objections.  To

the extent, if any, that the Plaintiffs assert that the Plaintiffs should receive their base rate of pay for

overtime hours and then receive an underlined additional 1.5 times the regular rate as overtime compensation,

the Court disagrees with the Plaintiffs' position.  The Court, however, believes that the Plaintiffs'

argument is more nuanced.  It appears that the Plaintiffs are arguing that the City's process of

compensating its employees for overtime hours at their base rate of pay plus any add-on pay, and

then adding to that amount 0.5 times the employee's "regular rate," undercompensates the

employees.  Plaintiffs' Response at 12 ("Plaintiffs actually contend that the City should first

calculate a 'regular rate' for employees' normal 40-hour work week, and then pay time-and-a-half

that regular rate of pay for each hour of overtime pay.").

        The Plaintiffs' concerns are tied to the divisor dilemma discussed above.  To recap, the City

has argued that it calculates overtime under the FLSA by first calculating the employee's pay for

the week -- hours worked multiplied by hourly rate, plus any applicable add-ons ("week's pay").

The City then determines the regular rate by dividing the week's pay by the total hours worked that

week. Once it has calculated this supposed regular rate, the City multiplies its regular rate by the

number of hours worked over forty, and multiplies that by 0.5 to determine the overtime premium.

See Stipulated Facts 61, 62, at 16; Chavez MSJ MOO at 3-4 (explaining the court's finding

regarding how the City calculates overtime compensation); Declaration of Laurice Chappell in

Support of Defendant's Motion for Summary Judgment ¶¶ 3, at 1 (testifying that the City's method

of computing overtime compensation is the same as it was at the time of the Chavez v. City of

Albuquerque case); id. ¶ 6, at 2 (further describing the method of calculating overtime premium by

dividing the add-on pay by the total hours worked in the workweek).[32]  The City justifies this

formula by insisting that compensating the employee for one hour at the employee's base rate and

compensating the employee for 0.5 hours at the regular rate is equivalent to paying the employee

1.5 times the regular rate.  The City's formula, however, erroneously spreads the add-on

compensation over the number of hours that the employee works rather than over the number of

hours in the normal, non-overtime workweek.

        If the appropriate divisor for calculating the regular rate of employment was the total number

of hours worked in the workweek, the City's proposed equation and the Plaintiffs' proposed

_____

        [32] It is unclear from the stipulated facts listed in this opinion precisely how the City calculates
its overtime premiums under the FLSA.  Specifically, the Court was initially under the impression
that the City calculated FLSA compensation by multiplying all hours worked by the employee's base
pay rate and then adding to that 0.5 times the regular rate.  Given that the regular rate will often
be greater than the base rate, the Court was concerned that compensating overtime hours at 1.0 times
the base rate and then 0.5 times the regular rate would result in undercompensation in the amount
of the hourly difference between the base rate and regular rate.  Based on Judge Herrera's detailed
description and Ms. Chappell's declaration, however, the Court finds that the City calculates
overtime pay as described above.

equation would yield the same result. The employee who worked for $15.00 per hour, receives a $50.00 weekly add-on, and works forty-six hours in a given week, would receive straight-time pay of $740.00.[33] The employee would also have a regular rate of $16.09.[34] At this point, the same result is reached if the City adds six more hours of pay at $8.05,[35] or if the City pays the employee for forty hours at the $16.09 regular rate and then pays the employee six hours at $24.14.[36] Forty hours at a rate of $16.09 per hour plus six hours at $24.14 is $788.44.[37] And forty-six hours at a rate of $16.09 per hour plus six hours of additional overtime compensation at $8.05 is also $788.44.[38] This is the conclusion that Judge Herrera reached when she analyzed this issue in Chavez v. City of Albuquerque. See Chavez MSJ MOO at 12-14.[39]

These calculations, however, are all made upon the flawed premise that the City should calculate the regular rate based on the total number of hours that the employee worked. The mathematics falls apart when one considers that the divisor in the regular-rate equation should be

---

[33] $15.00 (hourly pay) x 46 (hours in the week) + $50.00 (add-on) = $740.00.

[34] $740.00 (total compensation) ÷ 46 (hours in the week) = $16.09 (regular rate).

[35] 0.5 (City's chosen FLSA overtime multiplier) x $16.09 (regular rate) = $8.05

[36] 1.5 (Plaintiffs' chosen FLSA overtime multiplier) x $16.09 (regular rate) = $24.14.

[37] (40 (hours in a normal workweek) x $16.09 (regular rate)) + (6 (hours overtime) x $24.14 (overtime rate)) = $788.44.

[38] (46 (total hours) x $16.09 (regular rate)) + (6 (hours overtime) x $8.05 (additional overtime pay)) = $788.44.

[39] The Court notes that, for the most part, it agrees with Judge Herrera's conclusions in Chavez v. City of Albuquerque. The Court has, however, come to a different conclusion as to the issue of the divisor in the regular-rate calculation. The Court notes that there is also some disagreement regarding the dual-calculation method that the City uses, but notes that Judge Herrera implicitly accepted in her Findings of Fact and Conclusions of Law that such dual calculations are not always inappropriate. See, e.g., Chavez FFCLs at 435 (noting a distinction between obligations under a CBA and under the FLSA).

the number of hours in the standard workweek under the CBA.  If the regular rate must be made by spreading add-on compensation across only the first forty hours -- or however many hours the employee is contracted to work -- then there is no reason to calculate the modified base rate of pay for all hours worked before calculating overtime.  To continue to use a 0.5 multiplier, the City would be forced to calculate the regular rate based on the number of hours in the employee's regular workweek, then take that regular rate and multiply it by the number of overtime hours worked.  Only once the employer multiplied the overtime hours by the regular rate and added that to the total compensation would it make sense to multiply the regular rate by 0.5, and then multiply that by the number of overtime hours worked.  The Court does not hold that the use of a 0.5 multiplier to calculate the regular rate is, in and of itself, improper -- as the Court mentioned, there is a way to calculate the regular rate using a multiplier of 0.5 -- but the Court finds that the City's method of calculating the regular rate is generally improper.  Calculating overtime by calculating the regular rate of pay for the first forty hours -- or however many hours the CBA requires the employee to work in an ordinary workweek -- and then adding 1.5 times that regular rate for each hour in excess of forty is simply a more natural method.

### C.    VACATION TIME AND SICK LEAVE BUY-BACK FACTOR IN TO THE REGULAR-RATE CALCULATION.

The Plaintiffs insist that the City incorrectly calculates the "regular rate" by refusing to include compensation received as the result of selling back unused vacation and sick leave in the calculation of total compensation, i.e., the dividend in the calculation of regular rate.  Plaintiffs' Motion at 4, 22; Plaintiffs' Response at 3-4, 17-19.  The City disagrees with the Plaintiffs on this point.  See City's Memo. at 13.  The Court understands how one could believe that vacation and sick leave fall into the exceptions of 29 U.S.C. § 207(e), but ultimately concludes that funds received for

selling back unused vacation time or sick leave should be included in the calculation of regular rate. The Court will begin by considering the peculiarities of including this form of compensation in the calculation of regular rate.

**1.      Vacation and Sick Leave Buy-back Are Not Truly Payments Received "Regularly" During the Workweek.**

First, under the plain language of <u>Walling v. Youngerman-Reynolds Hardwood Co.</u>, the value of vacation and sick leave sold back by the employee is not a "payment . . . received regularly during the workweek." 325 U.S. at 424. Such buy-back funds are not regularly received. Most of the CBAs allow for cashing in of unused vacation or sick leave only once per year or on certain dates. It is also not received regularly <u>during the workweek</u>; to the contrary, it is not related to any particular workweek.

**2.      The FLSA Could Be Construed to Implicitly Exclude Vacation-Time and Sick-Leave Buy-back Funds from the Calculation of Regular Rate.**

Next, the statute could be construed to implicitly exclude vacation-time and sick-leave buy-back from the regular-rate calculation:

> As used in this section the "regular rate" at which an employee is employed <u>shall be deemed to include all remuneration</u> for employment paid to, or on behalf of, the employee, <u>but shall not be deemed to include</u>--
>
> (1) sums paid as gifts; <u>payments</u> in the nature of gifts made at Christmas time or on other special occasions, <u>as a reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency</u>;
>
> (2) <u>payments made for occasional periods when no work is performed</u> due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; . . . .

29 U.S.C. § 207(e)(emphasis added). "According to § 7(e) 'regular rate' includes all remuneration except, <u>inter alia</u>, sums paid as gifts or rewards or payments made for occasional periods when no work is performed, i.e., <u>sick leave, vacation time, and similar periods</u>." <u>Zumerling v. Devine</u>, 769

-55-

F.2d 745, 746-47 (Fed Cir. 1985)(citing 29 U.S.C. § 207(e))(emphasis added).

Vacation time and sick leave, when taken by the employee, is a payment made for a period when no work was performed. Indeed, it is included as one of the exemplary forms of such pay under 29 U.S.C. § 207(e)(2). The issue before the Court, however, deals with sums paid to the employee as a reward for not taking vacation time or sick leave -- the situation wherein the employee who has unused sick leave or vacation time sells that time back to the employer for cash. The latter situation is distinct from the former, but appears similar. When the sick leave or vacation time is taken, the employee takes time off work and is given money to make up for the gap in his pay that would otherwise occur. On the other hand, when unused sick leave or vacation time is cashed in, the employee does not take time off work, and there therefore is no gap in the employee's pay that the money might fill. In the latter situation, the payment still appears to be payment for a period wherein no work was performed, but, as will be explained more below, the payment is in fact for the employees' exemplary attendance. Further, the payment does not fall under 29 U.S.C. § 207(e)(1) because, although the payment might be construed as one in the nature of a gift made as a reward for service, the Court notes that the amount of the award is dependent on hours that the employee worked. See 29 U.S.C. § 207(e)(1).

### 3.    Including Vacation Time and Sick Leave Buy-back in the Calculation of Regular Rate Might Allow Employees to Game the System.

Finally, allowing sold-back vacation and sick leave to be factored into the regular rate on a given week has a peculiar side-effect. The employee could manipulate the system by selling back his or her vacation and sick leave during a week in which the employee planned to work a substantial amount of overtime, and thereby artificially inflate the "regular rate" for those hours. In other words, when an employee's regular rate is $16.25, yielding an overtime wage of $24.36,

the employee might choose not to work any overtime.  But, when the employee has sufficient unused vacation time to sell some back, the employee might sell it all back at once and work a substantial amount of overtime hours in order to take advantage of the increased regular rate for that week.  Or, more likely, the employee might wait until the standard time to sell back unused leave and attempt to work a substantial amount of overtime hours during that week, to maximize the regular rate and artificially inflate the overtime pay.[40]

The purpose of overtime compensation is to compensate the employee for time spent working in excess of that which the contract of employment and/or the FLSA contemplates.  Inclusion of "add-on" compensation, such as non-discretionary bonuses or extra pay for longevity, certain certifications, or hazard pay in the calculation of regular rate make sense because employees qualifying for those benefits have proven themselves to be of greater value to the employer than employees who do not.  An hour of an employee's time that qualifies for hazard pay is worth more than an hour that is not, and therefore an overtime hour is worth a correspondingly larger amount.  Furthermore, the employee is spending more of his or her time working, and is therefore deserving of additional compensation.  Allowing the employee to take advantage of the buy-back funds in their regular rate for a week appears to give the employee additional benefit above and beyond the money the employee receives for those hours, with no additional benefit to the employer or detriment to the employee.  The mere fact that the employee is not taking advantage of her vacation and/or sick time

---

[40] The City has not explained to the Court how it deals with buy-back pay or its effect on the regular rate.  At least one of the attachments that the City has provided, however, imply that there might be an elaborate process of distributing buy-back monies over the period over which the vacation time or sick leave was accruing.  See United States Dep't of Labor Fact Sheet #54 - the Health Care Industry and Calculating Overtime Pay at 3, filed October 6, 2009 (Doc. 77-2)(explaining how a "retention bonus" earned after six months is distributed to affect the regular rate of prior weeks during that six-month period).  If the City uses such a method to disperse the buy-back funds' effect on the regular rate, then the Court's concern is largely alleviated.

may appear not to justify inflating her overtime rate for the week in which she cashes out.

  **4.**  **Because Pay for Unused Vacation and Sick Time Is Meant to Reward Employees for Exemplary Attendance, it Is Properly Included as Remuneration in the Employees' Regular Rate.**

  Nevertheless, the Court is convinced by the reasoning of the United States Court of Appeals for the Eighth Circuit in <u>Acton v City of Columbia</u>, 436 F.3d 969 (8th Cir. 2006). The Court agrees that "the critical question . . . is whether sick leave buy-back moneys compensate the [employee] for some specific or general duty of employment." <u>Id.</u> at 977. As the Eighth Circuit pointed out, "[t]here is a statutory presumption that remuneration in any form is included in the regular rate calculation [and] [t]he burden is on the employer to establish that the remuneration in question falls under an exception." <u>Id.</u> at 976. The City has not carried its burden in this case.

  The deciding factor is whether vacation time and sick leave buy-back monies are, or are similar to, "payments for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause," 29 U.S.C. § 207(e)(2), or "payments in the nature of gifts made . . . as a reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency," 29 U.S.C. § 207(e)(1). <u>See</u> <u>Acton v. City of Columbia</u>, 436 F.3d at 977 n.10 (finding that sick leave buy-back moneys do not "resemble any of the payments expressly excluded under § 207(a)(2).")(citing 29 C.F.R. § 778.224(a)). The Court concludes that such buy-back monies are distinct from both. As the Eighth Circuit aptly pointed out, buy-back money for sick leave -- and, one might assume, vacation time -- are awarded "for coming to work consistently, not for work that was never performed." <u>Acton v. City of Columbia</u>, 436 F.3d at 977 n.10.

  As a result, even though there are some peculiarities in considering vacation-time and sick-leave buy-back as part of the total remuneration when calculating the regular rate, the Court is

-58-

convinced that it is nevertheless appropriate.  Because the City concedes that it does not include

such remuneration in the calculation of the regular rate, the Court will grant the Plaintiffs' motion

for summary judgment on this issue.  The Court notes that Judge Herrera came to the same

conclusion on this point in her Findings of Fact and Conclusions of Law in Chavez v. City of

Albuquerque, 13 Wage & Hour Cas. 2d 419, 434-44 (D.N.M. 2008)(Herrera, J.)("Chavez FFCLs").

In Chavez v. City of Albuquerque, Judge Herrera was likewise persuaded by the reasoning of the

Eighth Circuit's decision in Acton v. City of Columbia.  See 13 Wage & Hour Cas. 2d 419, 434-44.

## II.   THE FLSA DOES NOT REQUIRE OVERLAYING THE FLSA ON TOP OF THE APPLICABLE CBA.

At the hearing on this motion, and throughout the briefing, the Plaintiffs have argued that

the FLSA and the CBAs cannot be viewed as independent sources of the obligation to pay overtime,

and that the City must view its obligations under the FLSA through the lense of whatever

employment contract to which it bound itself with its employees.  The City views the FLSA and the

CBAs as distinct.  It appears to believe that the FLSA establishes a base-line for overtime

compensation and that, as long as the employee receives at least as much compensation as he or she

would be entitled to under the FLSA standing alone, then the City can pay the employee overtime

pursuant to the CBA's terms.  The CBA's existence and provisions, the City asserts, do not alter the

FLSA's requirements, and the Plaintiffs can succeed on their claims only if the City violated the

FLSA.  In general, the Court agrees with the City, and believes that, so long as the employee is

protected in the ways that Congress intended, the City is free to structure its overtime compensations

scheme in any way it sees fit.

A.    **IF THE FLSA CALCULATION WAS DONE CORRECTLY, THE COURT WOULD FIND NO PROBLEM WITH THE CITY'S DUAL-CALCULATION METHOD.**

One of the Plaintiffs' primary concerns is that the City engages in a dual-calculation method of calculating employee overtime.  See Plaintiffs' Motion at 14-20.  Under this system, the City calculates the amount of overtime to which it believes the employee is entitled under the applicable CBA and then calculates the amount of overtime to which the employee is entitled under the FLSA. The City then gives the employee the greater of the two amounts.  Plaintiffs appear to take issue with the process.  After considering the briefs and the hearing on this motion, however, the Court perceives the Plaintiffs' concerns as more appropriately aimed at the City's calculation of overtime under the FLSA.  The Plaintiffs argue that it is improper to calculate overtime "once based on the provisions of the [CBAs] and again based on the provisions of the FLSA, but without any of the benefits of the CBAs."  Plaintiffs' Response at 3.  See Plaintiffs' Motion at 14.  They appear concerned primarily with the fact that the City makes the FLSA calculations without considering any of the CBAs' substantive provisions.  They seem particularly concerned that the CBAs include provisions wherein paid leave will be considered time worked for the purposes of calculating overtime under the CBA, but that the City does not consider paid leave to be equivalent to time worked when calculating overtime under the FLSA.  See Plaintiffs' Motion at 14; Plaintiffs' Response at 3.  The City defends its dual-calculation method by arguing that, in calculating overtime once under the CBA and once under the FLSA, and giving the employee the greater of the two, it will always give the employee at least as much overtime pay as the FLSA requires, and often more. See City's Memo. at 8-10.

The Court sees no problem with making two calculations of overtime -- one under the CBA and another under the FLSA – so long as each calculation is done correctly.  The Court has found

that, to some extent, the City is improperly calculating overtime under the FLSA. The Court is therefore not certain whether the employees have been receiving the greater of compensation under the CBA or compensation under the FLSA for the past two years. Nevertheless, once that uncertainty is resolved by further evidence of the proper calculations of overtime under the FLSA, the Court has no problem with the City calculating overtime using two formulas and giving the employee the greater of the two, as will be explained in more depth below.

### B.     PAID LEAVE WILL NOT BE CONSIDERED TIME WORKED.

Most of the CBAs state that, "for the purpose of computing overtime, paid leave will be considered time worked." The City, however, computes its overtime pay under the FLSA without consideration of the hours of paid leave. See Plaintiffs' Response at 3. The Plaintiffs argue that, because the CBAs have a negotiated-for provision which states that paid leave will be considered time worked for the purpose calculating overtime under the CBA, and that one of the City's Personnel Rules states that overtime must be computed "in accordance with the Fair Labor Standards Act (FLSA) and any applicable collective bargaining agreement," the City is obligated under the FLSA to consider paid leave as time worked. Plaintiffs' Response at 3-5 (underlining in original). The City responds that the CBAs' terms cannot alter what the FLSA requires it to do in calculating overtime compensation under the FLSA. See Defendant's Reply in Further Support of its Motion for Summary Judgment at 2-4, filed October 6, 2009 (Doc. 77)("City's Reply"). It also argues that there is no question that the City calculates overtime under the FLSA correctly.[41] The City argues essentially that the Plaintiffs' argument is a non-sequitur -- that the Plaintiffs' argument boils down to the following flawed logical chain: the City's Personnel Rule, not the FLSA, requires

---

[41] The plethora of disagreements about the City's FLSA calculation proves this argument to be unavailing.

that the City calculate overtime in conformity with both the FLSA and the CBAs; because the City fails to consider the CBA provisions when calculating overtime under the FLSA, as the local rule requires, the City violates the FLSA. The City implicitly argues that, at most, it violates its local personnel rule, which cannot constitute a *per se* violation of the FLSA.

1.    **Using the CBA to Set Variables in the FLSA Regular Rate Calculations is Different from Incorporating CBA Benefits into the Minimum Statutory Requirements of the FLSA.**

The Court finds for the City on this issue. The Court sees a distinction between using the CBA to fill in variables in the calculation of regular rate under the FLSA, on the one hand, and allowing the CBAs to augment the FLSA's requirements and force the employer to consider new payments in the computation of regular rate that are otherwise excludable, on the other. See 29 U.S.C. § 207(e). The FLSA introduced the concept of a "regular rate," and the Supreme Court has defined the regular rate in terms of the compensation given to an employee during a normal, non-overtime workweek. This definition, and therefore the notion of a regular rate, necessarily incorporates portions of the employment agreement -- specifically, the hours in a normal workweek and the rate of pay. From those factors, the calculation of the regular rate should be a simple matter of arithmetic. See Walling v. Younger-Reynolds Hardwood Co., 325 U.S. at 424-25 ("Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation"); 29 C.F.R. § 778.108. It does not immediately follow that the FLSA will require compliance with the CBA, nor that the FLSA will incorporate provisions of the CBA, for the purpose of calculating minimum overtime requirements.

Judge Herrera found similarly in her Findings of Fact and Conclusions of Law in Chavez v. City of Albuquerque. See Chavez FFCLs at 434. Judge Herrera found that "Plaintiffs cite to no case law standing for the proposition that the City must look to the CBAs to determine what hours

count toward the 40-hour FLSA threshold, and the Court finds none." <u>Chavez</u> FFCLs at 434.  The

Court likewise has found no authority for the proposition that non-working, paid hours should be

counted toward the forty-hour threshold for receiving overtime under the FLSA.  The Court likewise

agrees with the remainder of Judge Herrera's analysis in her opinion, particularly the following:

> 29 C.F.R. § 778.102 implicitly addresses a situation in which an employer may have agreed to count certain hours paid but not "actually worked" by an employee in calculating overtime due, and suggests that obligations under the FLSA are distinct from those under a contract.  Section 778.102 indicates that where an employer pays overtime compensation for hours in excess of eight per day (not required by the FLSA) or for work on holidays (not required by the FLSA) (i.e., where an employer undertakes obligations in excess of the FLSA), the FLSA does not require the employer to count these hours toward the FLSA overtime threshold.  Indeed, Section 778.102 explicitly provides, "If no more than the maximum number of hours prescribed in the Act are actually worked in a workweek, overtime compensation . . . need not be paid."  Section 778.102 addresses contractual obligations separately, and indicates that the FLSA does not abridge those contractual obligations.

<u>Id.</u> at 435.  <u>See id.</u> at 439 (holding that a CBA provision requiring officers to be paid overtime after

forty hours in a week did not change the City's responsibility under the FLSA to pay officers

overtime only once they had worked more than forty-three hours in a week)

### 2.     The CBAs Do Not Alter the Calculation of Minimum Overtime Under the FLSA.

The City appears to have deemed paid leave as time worked, and, with one exception, it has

apparently done so for all purposes.  <u>See</u> Agreement between the City of Albuquerque and Local

624 AFSCME at 8, filed July 28, 2009 (Doc. 67-3)("Local 624 CBA")("For the purpose of

computing overtime, paid leave will be considered time worked."); Agreement Between the City

of Albuquerque and the Albuquerque Area Fire Fighters Union at 15, filed July 28, 2009 (Doc. 67-

4)("AAFFU CBA")("Time spent in leave with pay status shall be considered time worked for

purposes of computing overtime."); Agreement Between the City of Albuquerque and Local 3022

AFSCME, Council 18, AFL-CIO at 10-11, filed July 28, 2009 (Doc. 67-5)("Local 3022

CBA")("Overtime work for City employees is generally discouraged; however[,] when overtime is required for non-exempt employees, compensation must be in accordance with the Fair Labor Standards Act (FLSA) and this agreement. Paid time will be considered hours worked for purposes of calculating overtime."); Agreement between the City of Albuquerque and the Albuquerque Officers' Association para. 2.3.7, filed July 28, 2009 (Doc. 67-6)("AOA CBA")("For the purpose of computing overtime, paid leave will be considered time worked."); Agreement between the City of Albuquerque and Albuquerque Clerical and Technical Employees para. 2.3.2, at 8, filed July 28, 2009 (Doc. 67-7)("ACTE CBA")("For the purpose of computing overtime, paid leave will be considered time worked."). On this point, the Plaintiffs support their position with the United States Court of Appeals for the Third Circuit's decision in Wheeler v. Hampton Township, 399 F.3d 238 (3d Cir. 2005). In Wheeler v. Hampton Township, the Third Circuit was faced with a dispute similar to the one that the Court is addressing. The Third Circuit was analyzing whether a CBA which declared that certain categories of non-working time would be considered as time worked in calculating overtime meant that the non-working time must also be considered time worked -- and, relatedly, whether non-work pay would be considered in calculating the regular rate -- when calculating overtime under the FLSA. See Wheeler v. Hampton Township, 399 F.3d at 243. The Third Circuit considered the definition of "regular rate": "As used in this section, the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include . . . ." 29 U.S.C. § 207(e). See Wheeler v. Hampton Township, 399 F.3d at 243. It found that the non-work pay at issue fell into one of the categories that, under the statute, "shall not be deemed" to be part of the regular-rate calculation. 399 F.3d at 243. The Third Circuit found, however, that "shall not be deemed" was the relevant language:

> The pivotal language is 'shall not be deemed.'  Consistently, we and our sister circuits have applied that phrase to mean that employees seeking unpaid overtime may not under the FLSA require that non-work pay be added to the regular rate.  In Minizza [v. Stone Container Corp., 842 F.2d 1456 (3d Cir.1988)], for example, we held that lump sum payments provided under a collective bargaining agreement did not have to be added to the agreement's regular rate because they were an incentive to conclude a labor agreement, not compensation for services rendered.
>
> * * * *
>
> The function of § 207(e)(2) is to forbid this Court from deeming that the CBA include non-work pay.  We will follow that injunction, for the parties agree that the CBA already contains non-work pay in the regular rate.  There is thus nothing for this Court to "deem."  The deed is already done by the parties' own hands.  Nothing in § 207(e) suggests that the Court should undo it.  . . .

399 F.3d at 243-44.  The Plaintiffs argue that the CBAs in this case are like those in Wheeler v. Hampton Township, in that they declare that paid leave will be considered time worked, and therefore the Court should hold the City responsible under the FLSA for overtime calculated including paid-leave hours as time worked.  See Plaintiffs' Motion at 16-19.

The Court is unconvinced by the Plaintiffs' and the Third Circuit's reasoning.  The FLSA establishes a safety net for employees to eliminate "labor conditions detrimental to the maintenance of the minimal standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 102.  The Act was further meant to spread employment by placing financial pressure on the employer to keep each employee's weekly hours at or near the statutory maximum, and to compensate employees for hours worked in excess of that statutory maximum.  See Walling v. Helmerich & Payne, Inc., 323 U.S. at 39.  The statute set a minimum hourly wage that an employer is permitted to pay an employee for his work, and creates a formula for calculating the minimum amount of overtime that an employer may pay an employee for work in excess of the statutory maximum hours in a given week.  Much like the protections that the United States Constitution provides to United States citizens, the Court sees the FLSA as a minimum standard.

Employers are not allowed to provide their employees less protection -- in this case, protection in the form of minimum wages or minimum overtime -- than the Act provides.  If the employer wishes, however, it may provide its employees more protections than the Act dictates.  That greater protection is what the Court perceives the City has provided through its CBAs and the provisions that dictate that paid leave will be considered time worked for calculating overtime under the CBAs.

The CBAs are not, however, uniformly more generous than the FLSA; rather, they are only more generous in some respects.  See supra Stipulated Facts 18-20, at 5-6; id. at 57-58, at 15.  The Court is not convinced that these differences affect the analysis in a case, such as this one, where the City agrees to use both calculations of overtime compensation and give the employee whichever yields the greater amount -- provided, of course, that the employer properly calculates overtime compensation under the FLSA.  As long as the City's method of calculating overtime always provides at least as much compensation as a single calculation under the FLSA, the City's dual-calculation method always provides as much protection to the City's employees as the FLSA would, and thereby satisfies the policy goals underlying the FLSA.

Under the circumstances of this case, there is no reason to circumvent the parties' negotiated employment agreement by binding the employer to some hybrid agreement incorporating benefits of the CBA, for which it bargained, merged with benefits of the FLSA, for which it did not.  Nor is it equitable to hold the employer liable for overtime compensation greater than that for which it bargained by using its agreement to expand a federal statute's requirements.  In short, the Court rejects the Plaintiffs' argument that Congress intended the FLSA to always be construed to provide extra protection above and beyond that for which the employer and employee union contracted. Instead, the Court finds that, so long as the CBA provides as much protection as the FLSA, it fulfills Congress's goals of providing sufficient compensation to maintain a suitable minimum standard of

living, deterring employers from burdening employees with excessively long workweeks, and properly compensating employees for hours that they work in excess of the statutory maximum. And, if there is any question whether the CBA always provides greater compensation than the FLSA, the method of calculating overtime compensation under the Act and then again under the CBA -- giving the employee the greater amount -- also properly satisfies the goals of the FLSA. Finally, the Court has been shown no binding authority for the proposition that terms of the CBAs can or should alter requirements under the FLSA, except insofar as the FLSA incorporates the employee's wage and weekly workweek. The Court will therefore find that the City is correct in excluding vacation and sick leave -- paid time off -- from the calculation of overtime compensation under the FLSA.

### 3.    Some CBAs Do Not Appear to Alter the FLSA Overtime Calculation.

In one case, the City appears to limit its declaration of paid leave as time worked to the context of the CBA at issue. The APOA's CPA states as follows:

> 2.5.1    Under the Fair Labor Standards Act (FLSA), paid leave is not considered time worked for the purpose of computing overtime and the *regular rate* for purposes of computing overtime includes all remunerations.
>
> 2.5.2    The parties hereto agree that for the purpose of computing overtime, paid leave will be considered time worked and the regular rate includes the hourly rate with no other remunerations included. Under 7K of the FLSA, the parties agree that for the purpose of computing overtime, the pay schedule will be a 7-day, 40-hour workweek.

Agreement between the City of Albuquerque and Albuquerque Police Officer's Association at 10, filed July 28, 2009 (Doc. 67-2)("APOA CBA"). The Court believes that if it were to credit the City's limited concession -- that paid leave will be considered time worked for the purpose of calculating overtime under the CBA -- as a concession that paid leave will be considered time worked under the FLSA, the Court would be "deeming" paid leave to be considered time worked,

contrary to the express language of 29 U.S.C. § 207(e).  Thus, with respect to the APOA CBA only, for the reasons stated in the previous section and these additional reasons, the Court finds that the City is correct in refusing to consider paid leave as time worked for the purposes of its FLSA regular-rate calculation.

In the final two CBAs, the City does not expressly state that paid leave will be considered time worked.  One of those is the Local 624 Transit Union contract, see Agreement Between the City of Albuquerque and AFSCME Local 624 Transit Union, filed July 28, 2009 (Doc. 67-9)("Local 624 Transit CBA"), and the other is New Mexico Transportation Union, see Agreement Between the City of Albuquerque and the New Mexico Transportation Union, filed July 28, 2009 (Doc. 67-8)("NMTU CBA").  In the case of the Local 624 Transit CBA, at least, the City has had a consistent practice of considering hours of paid leave as time worked.  See Stipulated Fact 35, at 11.  The Court believes that, if an ambiguous term of the CBA cannot alter the FLSA overtime computation, an unofficial practice of treating paid leave as time worked for the purpose of calculating overtime under the CBA also cannot.  If the Court will not consider a blanket expression in the CBA that "paid leave will be considered time worked" to alter the overtime requirements under the FLSA, it will not hold that a common practice will.

Finally, there is not an alleged common practice to justify expanding the FLSA overtime requirements with respect to the Local 624 Transit Union.  The only provisions of the Transit Union's CBA to which the Plaintiffs direct the Court are those that (i) designate that a board protector will be guaranteed at least two hours of work any time he or she is called in to work; (ii) provide that uncertified personal sick leave will not be included in the calculation of hours for overtime eligibility; (iii) provide for vacation buy-back; (iv) provide for the amount paid for work on holidays; and (v) provide the pay rates for "call back" work.  Stipulated Facts 37-41, at 12.

Nothing the Court has read indicates that it should consider paid leave as time worked for the purpose of calculating minimum overtime requirements under the FLSA. The Court will therefore grant the City's motion for summary judgment, finding that paid leave -- specifically, vacation, holiday, and sick leave -- are not properly considered time worked when calculating the overtime requirements under the FLSA.

## C. THE CITY DOES NOT ARGUE THAT ANY EMPLOYEES HAVE WAIVED RIGHTS UNDER THE FLSA.

The Plaintiffs seem to implicitly allege that the City has argued that police officers have waived their rights under the FLSA in exchange for their rights under the CBAs. See Plaintiffs' Response at 5. The City argues otherwise, asserting that the police officers have not waived their rights under the FLSA. See City's Reply at 4-5. Rather, the City asserts that because the FLSA does not require an employer to pay a police officer overtime until after the officer has worked for forty-three hours in a workweek, and the CBAs begin paying overtime once the officer works forty hours in a workweek, overtime under the CBA will almost always be greater than overtime under the FLSA. See City's Reply at 4-5. Because the calculation under the FLSA will almost never result in more overtime than the calculation under the CBA, the City chooses not to execute the FLSA calculation on a regular basis. Instead, the City calculates the police officers' pay under the CBAs and only occasionally calculates the officers' pay under the FLSA to ensure that the CBA is still resulting in a higher amount of overtime pay. The Court has no problem with this methodology if the CBA consistently pays more overtime than the FLSA requires. Because the Court has determined that the City has been improperly calculating overtime under the FLSA, however, the Court would recommend that the City re-implement the dual-calculation system for police officers until it is again confident that the CBA always yields more overtime pay than the FLSA.

**D.    THE CITY DOES NOT INAPPROPRIATELY TAKE "CREDITS" AGAINST ITS FLSA OVERTIME LIABILITY.**

The Plaintiffs also insist that a "side-effect" of the City's dual-calculation method is that the City takes "credits" against its FLSA overtime liability.  Plaintiffs' Motion at 20-22.  They insist that, although the FLSA allows an employer to take credits against their FLSA overtime liability for premiums paid at no less than time-and-one-half the normal hourly rate, the City is taking credits against its overtime liability for hours paid but not worked, such as sick leave or vacation time.  See Plaintiffs' Motion at 20-22.  The Plaintiffs argue that, because paid time off is credited at the regular rate of pay, and not time-and-one-half, that these are improper credits against FLSA liability.  See id.  The City insists that it properly takes credits for overtime pay paid under the CBA, even when a portion of the weeks' hours under the CBA were provided by hours paid but not worked:

> Take for example, an employee whose regular work week is 40 hours.  The employee worked 35 hours during the week and took 10 hours of paid vacation time. Under the FLSA, the employee only worked 35 hours and is, therefore, not entitled to overtime for the week.  However, under the CBA, the 10 hours of paid vacation are counted as hours worked.  Therefore, the employee has "worked" 45 hours. (35 hours of actual working time, and another 10 hours of paid vacation counted as hours worked under the CBA).  The employee is entitled to overtime pay for 5 hours under the CBA.  The City is entitled to take credit against the FLSA liability for the 5 hours of overtime premium pay that is due to the employee under the CBA.

Defendants' Memo. at 11 (citing 29 U.S.C. § 207(h)).  The City insists that it takes credit only for the overtime paid and not for the hours of paid leave taken.  See id.

The Court has not been shown any evidence that the City makes these calculations incorrectly.  Under the City's method, when the FLSA would require the City to pay overtime and that overtime is greater than what the employee would be entitled to under the CBA, the City pays the overtime under the FLSA, calculated independently from any requirements under the CBA. When the CBA overtime calculation is greater than the FLSA overtime calculation, the employee

is paid in compliance with the CBA.  So long as the CBA calculates overtime at a rate of "one and one-half times the rate established in good faith" for other hours, 29 U.S.C. §§ 207(e)(6) & (7), and the City compares overtime under the FLSA and overtime under the CBAs, it appears that the City offsets its FLSA overtime liability only with premium payments, thus satisfying the requirements of 29 U.S.C. § 207(h)(1) and (h)(2).  The City describes a process of taking credits against FLSA liability that comports with the FLSA, and the Plaintiffs have not provided any evidence that the method used by the City is improper.  The Court will therefore find for the City and grant its motion for summary judgment as to the credits issue.

## IV.    ON THE RECORD BEFORE THE COURT, THE COURT FINDS THAT THE CITY DID NOT ACT WILLFULLY, BUT IT FINDS THAT THE CITY HAS FAILED TO MEET ITS EVIDENTIARY BURDEN TO AVOID SOME LIQUIDATED DAMAGES.

In the Plaintiffs' Complaint, they ask the Court to grant them two special forms of relief. First, they ask the Court to award them, pursuant to 29 U.S.C. § 216(b), liquidated damages in an amount equal to the amount of unpaid wages.  See Amended Complaint at 5.  They also request that the Court find that the City's violations of the FLSA were willful, see id., because such a finding would allow the Plaintiffs to take advantage of the extended three-year statute of limitations on actions to collect unpaid overtime in a private suit under the FLSA, see 29 U.S.C. § 255.  The City argues that it made its overtime calculations in good faith and that therefore the two-year statute of limitations governs the Plaintiffs' claims.  See City's Memo. at 15-16.  The City also argues that the Court should decline to award the Plaintiffs any money for "liquidated damages," also because the City acted in good faith.  Id.

### A.    THE CITY'S WILLFULNESS, OR LACK THEREOF, IS A FACTUAL ISSUE, BUT THE PARTIES HAVE ASKED THE COURT TO DECIDE IT.

The record in this case is in the form of stipulated facts and attachments to the City's briefs.

-71-

Under the record as it now stands, the Court ordinarily would find that the evidence is not conclusive

on the factual issues of the City's willfulness or good faith, and would give them to the fact-finder

to decide.  The parties, however, have represented that the facts now before the Court are all the

evidence that they intend to present as to liability, and that the Court should decide all non-damages

issues as a matter of law.  See Oct. 21 Tr. at 10:21-25 (Bregman).  Furthermore, there has been no

request for a jury in this case,[42] and so the Court would be deciding the disputed factual issues as the

fact-finder.  The Court will therefore decide these issues based on the evidence before it because it

is under the impression that the parties want it to decide the issues on the facts before it and not at

some future time.

### B.    BECAUSE THE CITY DID NOT TAKE ADDITIONAL STEPS TO CONFIRM ITS CORRECTNESS AFTER A FEDERAL JUDGE CONCLUDED IT VIOLATED THE FLSA, THE COURT WILL AWARD THE PLAINTIFFS SOME LIQUIDATED DAMAGES.

> Under 29 U.S.C. § 216(b), an employer who violates the FLSA shall be liable to the employee for overtime compensation and an additional equal amount as liquidated damages. The purpose for the award of liquidated damages is "the reality that the retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages."

Renfro v. City of Emporia, Kan., 948 F.2d 1529, 1540 (10th Cir. 1991) (quoting Laffey v. Northwest

Airlines, Inc., 567 F.2d 429, 463 (D.C. Cir. 1976)).  "All circuits that have considered the matter

hold that the trial court may eliminate or reduce the award of liquidated damages only if the

employer shows both that he acted in good faith and that he had reasonable grounds for believing

---

[42] Unless the remedy sought is an injunction, the right to a jury trial exists.  The Tenth Circuit has not questioned the right to a jury trial in FLSA cases.  See Smith v. Aztec Well Servicing Co., 462 F.3d 1274, 1276, 1283 (10th Cir. 2006)(reviewing an FLSA case tried to a jury); Johnson v. The Unified Gov't of Wyandotte County/Kansas City, 371 F.3d 723, 727, 732 (10th Cir. 2004)(affirming the district court where "[t]he case was tried to a jury and, as set out infra, almost all issues were submitted for the jurors' determination.").

that his actions did not violate the Act." Renfro v. City of Emporia, Kan., 948 F.2d at 1540. See Brinkman v. Dep't of Corr., 21 F.3d at 372 ("The FLSA provides . . . that 'if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing his act or omission was not a violation of the [FLSA], the court may, in its sound discretion,' award less or no liquidated damages.")(quoting 29 U.S.C. § 216). In their summary judgment briefs, the Plaintiffs do not press the liquidated damages issue. The City, on the other hand, argues that its actions were in good faith and that therefore liquidated damages are inappropriate.

The City has not provided any substantial evidence that its conduct was in good faith nor that it had reasonable grounds for believing that it did not violate the act. Nevertheless, the Court notes that this is a technical area of the law. The only ways in which the Court concludes the City miscalculates overtime is by failing to include vacation-time and sick-leave buy-back funds in the regular-rate calculation, and by arriving at the regular rate by dividing by the total number of hours worked rather than the number of hours in the normal, non-overtime workweek. One of the Court's conclusions is even in disagreement with Judge Herrera's prior decision on the same issue. Clearly, reasonable minds can differ on some of these points. The City hired experienced and specialized legal counsel to attempt to navigate the FLSA's twists and turns, and has provided the Court with some authority and persuasive arguments for its position. The Court believes that, at least until Judge Herrera's decision in Chavez v. City of Albuquerque, these circumstances establish both that the City was acting in good faith and that it had a reasonable basis to believe that it was complying with the FLSA.

The Court is concerned, however, that, even after Judge Herrera's opinion in Chavez v. City of Albuquerque, the City continued to exclude vacation and sick-leave buy-back money from the

calculation of regular rate.  The City represented to the Court that it intends to appeal Judge Herrera's decision, but the City provided no evidence that it took steps to get a second opinion analyzing whether it was truly complying with the FLSA.  The Court does not believe that this fact establishes a willful violation of the Act, as the Court will discuss below.  The Court finds, however, that the City has not proved that it had a reasonable basis to believe that it was complying with the FLSA when it had the decision of a United States District Judge declaring that it was not.  Simply insisting that Judge Herrera was wrong on one issue, without performing any additional research or analysis to confirm or rebut Judge Herrera's findings, dispels the reasonable basis that the City needs to avoid imposition of liquidated damages.  On the other hand, until the issuance of Judge Herrera's decision on that issue, the Court finds that the City had a reasonable basis to believe that it was in compliance with the FLSA.  The Court will therefore award the Plaintiffs liquidated damages only as to unpaid/underpaid overtime accruing after the issuance of Judge Herrera's decision.

The Court notes that Mr. Bergmann, counsel for the City, was also counsel for the City of New York in Scott v. City of New York, in which some of the same issues in this case were decided against the City.  In other circumstances, that fact might impact the Court's determination of willfulness or good faith on the part of the City, but, for two reasons, it does not.  First, Judge Scheindlin did not hand down her decision in Scott v. City of New York until November 11, 2008 -- a year after the Plaintiffs filed suit in this case and the City set up its defense.  The City was not required to concede in this case to an award of liquidated damages.  Second, a district court case in the Southern District of New York is not binding precedent, and it is possible that Second Circuit law on this issue would diverge from Tenth Circuit law, decreasing the value of Scott v. City of New York as a predictor whether the City's formula was appropriate in this case.  Judge Herrera has, after all, made a different conclusion on one aspect of the case than did Judge Scheindlin in the case

-74-

against the City of New York. The Court will therefore not credit heavily Mr. Bergmann's participation in <u>Scott v. City of Albuquerque</u> in its analysis of willfulness or good faith.

### C. THE COURT FINDS THAT THE CITY DID NOT ACT WILLFULLY IN PAYING ITS EMPLOYEES UNDER ITS CALCULATION OF THE REGULAR RATE.

"Actions for unpaid wages under the FLSA are 'forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" <u>Smith v. Aztec Well Servicing Co.</u>, 462 F.3d 1274, 1278 (10th Cir. 2006)(quoting 29 U.S.C. § 255). <u>See</u> <u>Brinkman v. Dep't of Corr.</u>, 21 F.3d 370, 372 (10th Cir. 1994)("[T]he jury determined that defendant willfully violated the FLSA" because "plaintiffs could recover for only two years of violations unless defendant had acted willfully, in which case a three-year limitations period applied."). In this case, the Plaintiffs insist that the City's violation of the FLSA was willful, and that, as a result, they should be permitted to take advantage of the three-year statute of limitations in 29 U.S.C. § 225. The Plaintiffs do not appear to follow up on this argument in their briefs, however, and the Court has not been shown any direct evidence of willfulness.

As the Court has noted, the City hired a lawyer to review its overtime compensation scheme, and has provided the Court with some authority and arguments for its position on all issues. It appears that the City struggled to be fair and reasonable with its employees. The Court concludes that the City acted in good faith and truly believed that it was properly calculating overtime under the FLSA in all respects. Furthermore, it was the Plaintiffs' burden to provide evidence that the City was willfully violating the FLSA, and the Court has seen no such evidence.

The issuance of Judge Herrera's findings of fact and conclusions of law in <u>Chavez v. City of Albuquerque</u> does not, standing alone, establish willfulness. While the Court found that Herrera's

findings, in and of themselves, dispelled the City's reasonable basis to believe that it was complying with the FLSA, the Court understands that there is a certain level of inertia within governmental bodies and that changes do not happen overnight. The Court therefore finds that the lack of evidence of changes to the City's process of paying overtime based on Judge Herrera's does not establish willfulness. The Court will therefore only hold the City liable for unpaid/underpaid overtime within the statutory two-year period.

**IT IS ORDERED** that the Plaintiffs' Motion for Summary Judgment and Memorandum in Support is granted in part and denied in part, and the Defendant's Motion for Summary Judgment is granted in part and denied in part, as follows:  (i) the proper divisor in the regular rate equation is the number of hours in a normal, non-overtime workweek, when the parties agree to such number in the collective bargaining agreement; (ii) the use of a 0.5 multiplier, rather than 1.5, is not inherently improper, but is merely a symptom of the Defendant City of Albuquerque's improper regular-rate calculation; (iii) buy-back monies are remunerations within the meaning of the Fair Labor Standards Act, and properly included in the regular-rate calculation; (iv) the City's dual-calculation method of determining a city employee's overtime compensation would be proper, if the City correctly calculated overtime under the FLSA; (v) the City properly takes credits against its FLSA overtime liability; (vi) an award of liquidated damages to the Plaintiffs on unpaid/underpaid overtime accruing since Judge Herrera issued her Findings of Fact and Conclusions of Law in Chavez v. City of Albuquerque is appropriate; and (vii) the Court finds that the Plaintiffs have failed to prove that the City acted willfully in violating the FLSA, and therefore the two-year statute of limitations will apply in this case..

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Paul Livingston
Placitas, New Mexico

-- and --

Sam Bregman
Eric Loman
The Bregman Law Firm, P.C.
Albuquerque, New Mexico

      *Attorneys for the Plaintiffs*

Robert M. White
  City Attorney
    City of Albuquerque
Paula I. Forney
Michael I. Garcia
  Assistant City Attorneys
Albuquerque, New Mexico

-- and --

Edward W. Bergmann
Seyfarth Shaw, LLP
Chicago, Illinois

      *Attorneys for the Defendant*